Edward S. Zusman (SBN 154366)
ezusman@mzclaw.com
Kevin K. Eng (SBN 209036)
keng@mzclaw.com
MARKUN ZUSMAN FRENIERE & COMPTON  LLP
465 California Street, 5th Floor
San Francisco, California  94104
Telephone: (415) 438-4515
Facsimile:  (415) 434-4505

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN SIEGAL, JAMES RYBICKI, DAVID GROBLEBE, individually and as General Partner of GROBCO II, and CHRISTIAN WIPF, ON BEHALF OF THEMSELVES AND ALL INDIVIDUALS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>vs.<br><br>G. THOMAS GAMBLE, LOREN J. MILLER, HENRY LOWENSTEIN, PAUL W. BATEMAN, EDWARD M. GABRIEL, JAMES S. MAYER, BEHROOZ SARAFRAZ, LYNN BLYSTONE, ALFRED LOPEZ, MASTON CUNNINGHAM, JOHN DURBIN, GREG BILLINGER, K&L GATES LLP, CHARLES A. DALE III, JOSHUA LANE, AND DOES 1 THROUGH 100, INCLUSIVE,<br><br>Defendants. | Case No. 13 Civ. 3570-RS<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM IN SUPPORT**<br><br>Date:        March 12, 2015<br>Time:        1:30 p.m.<br>Courtroom:  3, 17th Floor<br>              Hon. Richard Seeborg |

///

///

///

///

///

///

1                           Case No. 13 Civ. 3570-RS

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that Plaintiffs will appear on March 12, 2015, at 1:30 p.m., in Courtroom 3 of the above captioned court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, to move, and by this motion hereby do move, for an order granting preliminary approval of a class action settlement in this action. The motion will be based upon this Notice and Motion, the attached Memorandum in support of the Motion, the concurrently filed supporting Declarations and Exhibits thereto, the records of the Court, and such other matters as the Court may properly consider.

**STATEMENT OF RELIEF SOUGHT**

By this Motion, Plaintiffs seek an order granting preliminary approval of a settlement agreement ("Settlement") which would, upon final approval, resolve Plaintiffs' claims asserted against certain Defendants. Specifically, Plaintiffs seek an Order that: (1) certifies a class of plaintiffs for purposes of the Settlement (the "Settlement Class"); (2) finds the named Plaintiffs are adequate Class Representatives for purposes of the Settlement; (3) finds Plaintiffs' counsel, Edward S. Zusman and Kevin K. Eng of Markun Zusman Freniere & Compton, LLP; and John Fabry of Mueller Law Offices, are adequate representatives of the Settlement Class; (4) finds the proposed settlement is preliminarily fair; (5) approves the proposed method of providing notice to the Settlement Class, including forms of a written Notice and Claim Form for distribution to the Settlement Class, and a plan for distribution of the foregoing materials, including a settlement web site; (6) approves the appointment of a third-party Settlement Administrator; and (7) sets a hearing date and briefing schedule for a motion for final approval of the settlement.

Dated: January 28, 2015

MARKUN ZUSMAN FRENIERE & COMPTON LLP

By   /s/ _____
       Kevin K. Eng

Attorneys for Plaintiffs

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ................................................ 3

    A. The Allegations of the Complaint ................................................................ 3

    B. The Parties .................................................................................................... 6

        1. The Plaintiff Parties......................................................................... 6

            a. The Named Plaintiffs .......................................................... 6

            b. The Bankruptcy Trustees .................................................... 6

        2. Defendants........................................................................................ 8

            a. The Settling Defendants ...................................................... 8

            b. The Directors and Officers Insurers ................................... 8

            c. The Non-Settling Defendants .............................................. 9

    C. Class Allegations and Class Claims ............................................................. 9

III. THE MEDIATION AND THE SETTLEMENT ...................................................... 10

IV. SETTLEMENT TERMS............................................................................................ 11

    A. Settlement Fund........................................................................................... 11

    B. Attorneys' Fees and Expenses..................................................................... 12

    C. Class Notice................................................................................................. 12

    D. Submission of Claim Forms, Opt-Out Requests, or Objections ............................. 13

    E. Acceptance of Settlement; Defendants' Right To Terminate; Payments................ 13

    F. Release of Claims ....................................................................................... 13

    G. No Admission of Liability............................................................................ 14

    H. Court Approval and Order of Dismissal ..................................................... 14

V. THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED .............. 14

    A. Numerosity .................................................................................................. 14

    B. Commonality............................................................................................... 15

C.     Typicality ........................................................................................... 15

D.     Adequacy of Representation .............................................................. 16

E.     Predominance ..................................................................................... 17

VI.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT SHOULD BE GRANTED .......................................................................................................... 17

A.     Standard for Preliminary Approval ................................................... 17

B.     Strength of Plaintiffs' Case ............................................................... 19

C.     Risk, Expense, Complexity, and Likely Duration of Further Litigation ................. 20

D.     Risk of Maintaining Class Action Through Trial ............................... 21

E.     Amount Offered In Settlement .......................................................... 22

F.     Extent of Discovery Completed ........................................................ 23

G.     Experience and Views of Class Counsel .......................................... 23

H.     Reactions of Class Members to Proposed Settlement ....................... 25

I.     Lack of Collusion .............................................................................. 25

J.     Arms-Length Negotiations ................................................................ 26

VII.   CONCLUSION .................................................................................................... 27

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Alberto v. GMRI, Inc., d/b/a Olive Garden*,
  252 F.R.D. 652 (E.D. Cal. 2008)...................................................................18

*Atlas v. Accredited Home Lenders Holding Co.*,
  No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009)...........22

*Ching v. Siemens Indus., Inc.*,
  11-CV-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014)................22, 25

*Churchill Village, LLC. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir.2004)...........................................................................18

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)............................................................................22

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir.1992)..........................................................................18

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir.1977)..........................................................................22

*Covillo v. Specialtys Cafe*,
  C-11-00594 DMR, 2013 WL 5781574 (N.D. Cal. Oct. 25, 2013)......................15

*Create–A–Card, Inc. v. Intuit, Inc.*,
  2009 WL 3073920 (N.D. Cal. Sept. 22, 2009)...................................................25

*Diaz v. Trust Territory of Pac. Islands*,
  876 F.2d 1401 (9th Cir. 1989).........................................................................18

*Four In One Co. v. S.K. Foods, L.P.*,
  2:08-CV-3017 KJM EFB, 2014 WL 28808 (E.D. Cal. Jan. 2, 2014)..................15

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal., Apr. 22, 2010).......................................17, 21, 27

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982)...........................................................................18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).........................................................................19

*Hawthorne v. Umpqua Bank*,
  11-CV-06700-JST, 2014 WL 4602572 (N.D. Cal. Sept. 15, 2014).....................18

*Hopson v. Hanesbrands Inc.*,
  No. CV-08-0844 EDL, 2008 WL 3385452 (N.D. Cal. Aug. 8, 2008)..................18

*In re Bluetooth Headset Products Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011)......................................................................25, 26

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

*In re M.L. Stern Overtime Litig.*,
   2009 U.S. Dist. LEXIS 31650 (S.D. Cal. 2009) ................................................................. 18

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................. 21, 22

*In re Skilled Healthcare Grp., Inc. Sec. Litig.*,
   CV 09-5416 DOC RZX, 2011 WL 280991 (C.D. Cal. Jan. 26, 2011) ................................. 17

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act*
   *(FACTA) Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................. 22

*In re Traffic Executive Ass'n – Eastern Railroads*,
   627 F.2d 631 (2d Cir. 1980) .................................................................................... 18

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   253 F.R.D. 607 (S.D. Cal. 2008) ......................................................................... 17, 27

*Johns v. Bayer Corp.*,
   280 F.R.D. 551 (S.D. Cal. 2012) ............................................................................. 17

*Ko v. Natura Pet Products, Inc.*,
   No. C 09-02619 SBA, 2012 WL 3945541 (N.D. Cal. Sept. 10, 2012), appeal
   dismissed (Apr. 24, 2013) ...................................................................................... 27

*Larsen v. Trader Joe's Co.*,
   11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ................................. 21

*Lewis v. Starbucks Corporation*,
   2008 U.S. Dist. LEXIS 83192 (E.D. Cal. 2008) ......................................................... 23

*Linney v. Cellular Alaska Partnership*,
   151 F.3d 1234 (9th Cir.1998) .................................................................................. 22

*Mulligan v. Impax Labs., Inc.*,
   C-13-1037 EMC, 2013 WL 3354420 (N.D. Cal. July 2, 2013) ........................................ 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .............................................................. 18, 20, 23, 25

*Officers for Justice v. Civil Service. Com'n of City and County of San Francisco*,
   688 F.2d 615 (9th Cir.1982) ............................................................................... 18, 22

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................... 20, 21

*State of California v. eBay, Inc.*,
   No. 5:12-CV-05874-EJD, 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ..................... 19, 24

*Staton v. Boeing*,
   327 F.3d 938 (9th Cir. 2003) .................................................................................. 16

*West v. Circle K Stores, Inc.*,
   2006 U.S. Dist. LEXIS 42074 (E.D. Cal. 2006) ......................................................... 18

iv                    Case No. 13 Civ. 3570-RS

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

**STATUTES**

11 U.S.C. § 1101 *et seq.* ........................................................................................................ 4, 6

11 U.S.C. § 701 *et seq.* ............................................................................................................. 6

CAL. CORP. CODE § 25501.5 ..................................................................................................... 1, 5

CAL. CORP. CODE § 25504 ......................................................................................................... 1, 5

CAL. CORP. CODE § 25504.1 ...................................................................................................... 1, 5

Securities Act of 1933, 15 U.S.C. § 77a *et seq.* ....................................................................... 1, 5

**RULES**

FED. R. CIV. P. 23 ........................................................................................................ 15, 17, 20, 27

FED. R. CIV. P. 23(a) ................................................................................................................. 15

FED. R. CIV. P. 23(a)(2) ............................................................................................................. 15

FED. R. CIV. P. 23(a)(3) ............................................................................................................. 15

FED. R. CIV. P. 23(b) ................................................................................................................. 17

FED. R. CIV. P. 23(b)(3) ............................................................................................................. 17

FED. R. CIV. P. 23(e) ................................................................................................................. 18

FED. R. CIV. P. 23(f) ................................................................................................................. 20

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

I.      **INTRODUCTION**

This putative class action arises from the sale of approximately $97 million in securities issued by Defendant TVC Opus I Drilling Program, LP ("Opus"), a company that was formed for the purpose of funding the development of oil and natural gas drilling projects in California and Nevada.  Opus was formed by Tri-Valley Corporation ("TVC"), a company engaged in the business of crude oil and natural gas exploration, development and production.  Opus is governed by a Partnership Agreement dated May 16, 2002.  The Partnership Agreement names TVC as Opus's Managing Partner, and in that capacity TVC had the exclusive right and authority to administer the affairs of the partnership, including raising funds through the sale of Opus interests to investors.

The Complaint filed by the Plaintiffs in this action (the "Plaintiffs") alleges that Opus investments were brokered by unlicensed broker-dealers who were paid approximately 18% in commissions or "finders fees" for their brokerage services and that of the $97 million raised by Opus, $94.7 million was raised through these unlicensed brokers.  These sales practices are alleged to violate provisions of the California Corporations Code, including sections 25501.5, 25504, and 25504.1.  Plaintiffs further allege that the Opus securities were sold by means of oral and written misstatements and omissions; and that the Opus investments were neither qualified nor registered with the SEC, and were sold in violation of the California Corporations Code and Securities Act of 1933.  Plaintiffs have also alleged that the officers and directors of TVC directed the affairs of TVC and Opus, and violated California securities laws and breached their duties to the members of the putative class.  The officers and directors of TVC are also named as Defendants.  In August 2012, TVC filed for bankruptcy protection.

Plaintiffs and several of the Defendants engaged in early discussions concerning the merits of the litigation, and agreed to voluntary, informal exchanges of extensive volumes of documents and information.  Plaintiffs were aware of the bankruptcy proceedings that had been filed in the District of Delaware and early on began to coordinate efforts with the Chapter 7 Trustees in the bankruptcies to maximize efficiencies and find areas of common interest.  The discussions eventually led to the possibility of informal resolution of the several disputes.

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

Thus, various parties from this action and the bankruptcy proceedings agreed to enlist the aid of David Geronemus, an experienced JAMS mediator based in New York City.  The mediating parties participated in multiple mediation sessions and extensive settlement discussions, and were eventually able to agree to a settlement in principle.  The first mediation session took place on November 12, 2013.  Although the parties made significant progress, they were unable to reach a settlement at this initial session.  The mediating parties convened, but agreed to continue the mediation at a date in the near future.  There were additional settlement discussions outside of mediation and a further mediation session was later scheduled.  On February 7, 2014, the parties attended a continued mediation session and reached a settlement in principle.

Even after reaching the settlement in principle, the settling parties spent a number of months negotiating the complete terms of the settlement.  The settlement reached by the parties resolves numerous complex legal and factual disputes and eleven separate actions pending in two courts located at opposite ends of the country.  Plaintiffs in this case and the Trustees in the Delaware bankruptcies intend to pursue their remaining claims against non-settling parties, and have coordinated to preserve those claims and establish procedures and mechanisms for the orderly conduct of proceedings following the settlement.

Plaintiffs now bring this motion for preliminary approval of the settlement.  The proposed settlement was reached through arms-length bargaining by experienced counsel with the assistance of an experienced, respected mediator over multiple mediation sessions and extensive follow-up communications between multiple parties.  As discussed in detail below, all the requirements for preliminary approval are satisfied.  Plaintiffs respectfully request that the Court grant this motion for preliminary approval of the Settlement.

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

The Plaintiffs in this putative class action are investors in Opus.  They have brought claims against several Defendants who are alleged to have participated in the offering and sale of Opus investments.

### A.     The Allegations of the Complaint

This litigation arises from the sales of approximately $97 million in securities issued by Opus.  As alleged in the Complaint, these securities (the "Opus Units") were issued by and sold by one of two means.  First, Opus sold certain interests ("Direct Investments") directly to investors.  These investors became Opus partners by virtue of the Direct Investments.  Opus also sponsored indirect sales ("Indirect Investments"), in which Opus-affiliated entities sought out multiple investors, and aggregated their investment funds for the ultimate purpose of purchasing Opus Units.  Investors who bought Indirect Investments purchased their Opus investments through individuals and entities.  Salespersons, including non-settling Defendant Alfred Lopez, purportedly solicited investors, whose funds would pass to entities that had no business other than to purchase Opus Units.  Salespersons who promoted or sold Indirect Investments, and the entities formed to purchase the investments, are collectively referred to as "Aggregators."  (Complaint, ¶1.)  Opus Units were sold beginning in 2002 through 2010.  (Compl. ¶42.)

#### 1.     The Complaint's Allegations Relating to Sale of Opus Units

The Complaint alleges that Opus Units were sold by means of oral and written misstatements and omissions.  Specifically, the Complaint alleges that (i) written materials, including a private placement memorandum, written sales presentations, emails and standardized oral presentations contained material omissions and misrepresentations of fact (Complaint, ¶3); (ii) these common communications were the chief means through which Defendants communicated with Opus Investors; (iii) TVC and the Defendants knew about, but never disclosed

---

[1] The facts and statements in this brief are as alleged by Plaintiffs, and do not set forth the views of Defendants.  Defendants have denied liability for the claims alleged in the Complaint and make no admissions concerning the Plaintiffs' allegations.  The summary of facts set forth herein represents a summary of the allegations contained in the Complaint.  All parties reviewing this Motion are encouraged and instructed to review the Complaint in its entirety.

in offering materials or by other means that TVC was paying commissions to unlicensed brokers or the full amount of those commissions; (iv) neither TVC nor the Defendants disclosed to Opus investors that TVC, the entity responsible for operating Opus's oil and gas business, was insolvent and could not satisfy its expenses out of operating revenues, and was using sums invested in Opus to fund TVC's operations and expenses; (v) TVC overcharged Opus for the services it provided, and improperly charged Opus for costs that the Opus Partnership Agreement allocated to TVC; (vi) neither TVC nor the Defendants disclosed to investors at any time material to the events set forth in this complaint that one of their key fund raisers, Defendant Behrooz Sarafraz, was investigated by the SEC and found to have violated the securities law; and (vii) these undisclosed facts were material to investors.  (Compl., ¶44; Declaration of G. Robert Miller ("Miller Decl."),[2] ¶5.)

### 2.    The Complaint's Allegations Relating to the Bankruptcy Filings

On August 7, 2012, (the "Petition Date") TVC and Opus filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), commencing the following bankruptcy cases:

i.     *In re Tri-Valley Corporation*, Case No. 12-12291-MFW (Bankr. D. Del. 2012);

ii.    *In re Tri-Valley Oil & Gas Co.*, Case No. 12-12292-MFW (Bankr. D. Del. 2012);

iii.   *In re Select Resources Corporation, Inc.*, Case No. 12-12293-MFW (Bankr. D. Del. 2012); and

iv.    *In re TVC Opus I Drilling Program, L.P.*, Case No. 12-12294-MFW (Bankr. D. Del. 2012).

Those bankruptcy cases were converted to cases under Chapter 7 of the Bankruptcy Code on March 25, 2013.  The Complaint alleges that TVC, controlled by and acting through the

---

[2] G. Robert Miller is an Opus Investor and was a member of the Opus Special Committee, made up of five Opus investor partners to conduct investigations regarding TVC.  Mr. Miller is not a named Plaintiff, but has provided information in connection with Plaintiffs' claims.

1   Defendants and aided by KLG, placed Opus and TVC in bankruptcy.[3]  As a result, Opus's

2   principal assets – the Opus oil and gas leases together with related wells, equipment and facilities

3   – were sold.  (Compl., ¶45.)

4           **3.      The Complaint's Asserted Claims**

5           The Plaintiffs contend that the above acts violated multiple laws.  First, because the

6   Aggregators had no business purpose other than to create Opus investments and to make money

7   for those who promoted the Aggregators, all sales, whether by Aggregators or Opus directly, were

8   part of a single integrated offering and a single plan of financing.  (Compl., ¶1.)

9           Second, the Complaint alleges that the sale of Opus Units through unlicensed brokers

10  violated Corporations Code section 25501.5 and 25504 as well as 25504.1.  (Compl., ¶2.) The

11  SEC has since taken action and reached a civil settlement with Behrooz Sarafraz.

12          Third, the Complaint alleges that the Opus Units were sold by means of oral and written

13  misstatements and omissions in violation of the California Corporations Code and that the written

14  materials, including a private placement memorandum, written sales presentations, emails and

15  standardized oral presentations contained material omissions and misrepresentations of fact, as

16  described above and alleged in the Complaint.  (Compl., ¶¶3, 44-45.)

17          Further, the Complaint alleges that the sales of Opus Units were neither qualified nor

18  registered with the SEC, and were not exempt from registration because there were more than 35

19  unaccredited investors and the investments were sold by means of communications to the general

20  public.  The Complaint alleges that the use of Aggregators was designed to avoid the restrictions

21  on the sale of unregistered securities unlawfully, and that under the doctrine of integration, such

22  sales should be considered as part of a single offering, and, as such, the Opus Units were sold in

23  violation of provisions of the Corporations Code and the Securities Act of 1933. (Compl., ¶4.)

24

25

26

---

27  [3] Allegations concerning KLG are provided to provide background.  Although KLG is named as a Defendant, it is not participating in the settlement, and claims against KLG are not implicated in

28  this motion.

**B.      The Parties**

       **1.      The Plaintiff Parties**

          **a.      The Named Plaintiffs**

Plaintiff Steven Siegal is a citizen of California and a resident of San Francisco.  He purchased Opus Units in San Francisco, California.

Plaintiff David Groblebe is a citizen and resident of Colorado.  He brings his claims individually and as general partner of plaintiff Grobco II, an entity formed under Colorado law. Mr. Groblebe invested as an individual and through Grobco II.  He also purchased Opus United through an Aggregator.

Plaintiff Christian Wipf is a citizen and resident of Switzerland.

Plaintiff James Rybicki is a citizen and resident of Nevada.

Each of the Plaintiffs allegedly purchased Opus Units directly from Opus and they continue to hold those investments.  (Compl., ¶10; Declaration of Steven Siegal ("Siegal Decl."), ¶2; Declaration of David Groblebe ("Groblebe Decl."), ¶2; Declaration of Christian Wipf ("Wipf Decl."), ¶2; Declaration of James Rybicki ("Rybicki Decl."), ¶2.)

          **b.      The Bankruptcy Trustees**

On the Petition Date, TVC and its affiliates and Opus filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  (See petitions listed *supra*, Section II.A.2., at p.4.)  On March 25, 2013, the Bankruptcy Court entered an Order converting the Chapter 11 bankruptcy cases to cases under Chapter 7 of the Bankruptcy Code.

On March 26, 2013, the Office of the United States Trustee for the District of Delaware made the following appointments:

    (i)      Charles A. Stanziale, Jr. was appointed as Chapter 7 Trustee for the Estates of Tri-Valley Corporation, Tri-Valley Oil & Gas Co., and Select Resources Corp., Inc., (the Estates are referred to collectively as the "TVC Debtors")

    (ii)      Jeoffrey L. Burtch was appointed as Chapter 7 Trustee for the Estate of TVC Opus I Drilling Program, L.P.

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

In accordance with their duties under the Bankruptcy Code, the aforementioned Chapter 7 Trustees (the "Trustees") investigated the estates' potential causes of action against former directors and officers of TVC for breaches of fiduciary duty, equitable subordination, disgorgement of improperly received funds from the estate, and fraudulent and preferential transfers, and instituted a number of adversary actions in the Bankruptcy Court (the "Adversary Proceedings"):

i.    *Stanziale, Jr. v. Blystone, et al.*, Adv. Pro. No. 13-51212-MFW (Bankr. D. Del. 2013);

ii.   *Burtch v. Blystone, et al.*, Adv. Pro. No. 13-51214-MFW (Bankr. D. Del. 2013);

iii.  *Stanziale, Jr. v. Gamble, et al.*, Adv. Pro. No. 13-51312-MFW (Bankr. D. Del. 2013);

iv.   *Burtch v. Gamble, et al.*, Adv. Pro. No. 13-51316-MFW (Bankr. D. Del. 2013);

v.    *Stanziale, Jr. v. Blystone*, Adv. Pro. No. 14-50625-MFW (Bankr. D. Del. 2014);

vi.   *Stanziale, Jr. v. Kromer*, Adv. Pro. No. 14-50623 (Bankr. D. Del. 2014);

vii.  *Stanziale, Jr. v. Bush*, Adv. Pro. No. 14-50624 (Bank. D. Del. 2014);

viii. *Stanziale, Jr. v. Kandle*, Adv. Pro. 14-50622 (Bankr. D. Del. 2014). [4]

Certain of the Adversary Proceedings included allegations that the directors and officers of TVC caused approximately $40 million in damages on account of breaches of fiduciary duty, including the payment of nearly $20 million in illegal commissions to Sarafraz.  (Request For Judicial Notice in Support of Motion for Preliminary Approval ("RJN"), Declaration of Kevin K. Eng In Support of Motion For Preliminary Approval ("Eng Decl.") Exh. C (*Burtch v Blystone* Complaint), ¶80, at p. 16; Exh. D (*Stanziale v. Blystone* Complaint), at pp. 12-13.)  Certain of the Adversary Proceedings also assert claims against G. Thomas Gamble and the George T. Gamble 1991 Trust (the "Gamble Trust" and together with G. Thomas Gamble, "Gamble"), as lender to TVC, to avoid certain prepetition liens and equitably subordinate their claims.  (RJN; Eng Decl.

---

[4] The Adversary Proceedings also included *Official Committee of Equity Security Holders of TVC Opus I Drilling Program, L.P., et al. v. Gamble, et al.*, Adv. Pro. No. 12-50994-MFW (Bankr. D. Del. 2012), which was filed by a statutory committee of Opus equity holders appointed in the bankruptcy cases.  It was not originally filed by the Trustees.

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

Exh. E (*Burtch v. Gamble* Complaint), at pp. 20-29; Exh. F (*Stanziale v. Gamble* Complaint), pp.11-18.)

The Trustees are also filing a Motion in the Bankruptcy Court seeking approval of the settlement.

## 2. Defendants

### a. The Settling Defendants

The Defendants include a number of former officers and directors of the TVC Debtors. These Defendants' names and capacities are:

- G. Thomas Gamble, former Chairman of the Board of TVC; the Gamble Trust was a lender to TVC and debtor-in-possession lender in bankruptcy (as approved by Order of the Bankruptcy Court).  (Compl., ¶14.)
- Loren J. Miller, Officer and Director of TVC.  (Compl., ¶15.)
- Henry Lowenstein, Officer and Director of TVC.  (Compl., ¶16.)
- Paul W. Bateman, Officer and Director; Chairman of the Board of TVC.  (Compl., ¶17.)
- Edward M. Gabriel, Officer and Director of TVC.  (Compl., ¶18.)
- James S. Mayer, Officer and Director of TVC.  (Compl., ¶19.)
- Lynn Blystone, CEO of TVC and Opus Partner.  (Compl., ¶21.)
- Maston Cunningham, CEO of TVC.  (Compl., ¶23.)

In addition, Defendants John E. Durbin and Greg Billinger served as Chief Financial Officers of TVC, and in that capacity kept books and records of TVC and Opus, and prepared, reviewed and signed financial statements for TVC and Opus.  (Compl., ¶¶24-25.)

### b. The Directors and Officers Insurers

TVC maintained D&O policies with three insurers: National Union, Arch Insurance Company, and Liberty.

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

### c.   The Non-Settling Defendants

Defendant Behrooz Sarafraz was an alleged agent of TVC for the purpose of selling Opus investments and one of the individuals who received substantial commissions relating to these sales.  (Compl., ¶20.)

Defendant Alfred Lopez is a resident of New Mexico.  Mr. Lopez allegedly sold units of Opus indirectly, in California and elsewhere for which he and others were paid commissions in violation of law.  (Compl., ¶22.)

The law firm of K&L Gates LLP ("KLG") simultaneously represented OPUS and TVC immediately prior to the bankruptcy and prior to the conversion of the Chapter 11 proceedings to Chapter 7.  Its representation of these parties was an alleged conflict of interest, which purportedly resulted in injury to the Class.  (Compl., ¶6.)

### C.   Class Allegations and Class Claims

The named Plaintiffs bring this action individually and as class representatives of a putative class of Opus investors.  (Compl., ¶11.)  Specifically, the putative Class consists of all persons and entities who purchased Opus Units, whether directly from Opus or through Aggregators.  Excluded from the Class are the Defendants (including, if applicable, any officers, employees and agents of the Defendants); any "finder" or person who received a commission or was otherwise paid compensation for the sale of Opus Units, without being registered as a broker-dealer; [5] Plaintiff's counsel; and any member of the judiciary presiding over this action.  (Compl., ¶¶11, 34.)

The Class includes a Subclass of individuals who purchased through Aggregators.  In addition to his Direct Investments, Mr. Groblebe (like numerous other investors) purchased Opus Units through an Aggregator.  Mr. Groblebe brings this action on behalf of a Subclass of investors who purchased Opus Units indirectly from Aggregators ("Indirect Investor Class"), including

---

[5] Any unregistered broker who paid back commissions to TVC prior to the filing of this action is not included in the definition of "finder" such that they would be included in the putative Class and Settlement Class.  Plaintiffs do not believe that any finder had repaid commissions to TVC before the Complaint was filed, and are not aware of any finder having repaid commissions after the Complaint was filed.

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

Defendant Lopez.  (Groblebe Decl. ¶2.)  The Indirect Investor Class is defined as all investors who purchased interests in partnerships or limited liability companies whose principal business purpose was to aggregate investor funds for the purposes of purchasing Opus Units, or alternatively whose principal business purpose was to raise money for Opus.  (Compl., ¶12.)

Both the Class and Indirect Investor Class bring claims against Defendants for, among other things, breaching the fiduciary duties owed to the Plaintiffs and for statutory violations. (Compl., ¶¶ 5, 7.)

## III.    THE MEDIATION AND THE SETTLEMENT

Shortly after this action was filed on June 27, 2013, it became clear that there were limited resources available for settlement of the various claims asserted by the Plaintiffs in this action, as well as the claims asserted by the Trustees in the Delaware Bankruptcy Court.  Given the highly complex nature of the proceedings and the risks involved in litigation, among other factors, the parties began discussions regarding the possibility of reaching a consensual resolution.  The Settling Parties eventually agreed to retain David Geronemus, an experienced and well regarded mediator with JAMS, based in New York City.  On November 12, 2013, a mediation involving the parties and counsel in this action and in the jointly administered proceedings in the United States Bankruptcy Court for the District of Delaware took place in New York City.  No settlement was reached at this initial session, but the mediation was productive and the parties agreed to continue the mediation to allow for additional discussions and continued opportunity to resolve the dispute. (Declaration of Edward Zusman In Support of Motion For Preliminary Approval ("Zusman Decl."), ¶ 2.)

On January 8, 2014, the parties at the prior mediation held a continued mediation session. The January 8 mediation was again productive, but did not conclude in a settlement.  Nonetheless, the parties agreed to a further mediation session, which was held on February 7, 2014.  The February mediation session resulted in a settlement in principle between the Plaintiffs in this action, the Settling Defendants in this action (including insurance carriers), and the Trustees in the Delaware bankruptcy proceedings.  (Zusman Decl., ¶ 3.)

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

Although the Settling Parties reached their agreement in principle in February, there remained a large number of technical details that needed to be resolved before a settlement agreement could be finalized.  All parties engaged in extensive negotiations regarding the terms of the Settlement Agreement over the next several months.  Furthermore, the Plaintiffs in this action and the Trustees engaged in extensive discussions regarding the allocation of settlement proceeds and the coordination of non-settled litigation against the Non-Settling Defendants, the settlement of this action (at least as it pertains to the Settling Defendants) and the numerous procedural issues that the parties needed to address and resolve for purposes of the Settlement.  (Zusman Decl., ¶ 4; Eng Decl., ¶ 2.)

Further, certain of the Defendants had directors and officers insurance coverage, which implicated certain insurance carriers (the "D&O Insurers").  The D&O Insurers have agreed to extend coverage to the covered Defendants, for Settlement purposes.  As interested parties under the Settlement, the D&O Insurers also participated in the post-mediation negotiations and are parties to the Settlement Agreement.  (Zusman Decl., ¶ 5.)

Additionally, the Plaintiffs and the Trustees are each asserting claims against the Non-Settling Defendants, such that even if the proposed Settlement is approved, there will be continued litigation against those Non-Settling Defendants.  The Plaintiffs and the Trustees have discussed coordination of future proceedings, and have reached agreement amongst themselves as to how the litigations will be coordinated post-Settlement in order to maximize efficiency and keep members of the Settlement Class informed.  (Zusman Decl., ¶6.)

## IV.   SETTLEMENT TERMS

The terms of settlement are specifically set forth in the Settlement Agreement, a copy of which is concurrently submitted with this motion.  (Eng Decl., Exh. A.)  A summary of the chief terms of settlement follows.

### A.   Settlement Fund

The Settlement provides for a total net payment of $9,000,000 (the "Settlement Fund").  Under the Agreement, if approved, National Union will provide a total of $3,733,513.87; Arch, $3,736,993.07; Liberty, $529,493.07; and Gamble, $1,000,000.  (Eng Decl. Exh. A, ¶3, at pp. 3-

4.)  The Plaintiffs and Trustees have agreed on the following allocations: $4.5 million to the Plaintiffs in this action; $2.25 million to the TVC Trustee; and $2.25 million to the Opus Trustee. (*Id.*, ¶4, at p. 4.)

### B.    Attorneys' Fees and Expenses

If the Court grants preliminary approval of the Settlement, the Plaintiffs will request an award of reasonable attorneys' fees and litigation expenses.  As memorialized in the Settlement, any award of attorneys' fees and expenses to Plaintiffs' Counsel will come from the Plaintiffs' allocation of the Settlement Fund.  The award will not be paid from either of the Trustees' allocations or any separate source of funding.  There is no "clear sailing" provision in the Settlement precluding any party from objecting to a fee request.  (Eng Decl., Exh. A, ¶10, at p.9.)

### C.    Class Notice

The Plaintiffs propose that the Settlement Class be notified by first class mail.  Plaintiffs have obtained a list of all members of the Settlement Class from Opus's books and records, including addresses and amounts invested.  In addition to mailing of documents to the Settlement Class, Plaintiffs propose establishing a website from which information about the litigation and proposed Settlement will be available, and documents may be downloaded.

Plaintiffs propose that the following documents be provided to the Settlement Class: (1) Notice of Settlement; and (2) Claim Form.  Copies of these forms have been submitted for the Court's review.  (Eng Decl., Exh. A, at pp. 27-36 and pp. 37-38.)

Plaintiffs believe the Notice of Settlement describes the litigation accurately and fairly.  It is designed to prominently identify that the Notice is an official, court-approved document that contains information that it important to the rights of the Settlement Class members.  It is set forth in an accessible format, containing a Table of Contents on the second page.  The content of the Notice is organized in a question-and-answer format and is written in plain English.  It explains the Class member's rights, how they will be affected by the Settlement if it is approved, and explains each of the courses of action that the Class member may pursue along with the consequences of each course of action.  It is also written in neutral, non-argumentative terms.

Similarly, the Claim Form is concise, and sets forth the information regarding each Class member's Opus investment, including amount invested, according to the records obtained from Opus and TVC.  Also, it allows a Class member to dispute the amount of his or her investment, by completing a portion of the form, signing it under penalty of perjury, and returning it to the settlement administrator.  Plaintiffs also propose a web site, where the Notice, Claim Form, and other key documents will be available for download.

To administer the mailing and Claims process, Plaintiffs propose retaining CPT Group, Inc. ("CPT").  CPT is an experienced, well-regarded provider of claims handling services. Plaintiffs' counsel has previously retained CPT and found it to be a fully capable and competent administrator.  Plaintiffs' counsel has contacted CPT regarding its potential retention as Settlement Administrator in this action, and CPT is willing and able to serve in that capacity, if the Court approves its appointment.  (Eng Decl., ¶6.)

### D.     Submission of Claim Forms, Opt-Out Requests, or Objections

Plaintiffs propose a period of 45 days, commencing from the time that Notices and Claim Forms are deemed mailed, (the "Claim Period") during which the Settlement Class may submit Claim Forms, Opt-Out Requests, or Objections.  With respect to Claim Forms, Settlement Class Members may sign and return the forms if they accept the provided information.  Alternatively, Settlement Class Members may contest the stated amount by providing supporting documentation, if they believe the amount is incorrect.

### E.     Acceptance of Settlement; Defendants' Right To Terminate; Payments

If the Settlement Class Members unanimously accept the Settlement, the Settlement will proceed to Final Approval.  If Settlement Class Member(s) timely and validly request exclusion from the Settlement Class, the Settlement can be terminated by Defendants if two or more Defendants give written notice of termination to all parties under the Agreement.

### F.     Release of Claims

Under the Settlement, the Plaintiffs, Trustees, and Settling Defendants have each agreed to mutual releases of claims relating to the subject matter of the litigation described above (the "Proceedings").  Further, the D&O Insurers and the Settling Defendants have agreed to mutual

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

releases in connection with the Proceedings.  Finally, all of the Settling Parties have agreed, upon approval of the Settlement, to seek the entry of bar orders from this Court and the Bankruptcy Court to give full effect to the released claims.

### G.    No Admission of Liability

The Settling Defendants have entered into the Settlement without admitting any wrongdoing and make no admissions concerning any allegations in the Proceedings.  The Settling Defendants are reserving all rights should the Settlement not become final and effective.  The Settling Defendants do not agree with certain of the statements and positions stated herein.

### H.    Court Approval and Order of Dismissal

The Settlement is contingent on final approval by this Court and approval by the Bankruptcy Court.  The Settlement is also contingent on entry of appropriate Bar Orders by both courts.

## V.    THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED

In reviewing a proposed class-wide settlement, a court must assess whether the requirements of Rule 23[6] are satisfied.  Under Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  FED. R. CIV. P. 23(a).  One of the requirements of Rule 23(b) must also be satisfied.

### A.    Numerosity

The proposed Settlement Class, consisting of all Opus investors (excluding any Defendants and their nuclear families), satisfies numerosity.  There are 73 general partners and 222 limited partners.  Defendants, related entities,[7] and finders are excluded from the Class.  (Compl., ¶ 34; Eng Decl., Exh. A, ¶11.a., at p.9.)  A number of Defendants and finders held multiple Opus partnership interests in various capacities, and through various entities (for example, trusts).  Thus,

---

[6] All unspecified "Rule" references are to the Federal Rules of Civil Procedure.

[7] Also excluded from the Settlement Class are the Defendants' "parent companies and subsidiaries, and members of their nuclear families."

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

in the aggregate, Settling Defendants hold interests in investments held by 58 different Opus partners.  Excluding those entities, there are 237 members of the Settlement Class.[8]  The size of the proposed Settlement Class satisfies the numerosity requirement.  *See Covillo v. Specialtys Cafe*, C-11-00594 DMR, 2013 WL 5781574 (N.D. Cal. Oct. 25, 2013) (finding numerosity where class members were identifiable from defendant's records); *see also Four In One Co. v. S.K. Foods, L.P.*, 2:08-CV-3017 KJM EFB, 2014 WL 28808, *4 (E.D. Cal. Jan. 2, 2014) (noting numerosity found in classes of fewer than 100 members).

### B.    Commonality

This case also presents "questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  Factual and legal questions do not need to be identical to satisfy commonality.  Shared legal issues with divergent facts, or conversely a core of relevant facts with disparate legal remedies, will meet the requirement.  *See Covillo*, 2013 WL 5781574, at *6.  Here, each of the investors purchased Opus Units based on common marketing and sales representations.  For example, the Opus Units were sold by use of a Private Placement Memorandum ("PPM"), which was prepared by TVC.  The Complaint alleges that (i) the PPM did not disclose any of the numerous alleged improprieties described above; (ii) the PPM stated that TVC would not pay any sales commissions for sales made by its officers (iii) the PPM stated that TVC may sell Opus Units through broker-dealers, in which case TVC would pay no more than 9% in commissions, and that as to "finders," the PPM stated that TVC may offer up to 9% as finders' fees; and (iv) all sales were effected through finders – essentially unlicensed brokers.  These questions of law and fact are common to all Settlement Class Members.  All members of the Settlement Class are asserting the same claims, and for purposes of those claims the material facts are the same.  (Compl., ¶¶ 42-44.)  Therefore, the commonality requirement is satisfied.

### C.    Typicality

Typicality exists where the claims and defenses of the representatives are typical of those of the putative class.  FED. R. CIV. P. 23(a)(3).  Typicality is met if each class member's claim

---

[8] Eleven of the named Defendants were Opus investors.  In addition, there are 15 finders who are excluded from the Class of investors.

1  arises from the same course of events, and makes similar legal arguments to establish liability.

2  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).  Here, the Settlement Class Members are

3  all investors in Opus.  The legal claims are the alleged facts giving rise to them are typical of all

4  class members.  The course of conduct giving rise to each Class member's claims is virtually

5  identical.  Therefore, the Plaintiffs' claims are typical of the Class.

6      **D.    Adequacy of Representation**

7      The inquiry into adequacy focuses on whether absent class members are being adequately

8  represented.  The analysis on this prong asks whether the named Plaintiffs and their counsel have

9  any conflicts of interest with other class members, and whether Plaintiffs and their counsel will

10  prosecute the action vigorously on behalf of the class.  *Staton v. Boeing*, 327 F.3d 938, 957 (9th

11  Cir. 2003).

12      Plaintiffs and their counsel are aware of no conflict with any other class members.  To the

13  best of Plaintiffs' knowledge, all Settlement Class Members agree that material misrepresentations

14  were made in connection with the sale of Opus Units.  Further, Plaintiffs believe that all

15  Settlement Class Members agree with this litigation and the relief that Plaintiffs are seeking.  The

16  Plaintiffs understand their duties as class representatives, and are prepared to serve in that

17  capacity.  (Siegal Decl., ¶¶3-4; Rybicki Decl., ¶¶3-4; Groblebe Decl., ¶¶3-4; Wipf Decl., ¶¶3-4;

18  Zusman Decl., ¶7; Eng Decl., ¶6.)

19      The lack of conflict is further bolstered by the fact that the SEC instituted an action against

20  Mr. Sarafraz, arising from the same conduct that Plaintiffs allege.  (Eng Decl., Exh. B.)[9]  In the

21  SEC action, which was filed in this Court, Mr. Sarafraz entered into a civil consent judgment,

22  pursuant to which he is required to pay a total of $22,482,318.87, consisting of $16,406,459 in

23  disgorgement, and $6,075,859.87 in prejudgment interest.  Sarafraz was also assessed a $50,000

24  penalty.  (Eng Decl. Exh. B.)  News of the SEC action and the settlement has reached a number of

25  absent Settlement Class Members, several of whom have been in contact with Plaintiffs' counsel,

26  and have not expressed any antagonism towards Plaintiffs or this action.  (Eng Decl., ¶6.)

27  _____
[9] *Securities and Exchange Commission v. Behrooz Sarafraz*, Civil Action No. 3:14-CV-02252

28  (EDLx), U.S.D.C. Northern District of California.

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

Plaintiffs and their counsel have, and will continue to, prosecute this action vigorously on behalf of all Settlement Class Members.  (Zusman Decl., ¶8.)

Finally, Class Counsel is experienced both in securities litigation and in class action litigation.  (Zusman Decl. ¶8; Declaration of John Fabry In Support of Motion For Preliminary Approval ("Fabry Decl."), ¶¶2-3.)  The Plaintiffs have retained Edward S. Zusman and Kevin K. Eng of Markun Zusman Freniere & Compton, LLP, and John Fabry of Mueller Law Offices to represent them and the putative class.  Class Counsel possesses experience uniquely tailored to this representation.  (Zusman Decl., ¶8; Fabry Decl., ¶¶2-4.)  Class Counsel's experience in relevant subject matter supports adequacy and favors preliminary approval.  *Mulligan v. Impax Labs., Inc.*, C-13-1037 EMC, 2013 WL 3354420, *9 (N.D. Cal. July 2, 2013) (approving class counsel where experienced in securities class actions); *In re Skilled Healthcare Grp., Inc. Sec. Litig.*, CV 09-5416 DOC RZX, 2011 WL 280991 (C.D. Cal. Jan. 26, 2011).

### E.    Predominance

Finally, predominance under 23(b)(3) is satisfied if common questions of law and fact predominate over any individual ones.  FED. R. CIV. P. 23(b)(3).  All of the claims arise from the same set of operative facts, as discussed above.  (*See supra*, Section V.B. (discussing commonality).  The common questions of law and fact, including whether the sales of Opus securities, allegedly conducted through uniform misrepresentations and omissions, can be resolved on a class-wide basis using class-wide evidence.  *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012).  The Plaintiffs' claims implicate the same set of operative facts and common proximate cause.  *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (finding predominance where class of investors was injured by alleged false and misleading statements).  The requirements of Rule 23(a) and 23(b) are satisfied.

## VI.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT SHOULD BE GRANTED

### A.    Standard for Preliminary Approval

Judicial policy in the Ninth Circuit strongly favors the settlement of class actions.  *See Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, *7 (N.D. Cal., Apr. 22, 2010)

(citing *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir.2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.1992); *Officers for Justice v. Civil Service. Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir.1982).

Procedurally, the approval of a class action settlement takes place in two steps. First, the Court determines whether preliminary approval should be granted, with notice of the proposed settlement being given to the class. *Hawthorne v. Umpqua Bank*, 11-CV-06700-JST, 2014 WL 4602572, *2 (N.D. Cal. Sept. 15, 2014); *Alberto v. GMRI, Inc., d/b/a Olive Garden*, 252 F.R.D. 652, 659 (E.D. Cal. 2008); *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2008 WL 3385452, *2 (N.D. Cal. Aug. 8, 2008). Second, after proper notice has been given to the class, the Court conducts a fairness hearing to more fully assess the proposed settlement under Rule 23(e) requirements and evaluate any objections. *Hopson*, 2008 WL 3385452, *2; *Alberto*, 252 F.R.D. at 659 (citing *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)).

The purpose of preliminary approval is simply to lay the groundwork for the future fairness hearing. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the preliminary approval stage, the Court need only "'determine whether the proposed settlement is within the range of possible approval.'" *Alberto*, 252 F.R.D. at 666 (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)). A detailed review of the settlement is unnecessary at this juncture. *West v. Circle K Stores, Inc.*, 2006 U.S. Dist. LEXIS 42074 at * 29 (E.D. Cal. 2006); *In re M.L. Stern Overtime Litig.*, 2009 U.S. Dist. LEXIS 31650 at *9-10 (S.D. Cal. 2009). As noted by the Second Circuit, granting preliminary approval and authorizing dissemination of notice "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n – Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

Courts balance various factors in evaluating the settlement. These factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

1  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

2  As discussed below, these factors are readily satisfied.  That is certainly the case for

3  preliminary approval, and, indeed, there is a strong likelihood that final approval of the proposed

4  settlement will be granted.

5  **B.**    **Strength of Plaintiffs' Case**

6  The Plaintiffs have relative confidence that their case has merit, and believe that should

7  this litigation continue, they would be able to maintain viable claims.  Plaintiffs have obtained

8  documents concerning their claims from various sources, including the TVC Trustee, class

9  members, and documents obtained by Mr. Miller, in his capacity as an Opus investor, and through

10  his participation on the Opus Special Committee.  (Miller Decl., ¶¶2-5.)  The Plaintiffs believe that

11  these documents support the claims alleged in the Plaintiffs' complaint.  Also, the Plaintiffs

12  believe that the fact that the SEC pursued a civil action against Sarafraz arising from his dealings

13  with TVC and Opus, and the fact that a consent judgment was entered in that action, lends a

14  degree of support to the validity of Plaintiffs' claims.  Similarly, the fact that the Trustees have

15  independently brought claims, which arise from the same alleged misconduct that underlies

16  Plaintiffs' claims, provides some indication that Plaintiffs' claims are viable.  Plaintiffs also

17  acknowledge that the above facts are, to varying degrees, circumstantial.  The Defendants have

18  denied liability and have demonstrated that they will vigorously defend the claims asserted (which

19  would likely exhaust the insurance proceeds that are funding the Settlement).  Discovery would be

20  required to develop Plaintiffs' claims, and the record is not fully developed at this phase of the

21  litigation.  Thus, at this stage of the litigation, there is a degree of uncertainty as to the merits of

22  Plaintiffs' claims.  In contrast to this uncertainty, the Settlement provides definite recovery in a

23  relatively short time frame – much shorter than if the action were to proceed through litigation.

24  These circumstances favor preliminary approval.  *See State of California v. eBay, Inc.*, No. 5:12-

25  CV-05874-EJD, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014) (finding that settlement was

26  fair, reasonable, and adequate where the litigation, which was at pleadings stage, was uncertain as

27  to merits, in contrast to the definite and rapid relief offered by settlement).

28

### C.     Risk, Expense, Complexity, and Likely Duration of Further Litigation

As a general rule, acceptance and approval of a settlement are preferable to lengthy, expensive litigation with uncertain results. *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526. That general rule holds true under the circumstances of this case. A chief benefit of approving the Settlement is certainty and relative immediacy. Although the negotiations up to this point have been extensive, they are short in comparison to the time that would be required to litigate this case fully to conclusion. Similarly, although the Settling Parties have expended considerable time in negotiating the many pieces of the Settlement, as described above, Plaintiffs are confident that the expense of litigation would far exceed the time and costs already incurred. Discovery would be protracted given the large number of actions and parties, necessitating multiple written discovery requests, and requiring many depositions.

Plaintiffs also expect that there would also be substantial motion practice. None of the Defendants has filed any responsive pleading, and one or more of the Settling Defendants undoubtedly would file motions to dismiss. Further, Plaintiffs would have to move for class certification, which would certainly be a contested issue. In the context of this Settlement, the Settling Defendants have agreed to certification for settlement purposes only, but have expressly reserved the right to challenge class certification. If the Settlement is not approved for any reason, it is likely that the Settling Defendants would rejoin the ranks of the Non-Settling Defendants in mounting procedural and substantive challenges. Defendants may well raise convincing arguments as to the propriety of class certification. For example, they may argue that there are individualized facts as to each Class Member's purchase of Opus Units, which were accomplished in separate transactions. Defendants would have the opportunity to raise class certification challenges at multiple phases of the litigation: prior to certification; interlocutory appeal and/or appeal under Rule 23(f) ; after certification (e.g. through motion for reconsideration or motion to decertify); or after judgment on the merits. These procedural hurdles will prolong the litigation and increase the expense. (Zusman Decl., ¶13.)  Settlement is preferable to protracted proceedings such as these. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

Plaintiffs believe that the road to a judgment would be long and arduous.  Even if Plaintiffs are able to obtain a judgment in their favor, the amount of any judgment would be uncertain. Furthermore, the Trustees and the Plaintiffs in this action have asserted overlapping claims and, absent a settlement, the Plaintiffs and the Trustees could be parties to further litigation relating to their entitlement to any litigation recoveries.  In contrast to these uncertainties, the Settlement provides the Settlement Class with definite relief, with both certainty and immediacy.

Moreover, certain of the Defendants are beneficiaries of wasting limits insurance policies. Under those policies, coverage is not certain and if the matter proceeds beyond this settlement, it is likely that: (a) coverage would be contested; and (b) some or all of available limits would be eroded through attorneys' fees, rather than contributed towards a settlement.

Consideration of these factors favors approval.  *See In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (noting "immediate and certain award for a large number of potential class members . . . .").  Avoiding unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as conserve judicial resources. *Garner*, 2010 WL 1687832, at *10. Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement. *Rodriguez*, 563 F.3d at 964; (Zusman Decl., ¶12.)

### D.       Risk of Maintaining Class Action Through Trial

Plaintiffs believe that certification of a class is appropriate here, given the uniformity in sales practices and representations made to induce purchases of Opus Units.  Even so, Plaintiffs acknowledge that certification is not a foregone conclusion.  Moreover, the grant of class certification initially will not necessarily end the question of class treatment.  As discussed above, the question of class certification is a recurring one that may come up at several points in the litigation.  Each instance carries the risk of decertification, which would have a substantial effect on the litigation.  The risk of maintaining class action status favors approval. *Larsen v. Trader Joe's Co.*, 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014).  Further, maintaining the case as a class action would jeopardize the available funds.  TVC and Opus are in bankruptcy, so the longer the litigation drags on, the further available funds will be depleted. *Ching v. Siemens Indus., Inc.*, 11-CV-04838-MEJ, 2014 WL 2926210, *4 (N.D. Cal. June 27,

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

1  2014).  In addition to the above risks, there remains the burden that Plaintiffs have to prove their

2  claims on the merits.  These hurdles further demonstrate that the Settlement, and the immediate

3  relief it would provide, upon approval, represent a superior alternative to maintaining the claims

4  through trial.  (Zusman Decl., ¶13.)

5          **E.      Amount Offered In Settlement**

6          Further, the Settlement offers meaningful cash payment to the Settlement Class.  The Ninth

7  Circuit has observed: "it is the very uncertainty of outcome in litigation and avoidance of wasteful

8  and expensive litigation that induce consensual settlements. The proposed settlement is [thus] not

9  to be judged against a hypothetical or speculative measure of what might have been achieved by

10 the negotiators." *Officers for Justice*, 688 F.2d at 625.  A settlement is by definition a

11 compromise, so it is inappropriate to measure a settlement against the harsh, unyielding yard stick

12 of the highest hopes of the litigation.  *Id.* at 624 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330

13 (5th Cir.1977)).  The mere fact that a settlement affords a small fraction of potential recovery does

14 not render the settlement inadequate.  *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit*

15 *Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014) (citing *Linney v. Cellular*

16 *Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir.1998); *City of Detroit v. Grinnell Corp.*, 495

17 F.2d 448, 455 & n. 2 (2d Cir. 1974)).

18         On the basis of the Corporations Code claims alone, Plaintiffs estimate that approximately

19 $60,000,000 of the Opus transactions are subject to rescission.  The Settlement provides for

20 approximately 7.5% of the rescission claim.  (Zusman Decl., ¶ 11.)  The availability of this

21 substantial relief is more valuable considering the risk that is posed by bankruptcy proceedings.

22 *See Atlas v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 WL

23 3698393, at *3 (S.D. Cal. Nov. 4, 2009) (noting that defendant's bankruptcy increased risk of

24 judgment being unsatisfied).  Viewed under the above standards, the Settlement offers substantial

25 relief.  *See In re Omnivision*, 559 F. Supp. 2d at 1042 (noting median amount recovered in

26 shareholder class action settlements of between 2.2 and 3%).  Because the Settlement provides

27 significant, discernible benefits to the Settlement Class, this factor weighs in favor of approval.

28 *Ching*, 2014 WL 2926210, at *4.

**F.      Extent of Discovery Completed**

Plaintiffs have conducted a thorough investigation that has yielded the functional equivalent to considerable discovery.  Mr. Miller has provided valuable insight into the underlying facts, including providing more than 4,600 pages of documents to Plaintiffs.  These documents include written correspondence from TVC to the Opus investors, including releases and mass emails, through which representations concerning the Opus Units were made to the investors, including the members of the Settlement Class.  These documents also contained information regarding the Opus investors, including names and amounts invested.  Further they included documents evidencing the alleged improprieties from which the Plaintiffs' claims arise.  (Zusman Decl., ¶¶ 9-10; Eng Decl., ¶¶3-4.)

In addition to information and documents obtained through Mr. Miller, Plaintiffs were able to obtain information through the Trustees.  In total, Plaintiffs have obtained and reviewed over 128,000 electronic files from the Trustees.  These electronic files are in various formats, including Word, Excel, and PDF, such that each file is the equivalent of multiple pages of documents in hard copy.  Therefore, Plaintiffs have obtained many hundreds of thousands of pages of documents relevant to their claims.  Despite the extremely large volume of documents already obtained, much discovery would remain to be conducted, without the Settlement.  That discovery would come at great cost.  When weighed against the risks of proceeding with litigation, discussed above, the returns from this costly discovery is uncertain.

Even without formal discovery, the investigations and informal discovery conducted by Plaintiffs to date is sufficient for the parties and the Court to conduct a meaningful evaluation of the merits.  This prong of the analysis weighs in favor of approval.  *Cf. Lewis v. Starbucks Corporation*, 2008 U.S. Dist. LEXIS 83192 at *17 (E.D. Cal. 2008) (approval of class action settlement following limited discovery is proper so long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their position).

**G.      Experience and Views of Class Counsel**

The recommendations of counsel are given great weight since they are most familiar with the facts of the underlying litigation.  *Nat'l Rural Telecomms.*, 221 F.R.D. at 528.  In this case,

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

Class counsel also has significant experience in class actions and securities litigation. They have served as class counsel in dozens of cases, and have collectively handled hundreds of securities matters. (Zusman Decl., ¶8.) Counsel's views are informed by their experience, which is uniquely suited to the action and the proposed Settlement. In addition, they have pursued the case diligently, have conducted thorough evaluation of their clients' legal claims, and have gathered and evaluated evidence pertaining to those claims. Counsel's views carry additional weight, given their experience. *See State of California v. eBay, Inc.*, 2014 WL 4273888, at *6.

Class Counsel is of the view that the proposed settlement is fair, reasonable and adequate in light of the circumstances. The negotiated Settlement terms provide meaningful relief to the Settlement Class. The $4,500,000 that is allocated to the Settlement Class is substantial, and reflects a fair compromise of the claims asserted against the Settling Defendants. Having reviewed the finances of the Opus entities and Settling Defendants, and having had candid settlement discussions facilitated by an experienced mediator, Plaintiffs' counsel has determined that there are limited sources of funds from which claims may be satisfied. The most significant sources of potential funds are the proceeds from a number of D&O policies covering the TVC officers and directors. Under the proposed Settlement, the D&O policies are collectively contributing a total of $8,000,000 towards the settlement fund. Gamble is contributing $1,000,000 into the Settlement fund and, as part of the settlement, will agree to waive over $1.8 million in claims asserted against the TVC and Opus bankruptcy estates. Counsel's investigation reveals that there are no other significant sources from which a judgment against the Settling Defendants could be satisfied. Further, the Plaintiffs' and Trustees' claims against these Settling Defendants draw upon the same funds. The agreed-upon allocation of funds among Plaintiffs and Trustees provides a mechanism for the orderly distribution of limited funds. Further, in Class Counsel's view, protracted litigation is not likely to yield better results for Plaintiffs. Litigation could theoretically lead to a judgment that is greater than the amount received in Settlement. But with limited funds available, that hypothetical result would be a hollow victory, as cost of litigation and possibly competing judgments would have diminished the available funds. (Zusman Decl., ¶11.)

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM

### H.     Reactions of Class Members to Proposed Settlement

This factor cannot be analyzed at this phase of the proceedings.[10]  If the Court grants preliminary approval, Plaintiffs will be able to address this factor in greater detail after settlement notices are mailed to members of the Settlement Class.  Plaintiffs believe that a predominant portion of the Settlement Class will support the Settlement.  Plaintiffs' counsel has been contacted by many Settlement Class Members, and they have generally expressed support for the Settlement.  The Class's anticipated approval is significant because "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Nat'l Rural Telecomms.*, 221 F.R.D. at 529.  Thus, the Court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."  *Create–A–Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920, at *15 (N.D. Cal. Sept. 22, 2009); *see also DIRECTV, Inc.*, 221 F.R.D. at 529; *Ching*, 2014 WL 2926210.

### I.     Lack of Collusion

Additionally, where a settlement is reached prior to class certification, courts will apply a higher level of scrutiny to assure that the settlement was not the result of collusion.  This additional layer of inquiry serves to protect the absent class members.  The Ninth Circuit provided guideposts for detecting collusion in *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  Signs that collusion may exist include: (1) a disproportionate distribution of the settlement to counsel; (2) negotiation of a "clear sailing provision" under which defendants agree not to oppose an attorneys' fee award up to a specified cap; and (3) when the parties arrange for fees not awarded to revert to defendants rather than added to the class fund.  *Id.* at 947.  Consideration of these factors supports approval of the Settlement.

First, counsel is not seeking a disproportionate distribution of the settlement.  Counsel will separately seek an award of attorneys' fees and costs, to come from the $4,500,000 lump sum

---

[10] Class Counsel has been in contact with several Settlement Class Members, in addition to the Class Representatives, and in those communications the Settlement Class Members have been positive about settlement.

allocated to Plaintiffs under the settlement.  Plaintiffs' Counsel will seek an amount of fees commensurate with the result and in accord with Ninth Circuit benchmarks.  Plaintiffs' Counsel anticipates they will request no more than 27.5% of the allocation.

Second, the Settlement contains no "clear sailing provision" of the type that may implicate collusion.  The Settlement Agreement acknowledges that Class Counsel will seek an award of attorneys' fees and costs.  However, it does not specify the amount that Class Counsel will seek, nor does it require any of the Settling parties to take any action (or forego any action) with respect to Class Counsel's request for costs and fees.  None of the Settling parties are prohibited from opposing Plaintiffs' Counsel's request for fees and costs.

Lastly, the third and final *In re Bluetooth* factor poses no barrier to approval.  The Settlement calls for the Settling Defendants (individually or through their insurers) to provide certain amounts into the collective settlement fund.  Regardless of how the funds are allocated (i.e. whether to Plaintiffs or to the Trustees) those funds will not revert to Defendants or the insurers.  Therefore, the *In re Bluetooth* factors verify that there is no risk of collusion in this case.

### J.  Arms-Length Negotiations

Perhaps most importantly, the proposed settlement in this case was the product of extensive, good-faith, arms-length negotiations.  Early in the proceedings, the Settling Parties recognized that, due to the complexities of this action, they would not be able to negotiate a settlement without assistance.  In the course of early discussions among counsel for the parties, the Settling Parties determined that settlement discussions would be a worthwhile time investment.  They therefore agreed to enlist the aid of David Geronemus, of JAMS.  (Zusman Decl., ¶2.)  JAMS in general, and in particular Mr. Geronemus, are well respected in the world of alternative dispute resolution.  The parties decided that Mr. Geronemus was qualified to serve as a mediator and agreed to have multiple mediation sessions in New York City.  Mr. Geronemus reviewed voluminous documents and evidence submitted by the parties and worked diligently with the parties and their counsel to negotiate a reasonable settlement.  The fact that the Settlement was negotiated with the assistance of a prominent mediator such as Mr. Geronemus weighs in support of preliminary approval.  *See Ko v. Natura Pet Products, Inc.*, No. C 09-02619 SBA, 2012 WL

3945541, at *5 (N.D. Cal. Sept. 10, 2012), appeal dismissed (Apr. 24, 2013) (finding arm's length transaction where parties mediated with retired judge); *Alberto*, 252 F.R.D. at 666.

Further, each of the Settling Parties has been represented throughout this litigation, and throughout the protracted settlement negotiations, by experienced counsel.  The fact that the Settling Parties were at all relevant times represented by able counsel who were zealously negotiating for their clients' best interests supports a finding of fairness.  *See Garner*, 2010 WL 1687832, at *13 ("Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable.").  The presumption of fairness is stronger because the Settlement was negotiated among multiple parties in multiple actions, and whose interests did not necessarily overlap completely.

In short, because of the certainty of the Settlement relief, the risks of litigation, and concurrence of counsel as to the general advisability of the Settlement, preliminary approval of the Settlement should be granted.  *See In re Wireless Facilities*, 253 F.R. D. at 612 (granting preliminary approval of settlement in securities fraud class action).

## VII.    CONCLUSION

The proposed settlement which the parties have negotiated is fair, reasonable and adequate and is within the range of possible final approval.  The proposed Settlement also meets the requirements of Rule 23.  Further, the Plaintiffs and their counsel are adequate representatives of the Settlement Class.  Accordingly, preliminary approval of the settlement should be granted.  Plaintiffs further request that the Court approve CPT as the Settlement Administrator, approve the forms of notice submitted herewith, approve the plan of notice and schedule a final approval hearing.

Dated:   January 28, 2015                    MARKUN ZUSMAN FRENIERE & COMPTON LLP

By    /s/ 
         Kevin K. Eng

Attorneys for Plaintiffs

NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM