1  Joseph P. McMonigle, Bar No. 66811
   John B. Sullivan, Bar No. 238306
2  Kate Kimberlin, Bar No. 261017
   LONG & LEVIT LLP
3  465 California Street, 5th Floor
   San Francisco, California  94104
4  jmcmonigle@longlevit.com
   jsullivan@longlevit.com
5  kkimberlin@longlevit.com
   Telephone:    (415) 397-2222
6  Facsimile:    (415) 397-6392

7  Attorneys Specially Appearing for Defendant
   K&L GATES LLP

8

9              UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12

13  STEVEN SIEGAL, JAMES RYBICKI,        Case No.  13 Civ. 3570-RS
    DAVID GROBLEBE, individually and as
14  General Partner of GROBCO II, and
    CHRISTIAN WIPF, ON BEHALF OF
15  THEMSELVES AND ALL                   **OPPOSITION OF K&L GATES LLP  TO**
    INDIVIDUALS SIMILARLY                **MOTION FOR PRELIMINARY**
16  SITUATED,                            **APPROVAL OF CLASS ACTION**
                                         **SETTLEMENT**
17              Plaintiffs,

18  v.
                                         Date:      March 26, 2015
19  G. THOMAS GAMBLE, LOREN J.           Time:      1:30 p.m.
    MILLER, HENRY LOWENSTEIN, PAUL       Courtroom: 3, 17th Floor
20  W. BATEMAN, EDWARD M. GABRIEL,       Judge:     Hon. Richard Seeborg
    JAMES S. MAYER, BEHROOZ
21  SARAFRAZ, LYNN BLYSTONE,
    ALFRED LOPEZ, MASTON
22  CUNNINGHAM, JOHN DURBIN, GREG
    BILLINGER, K&L GATES LLP,
23  CHARLES A. DALE III, JOSHUA LANE,
    AND DOES 1 THROUGH 100,
24  INCLUSIVE,

25              Defendants.

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

DOCS\S1980-015\744362.1

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................... 1

II.  FACTUAL BACKGROUND ......................................................................... 2

    A.   Tri-Valley Establishes Opus ................................................................. 2

    B.   A Dispute Arises Between Tri-Valley And Opus ................................... 3

    C.   Tri-Valley And Opus File For Bankruptcy ........................................... 4

    D.   The Debtors Sell The Pleasant Valley Assets ...................................... 6

    E.   The Bankruptcy Court Approves All of K&L's Fees ............................ 7

    F.   The Court Converts The Tri-Valley And Opus Bankruptcies To Chapter 7 ......... 7

    G.   Plaintiffs File The Class Action Lawsuit ............................................. 7

        1.   The Allegations Against and Damages Sought from the Settling Defendants ................ 8

        2.   The Single Cause of Action Against K&L Relates Only to the Tri-Valley and Opus Bankruptcies .......... 9

    H.   The Proposed Settlement with the Ten Settling Defendants ................ 10

        1.   The Settling Parties, While Excluding K&L, Spent More Than a Year-and-a-Half Negotiating The Settlement .......... 10

        2.   The Settlement Consists of Two Related Agreements, One of Which Has Not Been Presented to this Court .......... 11

        3.   The Proposed "Global Settlement" Agreement ........................... 11

        4.   Plaintiffs Negotiate an Assignment of Opus' Claims Via The "Allocation Agreement" .......... 12

III. LEGAL ARGUMENT .................................................................................... 13

    A.   Applicable Legal Standard .................................................................. 13

    B.   K&L Has Standing to Object Because the Settlement Seeks to Cut Off K&L's Contribution Rights .......... 13

    C.   The Court Should Deny the Motion for Preliminary Approval ............ 16

        1.   The Court Should Deny the Motion for Preliminary Approval Because the Proposed Settlement Includes an Illegal Term, Which Plaintiffs Failed to Disclose .......... 16

        2.   The Court Should Deny the Motion to Approve the Settlement Because It Improperly Seeks to Cut Off K&L's Contribution Rights ...... 18

            a.   The Court Should Deny the Motion for Preliminary Approval Because the Settlement Does Not Satisfy the Good Faith Requirements of California Code of Civil Procedure Section 877.6 .......... 18

                (1)   Plaintiffs Cannot Establish the Settlement Is in Good Faith Because the Ten Settling Defendants Are Each Paying Less Than 1 % of the Total Damages Sought ...... 19

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

DOCS\S1980-015\744362.1

- i -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1

**TABLE OF CONTENTS**
(continued)

2
                                                                                                  **Page**

3       (2)     Plaintiffs Do Not Offer Any Evidence of the
                Financial Condition or Insurance Policy Limits of
4               the Settling Defendants or Other Releasees ...................... 21

5       (3)     Plaintiffs Do Not Offer Any Analysis of the Settling
                Defendants' or Other Releasees' Potential Liability
6               for Contribution to the Non-Settling Defendants ............. 21

        (4)     The Undisclosed Assignment Agreement Reeks of
7               Collusion and Fraudulent Conduct ................................... 22

8    b.  If The Court Is Not Inclined to Deny the Motion for
        Preliminary Approval, K&L Requests a Continuance of the
9       Hearing to Allow It Time to Conduct Discovery......................... 22

     c.  If Plaintiffs Contend That The Bar Order Will Bar Claims
10      K&L Has Beyond Contribution, K&L Requests Permission
        To File A Supplemental Brief Regarding Why Barring
11      Claims Beyond Contribution Is Not Appropriate ......................... 22

12  D.   In the Alternative, the Court Should Continue the Motion for Preliminary
         Approval Until After the Court Rules on K&L's Rule 12(b)(6) Motion .............. 23

13  IV.   CONCLUSION ......................................................................................... 25

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

DOCS\S1980-015\744362.1                              - ii -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242 (7th Cir. 1992)....................................................14

5

*Am. Motorcycle Assn. v. Sup.Ct.* (1978) 20 Cal. 3d 578 ..............................................................14

6

*Armstrong v. Bd. of School Directors of Milwaukee*, 616 F.2d 305 (7th Cir.1980) ....................13

7

*Baum v. Duckor, Spradling & Metzger* (1999) 72 Cal. App. 4th 54 ..........................................16

8

*Bergin v. van der Steen* (1951) 107 Cal. App. 2d 8 ....................................................................17

9

*Botma v. Huser* (Ariz. Ct. App. 2002) 39 P.3d 538 ..................................................................18

10

*Chavez v. PVH Corp.*, 2015 WL 581382, *3 (N.D. Cal. 2015) ..................................................13

11

*City of Grand Terrace v. Sup.Ct.* (1987) 192 Cal. App. 3d 1251 ..............................................22

12

*City of Sacramento v. Gemsch Investment Co.* (1981) 115 Cal. App. 3d 869 ...........................14

13

*City of San Diego v. Nat'l Steel & Shipbuilding Co.*, 2014 WL 3489282, *13-14
(S.D. Cal. 2014) ........................................................................................................................19

14

15

*Epstein v. Visher*, 1997 WL 231108 (N.D. Cal. 1997) ..............................................................24

16

*Far West Fin. Corp. v. D&S Co.* (1988) 46 Cal. 3d 796 ..........................................................19

17

*GEM Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal. App. 3d 419 ...............14

18

*Goodley v. Wank & Wank, Inc.* (1976) 62 Cal. App. 3d 389....................................................16, 17

19

*Greene v. Leasing Assoc., Inc.* (Fla. Ct. App. 2006) 935 So. 2d 21 ..........................................17

20

*Gurski v. Rosenblum and Filan* (Conn. 2005) 885 A.2d 163 ..................................................17

21

*In re Checking Account Overdraft Litig.*, MDL No. 2036, 2012 WL 4173458, at *5
(S.D. Fla. Sept. 19, 2012)...........................................................................................................13

22

*In re Corrugated Container Antitrust Litig.*, 643 F. 2d 195 (5th Cir. 1981) ...............................13

23

*In re Envirodyne Corp.*, 2006 WL 2010836 (Bankr. N.D. Cal. 2006) .........................................24

24

*In Re Heritage Bond Litig.*, 546 F.3d 667 (9th Cir. 2008) ........................................................19

25

*In re Napster, Inc. Copyright Litig.*, 2005 WL 289977, *4 (N.D. Cal. 2005) ..............................23

26

*Johnson v. Sup.Ct.* (1995) 38 Cal. App. 4th 463........................................................................23

27

*Kracht v. Perrin, Gartland & Doyle* (1990) 219 Cal. App. 3d 1019 ...........................................16

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

- iii -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

**TABLE OF AUTHORITIES**
(continued)

Page

*Law Office of David J. Stern, P.A. v. Sec. Nat. Servicing Corp.* (Fla. 2007) 969 So. 2d 962........ 18

*Long Beach Mem'l Med. Ctr. v. Sup.Ct.* (2009) 172 Cal. App. 4th 865 ................................. 19, 21

*Mattco Forge, Inc. v. Arthur Young & Co.* (1995) 38 Cal. App. 4th 1337 ....................... 19, 20, 22

*Osornio v. Weingarten* (2004) 124 Cal. App. 4th 304 ...................................................... 23

*Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230 (7th Cir. 1983) ........................................... 14

*Responsible Citizens v. Sup. Ct.*, (1993) 16 Cal. App. 4th 1717 ..................................... 23

*Scher v. Slater Entm't, LLC*, 2006 WL 1799039, *12 (D.N.J. 2006) ............................... 23

*Shaw v. Replogle*, 2000 WL 1897344 (N.D. Cal. 2000) .................................................. 24

*Smith v. Arthur Andersen*, LLP, 421 F.3d 989 (9th Cir. 2005) ....................................... 14

*Tech-Bilt, Inc. v. Woodward-Clyde Assoc.* (1985) 38 Cal.3d 488 ......................... 19, 20, 22

*TSI Seismic Tenant Space, Inc. v. Sup.Ct.* (2007) 149 Cal. App. 4th 159 ................. 19, 21

*Village Nurseries v. Greenbaum* (2002) 101 Cal. App. 4th 26 ..................................... 23

*Waller v. Fin. Corp.*, 828 F.2d 579 (9th Cir. 1987) ..................................................... 14

*Yamaha Motor Corp. v. Paseman* (1990) 219 Cal. App. 3d 958 .................................. 14

**Statutes**

California Code of Civil Procedure Section 340.6 .......................................................... 23

California Code of Civil Procedure Section 875 ............................................................. 14

California Code of Civil Procedure Section 877 ............................................................. 15

California Code of Civil Procedure Section 877.6 ........................................... 2, 18, 19, 20

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 23

Federal Rule of Civil Procedure Section 23(e)(3) .......................................................... 16

**Other Authorities**

California Rule of Professional Conduct 3-600(a) .......................................................... 23

Vapnek et. al. Cal. Practice Guide:  Professional Responsibility (The Rutter Group 2004) ¶6:240
............................................................................................................................ 23

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- iv -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

## I.    **INTRODUCTION**

The first sentence in Plaintiffs' Complaint correctly characterizes this case as arising "from the sale of $97 million in securities issued by TVC Opus Drilling Program I."  Despite that characterization, Plaintiffs have filed meritless claims against K&L Gates LLP, and individual partners of the firm, for their work as bankruptcy counsel for Opus and Tri-Valley years after Plaintiffs invested in Opus.  Opus and Tri-Valley – K&L's former clients – are *not* parties to this action.  At no time did K&L ever represent the Plaintiffs – the individual investors in Opus.

Recognizing that K&L did not owe the Opus partners any duty and that the lack of such a duty is fatal to their claims, Plaintiffs negotiated a purported assignment from the Opus Chapter 7 Trustee of any claims Opus might have against its former attorneys, including K&L.  Anticipating the obvious challenge K&L would make to any  assignment of legal malpractice-related claims -- which is strictly prohibited under California law -- Plaintiffs also convinced the Opus Chapter 7 Trustee to agree to prosecute any claims against Opus' former attorneys in his own name, with all proceeds going to the Plaintiffs, if the assignment were challenged.  In other words, the Opus Trustee, with nothing to gain or lose from the lawsuit, would serve as a straw-man plaintiff --  a transparent, yet ineffective, attempt to circumvent California's long-standing public policy prohibition against assignment of legal malpractice claims.  While the agreement containing the illegal assignment is conspicuously absent from Plaintiffs' Motion to Approve the Settlement, the Opus Chapter 7 Trustee was more forthcoming.  He attached the agreement containing the illegal assignment to his motion to approve the settlement in related bankruptcy proceedings pending before the Delaware Bankruptcy court.[1]  This Court should not approve any settlement that involves an illegal term.

Moreover, this Court should deny the Motion for Preliminary Approval because Plaintiffs cannot establish that the settlement was made in "good faith."  As part of their request that the Court approve the proposed settlement, Plaintiffs ask the Court to issue a bar order precluding K&L from seeking contribution from not only the defendants included in the settlement (the

---

[1] A copy of the agreement containing the illegal assignment is attached as Exhibit 24 to K&L's accompanying Request for Judicial Notice ("RJN").

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

DOCS\S1980-015\744362.1                    1                    Objection of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1    Settling Defendants")[2], but all of the Releasees in the Settlement Agreement.  This includes

2    several professionals involved in the Bankruptcy Proceedings against whom K&L potentially

3    could assert contribution claims.  Plaintiffs do not provide any evidence to support barring such

4    claims.

5          However, the amount to be paid by the ten Settling Defendants, approximately 9% of

6    Plaintiffs' claimed damages, is grossly disproportionate to their alleged liability.  The Settling

7    Defendants who would be released for this nominal sum were the officers and directors of Tri-

8    Valley.  Unlike K&L, which became involved with the companies in 2012 as bankruptcy counsel

9    after the companies had become insolvent, the Settling Defendants are alleged to have committed

10   fraud through no less than fifteen separate misrepresentations and breached various fiduciary

11   duties to Opus throughout the life of the Opus investment from 2002 to 2010, resulting in the

12   alleged loss of the entire $97 million investment.  Thus, the proposed bar order fails to comply

13   with California Code of Civil Procedure section 877.6.

14         Accordingly, K&L hereby requests that this Court deny Plaintiffs' Motion for Preliminary

15   Approval of Class Action Settlement.  If the Court is disinclined to deny the motion, K&L

16   requests that it schedule the fairness hearing for a date that will allow the Court to first rule on

17   K&L's Rule 12(b)(6) motion to dismiss, which K&L will file no later than March 23, 2015, and

18   also permit K&L to conduct discovery related to class certification issues.

19   **II.    FACTUAL BACKGROUND**

20         **A.    Tri-Valley Establishes Opus**

21         Tri-Valley is a crude oil and natural gas exploration, development, and production

22   company in the business of locating and developing hydrocarbon resources in California.  [RJN,

23   Ex. 1, Declaration of Maston N. Cunningham In Support of Chapter 11 Petitions and First Day

24   Motions and Application ("Cunningham Dec."), ¶6.]  Its business is divided into two segments:

25   oil and natural gas operations and minerals.  [*Id.*, ¶7.]  Tri-Valley Oil & Gas. Co. operates Tri-

26   Valley's oil and natural gas business in California.  [*Id.*, ¶7.]  Select Resources Corporation, Inc.

27   ───────────────

28   [2] The Settling Defendants are Defendants Gamble, Miller, Lowenstein, Bateman, Gabriel, Mayer, Blystone, Cunningham, Durbin, and Billinger

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

DOCS\S1980-015\744362.1                            - 2 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1  operates Tri-Valley's minerals segment in Alaska.[3]

2       In 2002, Tri-Valley established Opus as a limited partnership to explore, drill, develop,

3  and operate oil and gas prospects in California and Nevada. [*Id.*, ¶30.] It sought to raise $100

4  million from general and limited partners. Thereafter, Opus planned to conduct wildcat

5  exploration involving eighteen different projects with twenty-six drilling prospects. [*Id.*, ¶30.]

6  Between 2002 and 2010, Tri-Valley raised $97 million through the private placement of Opus

7  partnership units. [*Id.*, ¶30.] K&L was not involved in the placement of partnership units.

8       Tri-Valley served as the managing general partner of Opus. [*Id.*, ¶31.] As the managing

9  general partner, Tri-Valley had full and exclusive authority to manage, control and administer the

10  affairs of the Opus partnership. [*Id.*]

11       Opus' business plan was to drill for oil and gas on leases acquired by Tri-Valley Oil &

12  Gas Co. Opus was expected to generate revenues (and profits) from the sale of oil and gas under

13  the Opus partnership's leases. [RJN, Ex. 1, Cunningham Dec., ¶33.] At the time it filed for

14  bankruptcy, Opus' revenue opportunity was limited to certain leases comprising one oil project

15  known as "Pleasant Valley." [*Id.*, ¶8.] That property consisted of approximately 505 acres in

16  Ventura County, California. [*Id.*, ¶12.]

17      **B.**    <u>**A Dispute Arises Between Tri-Valley And Opus**</u>

18       In 2010, prior to K&L's retention, disputes arose between Tri-Valley and partners of

19  Opus. [*Id.*, ¶69.] The disputes involved two types of claims: (1) the fundraising program run by

20  Tri-Valley included finders' fees that were allegedly paid in violation of securities law; and (2)

21  questions about drilling and lease acquisition costs that Tri-Valley and Tri-Valley Oil and Gas

22  Co. had charged Opus. [RJN, Ex. 9, Aug. 30, 2012 Transcript of Bankruptcy Proceedings p.

23  10:12-23.] Included within the disputes between Tri-Valley and the Opus partners were certain

24  breach of contract claims and whether Tri-Valley held receivables from Opus in excess of $5

25  million. [RJN, Ex. 26, Class Action Complaint ("Complaint"), ¶¶70-74.]

26       On April 25, 2011, Tri-Valley created the "Opus Special Committee" ("OSC"), an *ad hoc*

27

[3] Tri-Valley, Tri-Valley Oil & Gas Co., Select, and Opus are collectively referred to as the

28  "Debtors."

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

DOCS\S1980-015\744362.1

- 3 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1   group of Opus partners, to help resolve the disputes. [RJN, Ex. 1, Cunningham Dec., ¶69.] The

2   committee retained its own counsel to represent its interests in the dispute with Tri-Valley. [RJN,

3   Ex. 9, Aug. 30, 2012 Transcript of Bankruptcy Proceedings, p. 11:3-6.] However, no final

4   agreement was ever reached between the parties. [RJN, Ex. 1, Cunningham Dec., ¶71; Ex. 26,

5   Complaint, ¶75.]

6       ### C.   Tri-Valley And Opus File For Bankruptcy

7           By the end of 2011, Tri-Valley's and its related companies' cash flow was insufficient to

8   sustain their operations and Tri-Valley began relying on debt financing from a Trust controlled by

9   Tri-Valley Board Chairman Thomas Gamble. [RJN, Ex. 1, Cunningham Dec., ¶¶47-58.] Over a

10  four-month period beginning in late March 2012, Tri-Valley regularly borrowed money from the

11  Gamble Trust to sustain its operations. [*Id.*] By August 7, 2012, Tri-Valley owed the Gamble

12  Trust over $7 million. [*Id.*, ¶58.]

13          On August 7, 2012, Tri-Valley filed for bankruptcy on behalf of itself, its two-wholly

14  owned subsidiaries (Tri-Valley Oil & Gas Co. and Select Resources Corporation, Inc.) and Opus.

15  [RJN, Ex. 1, Cunningham Dec., ¶¶1-2.] On the same day the Debtors filed for bankruptcy, they

16  filed a joint application seeking approval of K&L as their bankruptcy counsel. [RJN, Ex. 2,

17  Application for Order Authorizing the Employment and Retention of K&L Gates LLP.] The

18  OSC received notice of the K&L Retention Application. [RJN, Ex. 5, Affidavit of Service.]

19          K&L informed the parties-in-interest and Bankruptcy Court to the structure of Tri-Valley

20  and Opus. It specifically disclosed that Tri-Valley was the decision maker for both Tri-Valley

21  and Opus and suggested that an equity committee of Opus partners be created to alleviate the

22  practical tension between Tri-Valley and Opus. [RJN, Ex. 3, Affidavit of Charles A. Dale III in

23  Support of Debtors' Application to Retain K&L Gates, LLP, ¶21.] K&L Gates also raised the

24  issue directly with the Office of the United States Trustee (the "U.S. Trustee"). [RJN, Ex. 9,

25  August 30, 2012 Transcript, 15:3-4 (Ms. Patton: ". . . and Mr. Dale has been very cooperative

26  with our office. They did bring this conflict to our attention.")]

27          On August 22, 2012, Kathleen M. Miller ("Attorney Miller") filed a notice of appearance

28  on behalf of the OSC Partners. [RJN, Ex. 6, Notice of Appearance.] The OSC partners never

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

DOCS\S1980-015\744362.1

- 4 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1  filed an objection to the K&L Retention Application.  Rather, at the August 30, 2012 hearing, the

2  first of several at which the structural conflict between Tri-Valley and Opus was discussed,

3  Attorney Miller raised concerns about the impact the structural conflict might have on the

4  bankruptcy cases and requested the appointment of an official equity committee to address those

5  issues. [RJN, Ex. 9, August 30, 2012 Transcript, 16:6-17:10.]  Consistent with the Dale

6  Affidavit, Charles A. Dale III ("Attorney Dale") of K&L responded that he supported

7  appointment of an equity committee to address the structural conflict and that he had been in

8  discussions with the U.S. Trustee and Attorney Miller regarding the same.  [*Id.*, 11:15-13: 7.]

9  The Court agreed that the issue was a structural one.  [*Id.*, 13:20-14:1.]  At the conclusion of the

10  August 30, 2012 hearing, the Court agreed with Attorney Dale's suggestion, approving the

11  retention of K&L for three of the four debtors (Tri-Valley, TVOG, and Select) and continuing its

12  application as to Opus to let the committee formation process unfold or for a more "creative"

13  solution to the structural conflict to emerge.  [RJN, Ex. 7, Order Approving Retention of K&L

14  Gates; Ex. 9, August 30, 2012 Transcript, 20:4-7.]

15      The question of whether K&L should represent Opus in the bankruptcy proceedings again

16  came before the Bankruptcy Court on September 5, 2012.  [RJN, Ex. 8, Amended Order; Ex. 10,

17  Sept. 5, 2012 Transcript of Bankruptcy Proceedings.]  Because a committee of Opus equity

18  holders had not yet been formed, K&L again asked that the Court postpone the question of its

19  representation until the next hearing.  [*Id.*, p. 6:4-14.]

20      On September 15, 2012, the U.S. Trustee filed a notice of appointment of a Committee of

21  Equity Security Holders in Opus (the "Opus Equity Committee").  [RJN, Ex. 11, Notice of

22  Appointment of Committee of Equity Security Holders.]  The purpose of the Opus Equity

23  Committee was to represent any independent interests that the Opus partners might have in the

24  bankruptcy.  The committee consisted of seven members.  It included the James T. Rybicki Trust.

25  Mr. Rybicki is one of the named Plaintiffs in this action.  The Opus Equity Committee engaged

26  the law firm of Ashby & Geddes, P.A. as its counsel and Conway McKenzie as its financial

27  advisor.  Both advisors were thereafter consulted by the Debtors and their counsel and advisors

28  on virtually every aspect of the bankruptcy cases.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

DOCS\S1980-015\744362.1

- 5 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1    The Debtors and the Official Opus Equity Committee developed a two-part solution

2    to the structural conflict issue by:   (i)  appointing an independent director, Hobart Truesdell,

3    to the Tri-Valley Board of Directors and (ii) retaining Robert Brady of Young Conaway

4    Stargatt & Taylor LLP as special counsel to Opus to address Opus conflict issues - which

5    were those issues attendant "to debtor-in-possession financing, . . . to allocation of assets . . . and

6    any other issues that the parties and the Court may seek to have Opus special counsel deal with."

7    September 19, 2012 Transcript, pg. 6, l. 23-25 to pg. 7, l. 1-21.  The role of the Opus Equity

8    Committee and the representative Plaintiffs in this action are the same – to protect the interests of

9    the Opus partners.

10    The K&L Retention Application as to all four Debtors, including Opus, was thereafter

11    approved by the Court under certification of counsel.  [RJN, Ex. 14, Supplemental Order

12    Authorizing Employment of K&L Gates; Ex. 13, Certification of Counsel.]  The Opus Equity

13    Committee never objected to K&L's retention as counsel for all of the Debtors and supported the

14    resolution of the structural conflict described above.  [RJN, Ex. 13, Certification of Counsel,

15    Docket No. 240, ¶ 10; Ex. 14, Supplemental Order Approving K&L Retention Application.]  The

16    order found that the "employment of K&L Gates is necessary and is in the best interest of TVC

17    Opus I Drilling Program L.P."

18         **D.     The Debtors Sell The Pleasant Valley Assets**

19    On August 13, 2012, the Debtors filed a Sale Motion proposing to sell their assets,

20    including the Pleasant Valley leases, in October 2012.  [RJN, Ex. 4, Motion to Approve Sale.]

21    However, at the request of the creditors' committee and Opus Equity Committee, the Debtors

22    agreed to extend the proposed sale timeline for the Pleasant Valley assets to early December

23    2012.  [RJN, Ex. 10, Sept. 5, 2012 Transcript of Bankruptcy Proceedings, pp. 7:24-8:20.]

24    The Opus partners received notice of the proposed sale, and at no time was a formal

25    objection to the sale filed by or on behalf of Opus or its partners.  On December 11, 2012, the

26    Bankruptcy Court held a hearing on the Sale Motion.  [RJN, Ex. 17, Dec. 11, 2012 Transcript of

27    Bankruptcy Proceedings.]  Mr. Truesdell voted in favor of the proposed sale.  Further, the Opus

28    Equity Committee appeared, but did not object to the proposed sale.  Instead, it objected only to

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

DOCS\S1980-015\744362.1

- 6 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1    the proposed distribution of the sale proceeds to the Gamble Trust.  The Court overruled the

2    objection and approved the sale.  [RJN, Ex. 18, Order Authorizing the Sale of Assets.]

3        **E.        The Bankruptcy Court Approves All of K&L's Fees**

4        Throughout the bankruptcy proceedings, K&L filed applications to approve all fees and

5    costs it sought in connection with its representation of the Debtors.  Prior to seeking final

6    approval, K&L filed six interim fee applications.  The interim applications were served on the

7    OSC and the Opus Equity Committee.  Neither they, nor any other party, objected.

8        On May 9, 2013, K&L filed its Seventh and Final Fee Application, seeking final approval

9    of all fees and costs incurred in the bankruptcy.  [RJN, Ex. 21, Final Fee Application of K&L

10   Gates, p. 35.]  The Opus Equity Committee or any of the individual Opus partners could have

11   objected to K&L's application, but they did not.  On July 9, 2013, the Bankruptcy Court entered

12   an order approving K&L's fees and costs.  [RJN, Ex. 22, Omnibus Order Allowing Compensation

13   for Services Rendered for Chapter 11 Professionals.]

14       **F.        The Court Converts The Tri-Valley And Opus Bankruptcies To Chapter 7**

15       On March 6, 2013, the Debtors filed a motion seeking to convert their bankruptcies from

16   Chapter 11 to Chapter 7 (liquidation).  [RJN, Ex. 19, Debtors' Motion to Convert Case from

17   Chapter 11 to Chapter 7.]  On March 12, 2013, the Opus Equity Committee joined the motion.

18   [RJN, Ex. 20, Emergency Motion for Order Immediately Converting Case to Chapter 7.]  On

19   March 25, 2013, the Bankruptcy Court granted the motion, and on March 26, 2013, the U.S.

20   Trustee appointed Jeoffrey T. Burtch as Chapter 7 Trustee for the Opus estate.  K&L  Gates

21   ceased rendering services to the Debtors on March 25, 2013.

22       **G.        Plaintiffs File The Class Action Lawsuit**

23       On June 27, 2013, Plaintiffs Steven Siegal, James Rybicki, David Groblebe, and Christian

24   Wipf filed a class action complaint against fifteen defendants.  The defendants include ten former

25   officers and directors of Tri-Valley (Thomas Gamble, Loren Miller, Henry Lowenstein, Paul

26   Bateman, Edward Gabriel, James Mayer, Lynn Blystone, Maston Cunningham, John Durbin, and

27   Greg Billinger), two allegedly unlicensed and unregistered broker dealers (Behrooz Sarafraz  and

28   Alfred Lopez), and K&L Gates, K&L partner Charles Dale, and former K&L partner Joshua

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

DOCS\S1980-015\744362.1                    - 7 -                    Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

Lane.  Plaintiffs allege five causes of actions.  The first four, described below, are not alleged n

against K&L.                                                                                                                  dell,

> 1.    The Allegations Against and Damages Sought from the Settling
>        Defendants

The vast majority of the Complaint is devoted to fraud and misrepresentation allegation

directed against officers and directors of Tri-Valley and allegedly unlicensed and unregistered

broker dealers who assisted in raising funds through Opus from 2002 to 2010, i.e., all of the

named defendants except the K&L-related defendants.  Plaintiffs allege four causes of action

against the Settling Defendants and seek damages in an amount between $60,000,000 and

$97,000,000.  K&L is expressly excluded from these allegations and claims – appropriately so

since Tri-Valley did not engage K&L as counsel until long after this time period.

Cause of Action No. 1: Violations of California Corporations Code sections 25501.5,

25401, 25501, and 25501.5

Plaintiffs allege the Settling Defendants sold them Opus units by means of written and

oral communications, which included untrue statements of material fact, and statements which

omitted one or more material facts necessary to make the statements not misleading.  [RJN, Ex

26, Complaint, ¶¶50-54.]  They set forth fifteen separate alleged misrepresentations and

incomplete statements related to the sale of the Opus units.  [Id., ¶50.]  These include

misrepresentations related to sales commissions, misuse of Opus funds, the financial condition

Tri-Valley and Opus, alleged conflicts of interest between Tri-Valley and Opus, that Tri-Valle

was losing money, Opus' growth prospects, Tri-Valley's operations, Tri-Valley's and Opus'

ownership of leases, other facts related to the leases, and additional material facts.  [Id., ¶50.]

Plaintiffs seek compensatory damages, rescission, and interest related to the security sales.

Importantly, Plaintiffs acknowledge that K&L is not responsible for the damages Plaintiffs

allegedly incurred as a result of the security sales.  [RJN, Ex. 26, Complaint, ¶54.]

Cause of Action No. 2: Breach of Fiduciary Duty/Constructive Fraud/Conversion

Plaintiffs allege that the Settling Defendants were fiduciaries of the Opus partners and

the Settling Defendants breached their duties to Opus by (i) developing a plan to sell all the ass

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

DOCS\S1980-015\744362.1

- 8 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1   of the Opus partnership in Chapter 11 without the Opus partners' prior approval; (ii) filing a

2   bankruptcy petition on behalf of Opus; and (iii) usurping Opus funds for the benefit of Tri-Valley.

3   [RJN, Ex. 26, Complaint, ¶56.]  In addition, Plaintiffs allege that the Settling Defendants

4   "participated in the conversion of no less than $35 million plus interest in OPUS funds for the

5   benefit of TVC."  [*Id.*, ¶57.]  Plaintiffs also seek punitive damages.  [*Id.*, ¶59.]

6            Cause of Action No. 3: Aiding and Abetting Breach of Fiduciary Duty/Constructive

7   Fraud/Conversion

8            Plaintiffs allege that the Settling Defendants "were all aware of and consented to the

9   selling of the Opus units without adequate disclosures, in violation of registration requirements,

10   and by means of unlicensed and unregistered broker dealers."  [RJN, Ex. 26, Complaint, ¶62.]

11   They also allege that the Settling Defendants participated in and facilitated the acts of conversion,

12   the evaluation of, decision-making related to, preparation for and filing of the allegedly wrongful

13   bankruptcy petition, self-dealing and the aforementioned breaches of fiduciary duty.  [*Id.*, ¶62.]

14            Cause of Action No. 4: Negligence and Negligent Misrepresentation

15            Plaintiffs allege that the Settling Defendants, individually and collectively, failed to act in

16   a reasonable manner when representing to Plaintiffs the facts surrounding the Opus units, thereby

17   breaching their duties not to misrepresent facts, omit facts, or act recklessly in providing

18   information to Plaintiffs, thereby causing Plaintiffs to suffer damages.  [*Id.*, ¶67.]

19            2.      The Single Cause of Action Against K&L Relates Only to the Tri-Valley
                      and Opus Bankruptcies

20

21            Plaintiffs' claims against K&L are far narrower than the claims against the other

22   defendants.  K&L is not alleged to have had any role in the sale of Opus units.  Instead, the

23   conduct at issue is limited to K&L's role as bankruptcy counsel for Tri-Valley and Opus.

24   Notwithstanding that it was K&L which suggested to the Bankruptcy Court that an equity

25   committee of Opus investors be formed and be represented by independent counsel, Plaintiffs

26   claim that K&L violated its duty of loyalty to the Opus partners by representing both Tri-Valley

27   and Opus in the bankruptcy proceedings.  [RJN, Ex. 26, Complaint, ¶78.]  Those duties,

28   according to Plaintiffs, arise out of K&L's representation of the Opus partnership entity. [*Id.*,

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1   ¶78.] Nonetheless, Plaintiffs claim K&L breached a duty supposedly owed to each of them

2   *individually* by assisting Opus in filing for bankruptcy, advising Opus to file for bankruptcy in the

3   manner it did, and by its conduct during the bankruptcy. [*Id.*, ¶80.] Not only is it undisputed that

4   K&L never represented any of the individual investors in Opus -- which is why Plaintiffs are

5   attempting to obtain an assignment of claims from the Opus Trustee -- but their challenge K&L's

6   representation of Opus in the bankruptcy is nothing but an impermissible collateral attack on the

7   Bankruptcy Court's final order approving Opus' retention of K&L as bankruptcy counsel, which

8   order was consented to by the Opus Equity Committee, and further was never objected to or

9   appealed by the OSC or any of the Opus partners. [RJN, Ex. 14, Supplemental Order Approving

10  K&L Gates.]

11      Plaintiffs do not contend that K&L's conduct caused them to lose their investment.

12  Instead, they claim only that K&L's conduct caused injuries, "which include the payment of legal

13  fees and restoration of the losses of the Opus partners resulting from the bankruptcy and sale of

14  Opus' oil and gas leases at bankruptcy auction far below the actual fair market value of those

15  leases." [RJN, Ex. 26, Complaint, ¶78.] Again, the Bankruptcy Court already ruled on this issue

16  approving the sale of Opus' leases through a final order entered more than two years ago. [RJN,

17  Ex. 18, Order Authorizing Sale of Assets.]

18      **H.    The Proposed Settlement with the Ten Settling Defendants**

19          1.   The Settling Parties, While Excluding K&L, Spent More Than a Year-and-
                 a-Half Negotiating The Settlement
20

21      When Plaintiffs filed their complaint in June of 2013, they were aware of the related

    bankruptcy proceedings and therefore made "early" efforts to coordinate with the Chapter 7
22
    Trustees to reach a resolution of their common claims. [*See* RJN, Ex. 27, Motion for Preliminary
23
    Approval, 1:25-27; 10:9-13.] The parties to the proposed settlement first began mediating the
24
    agreement on November 12, 2013 in New York with David Geronemus of JAMS. [*Id.*, 2:1-5.]
25
    They continued to negotiate and attended further mediation sessions on January 8 and February 7,
26
    2014. [*Id.*, 2:5-9; 10:22-24.]
27
        Even though the parties apparently reached a "settlement in principle" in February 2014,
28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

DOCS\S1980-015\744362.1

- 10 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

they "spent a number of months" further negotiating the terms. [*Id.*, 2:10-11; 10:27.] They

finally signed a term sheet on October 2, 2014. [RJN, Ex. 29, Eng Dec., Ex. A, Settlement

Agmt., p.2.] However, it took the parties another three months – until January 13, 2015 – to

finalize the agreement. [*Id.*, p. 1.]

> 2.   The Settlement Consists of Two Related Agreements, One of Which Has
>       Not Been Presented to this Court

Although Plaintiffs seek this Court's approval of only a <u>single</u> settlement agreement,

concurrently pending filings in the Bankruptcy Court reveal that Plaintiffs actually entered into

<u>two</u> agreements.  Specifically, on January 28, 2015 – the same day the Motion in this Court was

filed – the Chapter 7 Trustees for the Tri-Valley and Opus estates filed a motion seeking

Bankruptcy Court approval of two settlement agreements:  (1) a "global" settlement of disputes

involving former directors and officers of Tri-Valley (the agreement Plaintiffs have disclosed to

this Court), and (2) an "allocation agreement" between the Chapter 7 Trustees and the Plaintiffs

in this proposed class action (which Plaintiffs chose not to disclose).  [RJN, Ex. 23, Trustee's

Motion to Approve Settlement.][4]

> 3.   The Proposed "Global Settlement" Agreement

The proposed global settlement agreement seeks to resolve nine adversary actions by the

Chapter 7 Trustees against former directors and officers of Tri-Valley for alleged breaches of

fiduciary duty, equitable subordination, disgorgement of funds from the estate, and fraudulent

preferential transfers.  [RJN, Ex. 23, Trustee's Motion to Approve Settlement, ¶¶7, 9; RJN, Ex.

24, Settlement Agmt., ¶5.]  The proposed global settlement agreement also seeks to resolve the

putative class claims against all of the defendants in this action, <u>except those against K&L</u>, Alfred

Lopez, and Behrooz Sarafraz.[5]  [RJN, Ex. 24, Settlement Agmt., ¶5(a).]

The proposed settlement provides for a payment of $9 million by one of the Tri-Valley

directors and various D&O insurers.  [RJN, Ex. 23, Trustee's Motion to Approve Settlement, ¶13;

---

[4] K&L Gates is opposing the Trustee's Motion to Approve the Settlement in the Bankruptcy
Court.
[5] Mr. Lopez and Mr. Sarafraz are alleged unlicensed/unregistered broker dealers who have no
relation to K&L.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

DOCS\S1980-015\744362.1

- 11 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1   RJN, Ex. 24, Settlement Agmt., ¶3.]  It also provides for certain "bar orders."  [RJN, Ex. 24,

2   Settlement Agmt., ¶6.]  One proposed bar order calls for the approval of the settlement under

3   C.C.P. § 877, which would have the effect of barring and extinguishing any claim for contribution

4   against the settling parties.  [*Id.*, ¶6(a)(ii).]  Approval of the bar orders by this Court is required

5   before the proposed settlement will take effect.  [*Id.*, ¶12(d).]  Thus, <u>if the Settlement Agreement</u>

6   <u>is approved, K&L will be barred from seeking contribution from the settling co-defendants and</u>

7   <u>their agents.</u>

8           4.      Plaintiffs Negotiate an Assignment of Opus' Claims Via The "Allocation
                    Agreement"
9

10          The proposed settlement also includes a separate Allocation Agreement among the Opus

11  and Tri-Valley Chapter 7 Trustees and the Plaintiffs regarding allocation of the $9 million offered

12  by the Settling Defendants.  Per that agreement, Plaintiffs would receive $4.5 million while the

13  Tri-Valley and Opus estates will each receive $2.25 million.  [RJN, Ex. 25, Allocation

14  Agreement, ¶3.] Plaintiffs would also give up their right to classify any claims in the Tri-Valley

15  and Opus bankruptcies as debt, agreeing that any such claims would instead be classified as

16  equity.  [RJN, Ex. 25, Allocation Agreement, ¶¶4(a)(ii), 4(b)(ii).]

17          As part of the Allocation Agreement, the Opus Chapter 7 Trustee also agreed to assign to

18  the Plaintiffs any claims Opus may have against K&L.  [RJN, Ex. 25, Allocation Agreement,

19  ¶¶4(a)(i).]  Specifically, the Allocation Agreement, provides: "In connection with the litigation

20  commenced by the California Plaintiffs against K&L Gates, the Opus Trustee will assign all

21  claims held by Opus against K&L Gates…to the California Plaintiffs." [RJN, Ex. 25, Allocation

22  Agmt, ¶4(a)(i).]

23          Presumably well aware that California law expressly prohibits assignments of legal

24  malpractice claims, Plaintiffs and the Opus Trustee hatched a backup plan in the foreseeable

25  event that K&L challenged the assignment.  The parties agreed:

26              …if the assignment by Opus is challenged, then the Opus Trustee
                will act as co-plaintiff with the California Plaintiffs and <u>assign all</u>
27              <u>right, title, and interest in any proceeds to the California Plaintiffs.</u>
                The California Plaintiffs agree that this will be at no cost to the
28              Opus Trustee.  In the event the Opus Trustee must join as co-

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

DOCS\S1980-015\744362.1                     - 12 -        Opposition of K&L Gates to Motion for Pre-
                                                          liminary Approval of Class Action Settlement
                                                          CASE NO. 13 CIV. 3570-RS

plaintiff, the California Plaintiffs and Opus Trustee will enter into
a mutually acceptable hold harmless agreement for the benefit of
Opus and the Opus Trustee.

[RJN, Ex. 25, Allocation Agmt, ¶4(a)(i) (emphasis added).] Thus, if the assignment were to be

challenged, which it is, Opus would be obliged to join in this action as a straw-man plaintiff. It

would not be entitled to any proceeds and would not face the risk of any loss. Opus would be

present in name only to prosecute claims on behalf of Plaintiffs. Such an attempt to circumvent

California law should not be countenanced.

## III.   **LEGAL ARGUMENT**

### A.   **Applicable Legal Standard**

The motion for preliminary approval is intended to ascertain whether there is any reason

not to notify the class members of the proposed settlement and to proceed with a fairness hearing.

*Armstrong v. Bd. of School Directors of Milwaukee*, 616 F.2d 305, 314 (7th Cir.1980)

Preliminary approval is appropriate only where the Court determines the proposed settlement is

the result of the parties' good faith negotiations, there are no obvious deficiencies and the

settlement falls within the range of reason. *See Chavez v. PVH Corp.*, 2015 WL 581382, *3

(N.D. Cal. 2015) (discussing court's denial of preliminary approval on the basis that "the

proposed settlement was not fair and adequate to the class members"); *In re Corrugated

Container Antitrust Litig.*, 643 F. 2d 195, 205 (5th Cir. 1981); *In re Checking Account Overdraft

Litig.*, MDL No. 2036, 2012 WL 4173458, at *5 (S.D. Fla. Sept. 19, 2012) (internal quotation

marks omitted).

As described below, K&L opposes Plaintiffs' motion on the grounds that the proposed

settlement includes an illegal assignment agreement and improperly seeks to preclude K&L's

right to pursue contribution from the Settling Defendants and other professionals.

### B.   **K&L Has Standing to Object Because the Settlement Seeks to Cut Off K&L's Contribution Rights**

A non-settling defendant who can show plain legal prejudice resulting from a settlement

to which it is not a party has standing to challenge the settlement. *Waller v. Fin. Corp.*, 828 F.2d

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

DOCS\S1980-015\744362.1

- 13 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1    579, 583 (9th Cir. 1987), citing, *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir.

2    1983); *see also Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 246 (7th Cir. 1992). "It is well

3    established that such prejudice exists where a settlement 'purports to strip [a non-settling

4    defendant] of a legal claim or cause of action, an action for indemnity or contribution for

5    example'." *Smith v. Arthur Andersen, LLP*, 421 F.3d 989, 998 (9th Cir. 2005) (quoting *Waller*,

6    828 F. 2d at 583).

7         In California,[6] concurrent tortfeasors may obtain partial contribution from other

8    concurrent tortfeasors on a comparative fault basis.  Cal. Code of Civ. P. § 875; *Am. Motorcycle*

9    *Assn. v. Sup.Ct.* (1978) 20 Cal. 3d 578, 608.  For determining whether indemnity is available

10   among defendants, the term joint tortfeasors is a "broad term which includes joint, concurrent,

11   and successive tortfeasors." *Yamaha Motor Corp. v. Paseman* (1990) 219 Cal. App. 3d 958, 969

12   (quoting *GEM Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal. App. 3d 419,

13   431).   If the transaction "rests upon related facts, either concurrent or successive, joint or several,

14   which legally create a detriment compensable against multiple actors, the right of indemnity

15   should follow [*American Motorcycle*] guidelines, unless a contract or statute otherwise provides."

16   *GEM Developers*, 213 Cal. App. 3d at 430 (quoting *City of Sacramento v. Gemsch Investment*

17   *Co.* (1981) 115 Cal. App. 3d 869, 877).

18        Here, the Complaint includes allegations against all the defendants for conduct related to

19   Opus' bankruptcy filing.  [RJN, Ex. 26, Complaint, ¶¶56, 76-80.]  Because the allegations rest on

20   related facts, K&L would have a contribution claim against the other defendants and their agents

21

22   [6] California state law applies to Plaintiffs' claims in this action.  Plaintiffs filed their state-law
     claim against K&L in San Francisco Superior Court.  At least one named Plaintiff (Steven

23   Siegal) and several named defendants are alleged to be residents of California.  Opus was
     headquartered in California, and as alleged in the Complaint, was in the business of acquiring oil

24   and gas leases in California.  [RJN, Ex. 26, Complaint, ¶ 42.]  The Complaint asserts the
     application of and relies on California law.[*See* RJN, Ex. 26, Complaint, ¶¶ 9, 13; Ex. 24,

25   Settlement Agreement, sec. 6(a)(ii).]  Moreover, the Complaint alleges generally that "[a]ll
     claims asserted in this case concern actions or omissions by Defendants in the County of

26   San Francisco and elsewhere in the State of California" and, more specifically with respect to
     the claims asserted against K&L Gates, "**the acts complained of in this Complaint were**

27   **conducted principally in California with effects in California, including this**
     **judicial district**".   [Complaint at ¶¶ 9,  13 (emphasis added)].

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

DOCS\S1980-015\744362.1          - 14 -          Opposition of K&L Gates to Motion for Pre-
                                                  liminary Approval of Class Action Settlement
                                                  CASE NO. 13 CIV. 3570-RS

1    were Plaintiffs to obtain a damage award against the firm.

2            Despite this right, Plaintiffs and the Settling Defendants seek to bar K&L's contribution

3    and rights.  The proposed settlement requires the parties to jointly request a bar order that cuts off

4    K&L's rights to contribution from the Estate of Tri-Valley Corporation, the Estate of TVC Opus,

5    professionals hired by the Opus partners, and the Settling Defendants.  It also seeks to include

6    these parties' current and former agents who were involved in the Bankruptcy Proceedings.

7    [RJN, Ex. 29, Eng Dec., Ex. A (Settlement Agmt.), ¶¶ 1, 5, and 6.]

8            In fact, the settlement is conditioned upon the Court entering the bar order included in the

9    settlement.  The proposed bar order provides:

> In accordance with 15 U.S.C. §78u-4(f)(7)(A) and Cal. Code of
> Civil Procedure §887[7] et seq., any and all claims for contribution
> arising out of a Released Claim (A) by any person or entity against
> any of the released persons or entities ("Releasees") and (B) by any
> of the Releasees against any person or entity (other than as set out
> in 15 U.S.C. §78u-4(f)(7)(A)(ii)) are hereby permanently barred,
> extinguished, discharged, satisfied, and unenforceable.
> Accordingly, without limitation to any of the above, (1) <u>any person
> or entity is hereby permanently enjoined from commencing,
> prosecuting, or asserting against any of the Releasees any such
> claim for contribution,</u> and (2) the Releasees are hereby
> permanently enjoined from commencing, prosecuting, or asserting
> against any person or entity any such claim for contribution.[8]

18          K&L must be allowed to object to protect its right to seek contribution.  Plaintiffs have

19   named the firm as a defendant and their conduct in negotiating an assignment of Opus' claims

---

[7] Plaintiffs likely meant to refer to California Code of Civil Procedure section 877, which deals
with liability among joint tortfeasors.  California Code of Civil Procedure section 887 would be
inapplicable to this action as it deals with easements of real property.

[8] The term "Releasees" is similarly broad.  It refers to the Estate of Tri-Valley Corporation, the
Estate of Opus, Steven Siegal, James Rybicki, David Groblebe, Christian Wipf, Paul Bateman,
Greg Billinger, Milton Carlson, Maston Cunningham, John Durbin, Edward Garbriel, Dennis
Lockhart, Henry Lowenstein, James Meyer, Loren Miller, Harold Noyes, Lynn Blackstone,
Thomas Gamble, James Kromer, James Bush, Joseph Kandle, National Union Fire Insurance
Company of Pittsburgh, PA, Arch Insurance Company, Liberty Mutual Insurance Company, and
all of their respective and past parents, subsidiaries and affiliates, and their respective current and
former directors, officers, general partners, managers, employees, attorneys, and agents, the D&O
insurers and all persons and entities insured under the policies issued by the D&O insurers to Tri-
Valley or Opus.  [RJN, Ex. 29, Eng Dec., Ex. A (Settlement Agmt.), ¶¶ 1, 5, and 6.]

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

DOCS\S1980-015\744362.1

- 15 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1    against K&L signals that Plaintiffs intend to continue to prosecute claims against K&L.

2    **C.**    <u>**The Court Should Deny the Motion for Preliminary Approval**</u>

3         1.    The Court Should Deny the Motion for Preliminary Approval Because the
              Proposed Settlement Includes an Illegal Term, Which Plaintiffs Failed to
4             Disclose

5    Federal Rule of Civil Procedure section 23(e)(3) requires a request for approval of a

6    settlement to identify "any agreement made in connection with" the proposed settlement.  Here,

7    Plaintiffs failed to disclose to this Court that their agreement with the Settling Defendants

8    requires Opus to assign to Plaintiffs all claims it may have against K&L. [*See* RJN, Ex. 25,

9    Assignment, ¶4(a).]  While it is unclear why Plaintiffs chose to conceal the attempted assignment

10   from the Court, it is crystal clear that the assignment is illegal.

11        It is well-settled law in California that legal malpractice claims may not be assigned.

12   *Goodley v. Wank & Wank, Inc.* (1976) 62 Cal. App. 3d 389, 398.  The law applies broadly to

13   voluntary and involuntary assignments.  *Kracht v. Perrin, Gartland & Doyle* (1990) 219 Cal.

14   App. 3d 1019, 1024; *Baum v. Duckor, Spradling & Metzger* (1999) 72 Cal. App. 4th 54, 66-69.

15   As the *Goodley* court explained, the rule is premised on significant public policy considerations:

16        It is the unique quality of legal services, the personal nature of the
         attorney's duty to the client and the confidentiality of the attorney-
17        client relationship that invoke public policy considerations in our
         conclusion that malpractice claims should not be subject to
18        assignment. The assignment of such claims could relegate the legal
         malpractice action to the market place and convert it to a
19        commodity to be exploited and transferred to economic bidders
         who have never had a professional relationship with the attorney
20        and to whom the attorney has never owed a legal duty, and who
         have never had any prior connection with the assignor or his rights.
21        The commercial aspect of assignability of choses in action arising
         out of legal malpractice is rife with probabilities that could only
22        debase the legal profession. The almost certain end result of
         merchandizing such causes of action is the lucrative business of
23        factoring malpractice claims which would encourage unjustified
         lawsuits against members of the legal profession, generate an
24        increase in legal malpractice litigation, promote champerty and
         force attorneys to defend themselves against strangers. The endless
25        complications and litigious intricacies arising out of such
         commercial activities would place an undue burden on not only the
26        legal profession but the already overburdened judicial system,
         restrict the availability of competent legal services, embarrass the
27        attorney-client relationship and imperil the sanctity of the highly
         confidential and fiduciary relationship existing between attorney
28        and client.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

DOCS\S1980-015\744362.1

- 16 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1    *Goodley*, *supra*, 62 Cal. App. 3d at 397.  The Goodley court's concerns about

2    encouraging unjustified lawsuits against lawyers who never had a professional relationship with

3    an assignee plaintiff are directly applicable here, when at no time did the Opus Trustee ever

4    assert that the Opus estate may have had a basis for a claim against K&L.

5        Plaintiffs may argue that there is no assignment because the Opus trustee has agreed to

6    prosecute the action.  This, however, is counter to the accepted law that the substance rather than

7    the form of a transaction determines whether an assignment was intended.  *Bergin v. van der*

8    *Steen* (1951) 107 Cal. App. 2d 8, 16.  Moreover, numerous out-of-state authorities relying on

9    *Goodley* and its progeny have rejected such a result as elevating form over substance,

10   particularly where two facts are present:  (1) the assignment of proceeds is made to the client's

11   litigation adversary; and, (2) the litigation adversary controls the legal malpractice litigation.

12       For example, the Supreme Court of Connecticut refused to acknowledge a distinction

13   between an assignment of the proceeds and an assignment of a cause of action, finding the

14   advocated for distinction "meaningless" "where it is made to circumvent the public policy barring

15   assignments."  *Gurski v. Rosenblum and Filan* (Conn. 2005) 885 A.2d 163, 178.  *Gurski* explains

16   in some detail that an assignment of proceeds to litigation adversaries who retain control over the

17   legal malpractice action violates the same public policies supporting the ban on assignments of

18   causes of action to those same litigation adversaries.  *Id.* at 177-78.

19       The Florida Court of Appeal has also condemned an assignment of proceeds to a litigation

20   adversary, holding that an agreement which assigns a non-client the right to proceeds from a

21   malpractice recovery is an illegal assignment.  *Greene v. Leasing Assoc., Inc.* (Fla. Ct. App. 2006)

22   935 So. 2d 21, 24-25.  Like the assignment agreement between Plaintiffs and the Opus Chapter 7

23   Trustee, the illegal agreement in *Greene* required the party with standing to sue its attorneys and

24   to pay over any proceeds to the non-clients.  *Id.* at 23.  Although the agreement did not contain a

25   formal "assignment," the court of appeal rejected the arrangement finding that "[t]his is a case

26   where Leasing Associates essentially turned its legal malpractice claim over to its former

27   adversary, a situation generally recognized as the worst excess to be avoided." (*Id.* at 25, internal

28   quotation omitted); *see also Law Office of David J. Stern, P.A. v. Sec. Nat. Servicing Corp.* (Fla.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

DOCS\S1980-015\744362.1

- 17 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1   2007) 969 So. 2d 962, 969-70 (strongly cautioning courts against permitting a "market" for legal

2   malpractice actions).

3       Similarly, in *Botma v. Huser* (Ariz. Ct. App. 2002) 39 P.3d 538,[9] the Arizona Court of

4   Appeals rejected an argument that assigning the proceeds of a legal malpractice claim brought in

5   the name of the former client was permissible:

6           Botma has nothing to 'retain' in the present lawsuit, a lawsuit that
            can only benefit Himes. As the complaint candidly discloses, the
7           purpose of the assignment agreement 'was to allow Plaintiff Himes
            to recover any and all monies which might be owing to Plaintiff
8           Botma' and that 'Plaintiff Himes will be the ultimate beneficiary of
            Plaintiff Botma's claims herein.' To allow the present lawsuit,
9           which was born out of that assignment agreement, to proceed in
            Botma's name would be to wink at the rule against assignment of
10          legal malpractice claims.

11  *Id.* at 543.

12      Out-of-state precedent based on California law establishes that the public policy

13  supporting California's ban on assignment of a legal malpractice suit applies equally to the

14  assignment of the proceeds of that suit. There is no reason the California public policy cited by

15  other courts should not be applied to a California case especially where, as here, the hallmarks of

16  an assignment in substance are present.

17      Because California bans assignments of legal malpractice claims, the Court should not

18  preliminarily approve of an agreement that includes an illegal term.

19          2.      The Court Should Deny the Motion to Approve the Settlement Because It
                    Improperly Seeks to Cut Off K&L's Contribution Rights
20

21              a.      The Court Should Deny the Motion for Preliminary Approval
                        Because the Settlement Does Not Satisfy the Good Faith
22                      Requirements of California Code of Civil Procedure Section 877.6

23      K&L does not dispute that, upon a proper showing, the Court may enter a bar order that

24  discharges claims of contribution by non-settling defendants. However, K&L disputes that

25  Plaintiffs here can establish that the settlement was made in good faith pursuant to California

26  _____

27  [9] Himes sued Botma for damages sustained in a car accident Botma caused. Botma's attorney
    (Huser) failed to respond to Himes' policy-limits demand. Botma entered into a stipulation with
28  Himes for entry of a $12 million judgment against him and assigned the proceeds of the claim
    against his attorney to her. In exchange she agreed not to execute on the judgment.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

DOCS\S1980-015\744362.1                  - 18 -        Opposition of K&L Gates to Motion for Pre-
                                                       liminary Approval of Class Action Settlement
                                                       CASE NO. 13 CIV. 3570-RS

1    Code of Civil Procedure section 877.6.  *See generally Long Beach Mem'l Med. Ctr. v. Sup.Ct.*

2    (2009) 172 Cal. App. 4th 865.

3           Federal courts apply the criteria set forth in *Tech-Bilt, Inc. v. Woodward-Clyde Assoc.*

4    (1985) 38 Cal.3d 488, to determine whether a particular settlement resolving state law claims was

5    made in good faith and therefore extinguishes equitable rights to contribution. *City of San Diego*

6    *v. Nat'l Steel & Shipbuilding Co.*, 2014 WL 3489282, *13-14 (S.D. Cal. 2014) (citing *In Re*

7    *Heritage Bond Litig.*, 546 F.3d 667, 680-681 (9th Cir. 2008).

8           The *Tech-Bilt* factors include: (1) a rough approximation of plaintiff's total recovery and

9    the settlor's proportionate liability; (2) the amount paid in settlement; (3) the allocation of

10   settlement proceeds among plaintiffs; and (4) a recognition that a settlor should pay less than it

11   would if found liable after trial.  *Id.* at 499.  Courts also consider the financial conditions and

12   insurance policy limits of settling defendants, as well as the existence of collusion, fraud or

13   tortious conduct aimed at injuring the interests of non-settling defendants.  *Mattco Forge, Inc. v.*

14   *Arthur Young & Co.* (1995) 38 Cal. App. 4th 1337, 1349.

15          The settling tortfeasor's potential liability for indemnity to joint tortfeasors is another "key

16   factor." *Long Beach Mem'l Med. Ctr.*, 172 Cal. App. 4th at 873 (citing *Far West Fin. Corp. v.*

17   *D&S Co.* (1988) 46 Cal. 3d 796, 816, n.16).  The trial court must calculate the culpability of the

18   settling tortfeasors vis-à-vis other parties alleged to be responsible for the same injury.  *Id.*

19   "Potential liability for indemnity to a nonsettling defendant is *an important consideration for the*

20   *trial court* in determining whether to approve a settlement by an alleged tortfeasor." *Id.* (quoting

21   *TSI Seismic Tenant Space, Inc. v. Sup.Ct.* (2007) 149 Cal. App. 4th 159, 166).

22                        (1)     Plaintiffs Cannot Establish the Settlement Is in Good Faith
                                  Because the Ten Settling Defendants Are Each Paying Less
23                                Than 1 % of the Total Damages Sought

24          The settling parties' proportionate liability is one of the most important factors in

25   evaluating a settlement. *Mattco Forge*, 38 Cal. App. 4th at 1350.  The Court must evaluate

26   whether the settlement was made in good faith based on the information available at the time of

27   the settlement. *Long Beach Mem'l Med. Ctr.*, 172 Cal. App. 4th at 874.  The settling

28   "defendant's settlement figure must not be grossly disproportionate to what a reasonable person at

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

DOCS\S1980-015\744362.1                        - 19 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1    the time of settlement would estimate the settling defendant's liability to be." *Id.* (internal

2    quotations omitted).

3        The moving party must provide substantial evidence, through expert declarations or other

4    means, that the proposed settlement is within the reasonable range permitted by the criterion of

5    good faith. Cal. Code Civ. P. § 877.6(b); *Tech-Bilt, Inc.,* 38 Cal.3d at 500. "If '*there is no*

6    *substantial evidence to support a critical assumption as to the nature and extent of defendant's*

7    *liability,* then a determination of good faith based upon such assumption is an abuse of

8    discretion." *Mattco Forge,* 38 Cal. App. 4th at 1350.

9        Here, Plaintiffs have failed to provide any evidence – or even argument – to allow the

10   Court to determine the settling parties' proportionate liability for damages. Absent this

11   information, the Court should not issue an order barring K&L from seeking contribution from the

12   Settling Defendants.

13       Moreover, a review of the extremely limited information provided makes clear that the

14   settlement amounts paid are grossly disproportionate to the settling parties' liability for damages.

15   The Settling Defendants comprise ten of the fifteen defendants. Plaintiffs allege that this action

16   arises out of the sale of $97 million in security transactions. In the Declaration of Edward

17   Zusman, Plaintiffs' counsel asserts that its investigation revealed that approximately $60,000,000

18   of the Opus transactions were subject to rescission. [RJN, Ex. 28, Zusman, Declaration, ¶11.]

19   Plaintiffs also reference alleged breaches of fiduciary duties by some of the Settling Defendants

20   that allegedly caused $40 million in damages. Against this backdrop, the $9,000,000 paid by or

21   on behalf of the Settling Defendants, and the $4,500,000, recovered by the putative class

22   represents a disproportionately small percentage of the relief sought. A simple analysis of the

23   numbers shows the inadequacy of the proposed settlement. There are fifteen named defendants in

24   this action. By the proposed settlement, ten of the fifteen named defendants would be released in

25   exchange for payment of approximately 9% of the total damages. That represents a payment of

26   less than 1% of the alleged damages per Settling Defendant, with only half of that amount (less

27   than 0.5% per Settling Defendant) going to the Plaintiffs in this action.

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

DOCS\S1980-015\744362.1

- 20 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

        (2)     Plaintiffs Do Not Offer Any Evidence of the Financial Condition or Insurance Policy Limits of the Settling Defendants or Other Releasees

Although a disproportionately low settlement amount may be reasonable if the settling tortfeasor is insolvent or underinsured, the motion does not provide any evidence of the assets available to the Settling Defendants to satisfy a judgment. *See Long Beach Mem'l Med. Ctr.,* 172 Cal. App. 4th at 875.  Thus, the Court should not approve of the settlement on that ground.

        (3)     Plaintiffs Do Not Offer Any Analysis of the Settling Defendants' or Other Releasees' Potential Liability for Contribution to the Non-Settling Defendants

In determining whether a settlement was entered into in good faith, the court looks not only to the settling defendant's liability exposure to the plaintiff.  It must also consider the culpability of the settling defendant vis-à-vis other parties alleged to be responsible for the same injury. *TSI Seismic Tenant Space, Inc.*, 149 Cal. App. 4th at 166.

The Complaint makes clear that the defendants each being released for less than 1% of the total requested damages are alleged to be far more culpable than K&L.  As noted, Plaintiffs allege the Settling Defendants violated the California Corporations Code by making fifteen different false representations related to the sale of the Opus units.  [RJN, Ex. 26, Complaint, ¶50.]  They contend they will be able to rescind $60,000,000 of these transactions and concede that K&L was not involved with the allegedly fraudulent sale of any Opus shares by the other defendants.  [RJN, Ex. 28, Zusman Dec., ¶11.]The only allegations against K&L involve conduct related to the Tri-Valley and Opus bankruptcies, after those entities were insolvent.

Plaintiffs allege that, as a proximate result of K&L's alleged breaches, they have been damaged by the amount of attorney's fees paid by the OSC and Tri-Valley, and the difference between the fair market value of Opus' oil leases and the price paid for those leases at the bankruptcy auction.  [RJN, Ex. 26, Complaint, ¶86.]  Plaintiffs also seek "restoration of the losses of the Opus partners resulting from the bankruptcy." [*Id.*, ¶78.]  However, neither the Complaint, nor the Motion for Preliminary Approval, sets forth the total recovery sought for these categories of damages much less the settling parties' proportionate alleged liability.

In short, Plaintiffs have failed to provide the Court with any evidence regarding the

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

DOCS\S1980-015\744362.1

- 21 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

liability of the Settling Defendants or any of the other Releasees vis-à-vis K&L.  All that can be gleaned from the Settling Defendants' papers is that the Settling Defendants are far more culpable for any liability than could possibly ever be attributed to K&L.

> (4)    The Undisclosed Assignment Agreement Reeks of Collusion and Fraudulent Conduct

In evaluating the good faith of a settlement, Courts look to "the existence of collusion, fraud, or tortious conduct aimed to injure the interests of the non-settling defendants." *Mattco Forge,* 38 Cal. App. 4th at 1353.

As part of the settlement of the bankruptcy action, the Opus Chapter 7 Trustee attempted to assign to the Plaintiffs all claims it may hold against K&L.  [RJN Ex. 25, Assignment, sec. 4(a)(i).]  However, Plaintiffs chose not to disclose the proposed assignment to the Court.  The assignment, and Plaintiffs' failure to disclose the assignment, is troubling and indicates collusion among the settling parties.

> b.    If The Court Is Not Inclined to Deny the Motion for Preliminary Approval, K&L Requests a Continuance of the Hearing to Allow It Time to Conduct Discovery

California courts have recognized that a non-settling defendant may be entitled to a continuance of the hearing on a good faith settlement motion and allowed to take discovery for the purpose of determining whether the factors set forth above are satisfied.  *City of Grand Terrace v. Sup.Ct.* (1987) 192 Cal. App. 3d 1251, 1265.  This case has been stayed since August 2013, when it was removed to Federal Court.  K&L has not had any opportunity to conduct discovery.  Thus, if the Court is inclined to grant the motion, K&L would request that it instead continue the motion to allow K&L time to conduct discovery on the *Tech-Bilt* factors.

> c.    If Plaintiffs Contend That The Bar Order Will Bar Claims K&L Has Beyond Contribution, K&L Requests Permission To File A Supplemental Brief Regarding Why Barring Claims Beyond Contribution Is Not Appropriate

The Bar Order sought from the Court appears to bar only claims for contribution by K&L. That is not appropriate for the reasons set forth above.  However, to the extent Plaintiffs seek to bar claims beyond contribution, such a bar order would be inappropriate for additional reasons. Thus, K&L requests that the Court require Plaintiffs to clarify the scope of the bar order, and if

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

DOCS\S1980-015\744362.1

- 22 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1    Plaintiffs seek to bar claims beyond contribution, allow K&L to further brief that issue.

2        **D.    In the Alternative, the Court Should Continue the Motion for Preliminary Approval Until After the Court Rules on K&L's Rule 12(b)(6) Motion**

3

4        K&L intends to move to dismiss the claims against it pursuant to Federal Rule of Civil

5    Procedure 12(b)(6).  Accordingly, K&L requests that the Court abstain from granting any

6    approval of the settlement until after it hears K&L's motion.  The bases of the K&L motion will

7    be as follows:

8        First, Plaintiffs cannot state a claim because K&L did not owe them any duty.  The

9    existence of an attorney's duty of care owing to the plaintiff is generally a question of law.

10   *Osornio v. Weingarten* (2004) 124 Cal. App. 4th 304, 319.  An attorney's liability for

11   professional negligence ordinarily does not extend beyond the client.  *Id.* at 320; *see also Vapnek*

12   *et. al.* Cal. Practice Guide:  Professional Responsibility (The Rutter Group 2004) ¶6:240, p. 6-38.

13   When representing a partnership, the lawyer's client is the partnership entity itself, acting though

14   whichever partner or partners are authorized to oversee the particular matters. *See* California

15   Rule of Professional Conduct 3-600(a); *Responsible Citizens v. Sup. Ct.*, (1993) 16 Cal. App. 4th

16   1717, 1727-28.  Representation of a partnership does not automatically constitute representation

17   of the individual partners.  *Johnson v. Sup.Ct.* (1995) 38 Cal. App. 4th 463, 476-77.

18       Second, to the extent Plaintiffs assert that they should be permitted to pursue this claim

19   on behalf of Opus, Plaintiffs' claim still fails as a matter of law.  Setting aside the illegality of the

20   proposed assignment of the Opus trustee's claims to the Plaintiffs, any claim by the Chapter 7

21   Trustee would be long barred by California's one-year statute of limitations.  Cal. Code Civ. P. §

22   340.6; *see also Village Nurseries v. Greenbaum* (2002) 101 Cal. App. 4th 26, 40-46.  Likewise,

23   were the Chapter 7 Trustee to attempt to intervene as a co-plaintiff in this action, his claims

24   would not relate back to the filing of the Complaint.  *See In re Napster, Inc. Copyright Litig.*,

25   2005 WL 289977, *4 (N.D. Cal. 2005) (requiring successful filing of a motion for intervention

26   within the limitations period in order for new plaintiff's claim to be timely) *Scher v. Slater*

27   *Entm't, LLC*, 2006 WL 1799039, *12 (D.N.J. 2006).  Plaintiffs' lack of standing to sue K&L is

28   therefore a fatal defect which cannot be overcome.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

DOCS\S1980-015\744362.1

- 23 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1    <u>Third</u>, Plaintiffs' claims against K&L are barred by *res judicata* and collateral estoppel.

2    The Bankruptcy Court's approval of K&L's fees was final as to all parties in interest in the

3    bankruptcy case, including the Plaintiffs, the OSC, and the Opus Equity Committee.  The

4    approval was on an interim basis solely as to the Chapter 7 Trustees, meaning only they were

5    thereafter able to pursue any claims against K&L related thereto.  As to all other parties in

6    interest, final approval of fees bars <u>any</u> claims for legal malpractice related to the adequacy of the

7    services provided by K&L.  *See Epstein v. Visher*, 1997 WL 231108 (N.D. Cal. 1997); *Shaw v.*

8    *Replogle*, 2000 WL 1897344 (N.D. Cal. 2000); *In re Envirodyne Corp.*, 2006 WL 2010836

9    (Bankr. N.D. Cal. 2006).  The bar applies to claims that were raised or <u>could have been raised</u> in

10   opposition to the fee application.  In short, any claim that could have been raised by Plaintiffs in

11   opposition to the fee application by any party to the bankruptcy proceedings is barred.

12   Finally,  a review of the Bankruptcy Court's decisions in the related bankruptcy

13   proceedings establishes that Plaintiffs' claims are barred by collateral estoppel.  Plaintiffs alleged

14   that K&L was representing conflicting interests in the bankruptcy.  That argument was raised in

15   the related bankruptcy proceedings.  A solution to address the structural conflict between Tri-

16   Valley and Opus was implemented whereby an independent director of the Tri-Valley Board of

17   Directors, represented by independent counsel, was appointed to be the decision-maker for Opus.

18   Additionally, the Opus Equity Committee was formed to represent the Opus partners themselves

19   and it too was represented by independent counsel.  Finally, the Court authorized Opus'

20   employment of K&L with the consent of the Opus Equity Committee.  [RJN, Ex. 14,

21   Supplemental Order Authorizing Employment of K&L Gates.]  Plaintiffs also claim as damages

22   the "losses resulting from the bankruptcy and sale of Opus' oil and gas leases at bankruptcy

23   auction far below the actual fair market value of the leases."  [RJN, Ex. 26, Complaint, ¶78.]

24   However, neither the Opus Equity Committee nor any Opus partners objected to the sale of the

25   leases.  And the Bankruptcy Court approved the sale of the leases.  [RJN, Ex. 18, Order

26   Authorizing the Sale of Assets.]  Plaintiffs' untimely complaints about matters noticed, heard and

27   resolved in the related bankruptcies proceedings are impermissible collateral attacks on final

28   orders of the Bankruptcy Court entered more than two years ago.  Thus, Plaintiffs claims against

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

DOCS\S1980-015\744362.1

- 24 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS

1    K&L are barred.

2            These legal issues alone provide K&L with a complete defense to Plaintiffs' claims and

3    may render K&L's objections to the settlement moot.

4    **IV.    <u>CONCLUSION</u>**

5            For the foregoing reasons, the Court should deny Plaintiffs' Motion for Preliminary

6    Approval of the Class Action Settlement.  In the alternative, the Court should continue the

7    hearing of the motion to a later date so that it can first rule on K&L's motion to dismiss, or at

8    least allow K&L an opportunity to conduct discovery related to certification issues before the

9    fairness hearing for the proposed settlement.

10

11   Dated: February 27, 2015                    LONG & LEVIT LLP

12

13                                               By: _____
                                                     JOHN B. SULLIVAN
14                                                   Attorneys Specially Appearing for
                                                     Defendant K&L GATES LLP
15

16

17

18

19

20

21

22

23

24

25

26

27

28

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

DOCS\S1980-015\744362.1

- 25 -

Opposition of K&L Gates to Motion for Pre-
liminary Approval of Class Action Settlement
CASE NO. 13 CIV. 3570-RS