Edward S. Zusman (SBN 154366)
ezusman@mzclaw.com
Kevin K. Eng (SBN 209036)
keng@mzclaw.com
MARKUN ZUSMAN FRENIERE & COMPTON LLP
465 California Street, 5th Floor
San Francisco, California 94104
Telephone: (415) 438-4515
Facsimile: (415) 434-4505

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN SIEGAL, JAMES RYBICKI, DAVID GROBLEBE, individually and as General Partner of GROBCO II, and CHRISTIAN WIPF, ON BEHALF OF THEMSELVES AND ALL INDIVIDUALS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> vs. <br><br> G. THOMAS GAMBLE, LOREN J. MILLER, HENRY LOWENSTEIN, PAUL W. BATEMAN, EDWARD M. GABRIEL, JAMES S. MAYER, BEHROOZ SARAFRAZ, LYNN BLYSTONE, ALFRED LOPEZ, MASTON CUNNINGHAM, JOHN DURBIN, GREG BILLINGER, K&L GATES LLP, CHARLES A. DALE III, JOSHUA LANE, AND DOES 1 THROUGH 100, INCLUSIVE, <br><br> Defendants. | Case No. 13 Civ. 3570-RS <br><br> **REPLY IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br><br> Date: March 26, 2015 <br> Time: 1:30 p.m. <br> Courtroom: 3, 17th Floor <br> Hon. Richard Seeborg |

///

///

///

///

///

///

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND FACTS AND PROCEDURAL HISTORY .......................................... 2

III. APPLICABLE LEGAL STANDARDS ........................................................................... 4

IV. DISCUSSION .................................................................................................................. 5

    A. K&L's Conclusory Claims Of Prejudice Are Insufficient To Establish Standing To Challenge the Settlement ................................................................. 5

    B. K&L Fails To Rebut the Propriety Of Preliminary Approval Under Rule 23 Or Any Other Authorities Governing Class Settlements ............................................. 7

        1. K&L's Baseless Accusations Of Fraud and Collusion Are Unfounded and Bear No Relation To Rule 23 ................................................... 7

        2. The Merits Of The Claims Against K&L Are Irrelevant To The Issue Of Fairness Of The Settlement Under Rule 23 ............................................. 7

    C. K&L Cannot Establish That the Settlement, Which Provides For A Total Of $9 Million In Relief, Does Not Constitute A "Good Faith" Settlement ...................... 11

        1. K&L Cannot Seriously Contend That the Settlement Does Not Fall Within the "Ballpark" Of Reasonable Settlements ..................................... 11

        2. K&L Will Suffer No Prejudice Because It Retains the Ability To Reduce Its Portion Of Liability Under Contributory Negligence and Offset Principles ......................................................................................... 13

    D. The Merits Of Plaintiffs' Claims Against K&L Are Irrelevant To the Question of Whether Preliminary Approval Should Be Granted To the Settling Parties' Agreement ............................................................................................................. 14

V. CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alberto v. GMRI, Inc., d/b/a Olive Garden*,
  252 F.R.D. 652 (E.D. Cal. 2008) ................................................................................................ 4

*American Motorcycle Assn. v. Superior Court*,
  20 Cal. 3d 578, 146 Cal. Rptr. 182 (Cal. 1978) ........................................................................ 14

*Baja, Inc. v. Automotive Testing and Development Service, Inc.*,
  No. 8:13-CV-02057-GRA, 2014 WL 2155088 (D.S.C. May 22, 2014) ................................... 12

*Bay Dev., Ltd. v. Superior Court*,
  50 Cal. 3d 1012, 791 P.2d 290 (Cal. 1990) .............................................................................. 12

*Churchill Village, LLC. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir.2004) ....................................................................................................... 7

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir.1992) ............................................................................................ 5, 7, 8

*Edgerly v. City and County of San Francisco*,
  599 F.3d 946 (9th Cir. 2010) .................................................................................................... 15

*Eichenholtz v. Brennan*,
  52 F.3d 478 (3d Cir. 1995) ..................................................................................................... 5, 6

*Employers Ins. of Wausau v. Granite State Ins. Co.*,
  330 F.3d 1214 (9th Cir.2003) ................................................................................................... 15

*Erreca's v. Superior Court*,
  19 Cal. App. 4th 1475, 24 Cal. Rptr. 2d 156 (Cal. Ct. App. 1993) .......................................... 13

*Everman v. Superior Court*,
  8 Cal. App. 4th 466, 10 Cal. Rptr. 2d 176 (Cal. Ct. App. 1992), modified (Aug.
  18, 1992) ................................................................................................................................... 13

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal., Apr. 22, 2010) .......................................................................... 7

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ..................................................................................................... 4

*Goodley v. Wank & Wank, Inc.*,
  62 Cal. App. 3d 389, 133 Cal. Rptr. 83 (Cal. Ct. App. 1976) ............................................. 9, 10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................................... 4

*In re JTS Corp.*,
  617 F.3d 1102 (9th Cir. 2010) ................................................................................................. 13

*In re Piper Aircraft*,
 792 F. Supp. 1189 (N.D. Cal. 1992) .................................................................................. 13

*In re Sch. Asbestos Litig.*,
 921 F.2d 1330 (3d Cir. 1990) ........................................................................................ 5, 6

*In re Traffic Executive Ass'n – Eastern Railroads*,
 627 F.2d 631 (2d Cir. 1980) .............................................................................................. 4

*Kroll & Tract v. Paris & Paris*,
 72 Cal. App. 4th 1537, 86 Cal. Rptr. 2d 78 (Cal. Ct. App. 1999) ................................... 13

*Mauctrst, LLC v. Traux*,
 No. C069486, 2014 WL 3388184 (Cal. Ct. App. July 11, 2014) .................................... 15

*Musser v. Provencher*,
 28 Cal. 4th 274, 121 Cal. Rptr. 2d 373 (Cal. 2002) .................................................... 9, 10

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
 688 F.2d 615 (9th Cir. 1982) ......................................................................................... 5, 7

*Price Pfister, Inc. v. William Lyon, Co.*,
 14 Cal. App. 4th 1643, 18 Cal. Rptr. 2d 437 (Cal. Ct. App. 1993) ................................. 11

*Roberts v. McAfee, Inc.*,
 660 F.3d 1156 (9th Cir. 2011) ......................................................................................... 15

*Ruffalo v. Patterson*,
 234 Cal. App. 3d 341, 285 Cal. Rptr. 647 (Ct. App. 1991) ............................................. 14

*Smith v. Arthur Andersen LLP*,
 421 F.3d 989 (9th Cir. 2005) ..................................................................................... 5, 6, 7

*Square 1 Bank v. Lo*,
 No. C-12-05595 JSC, 2014 WL 46618 (N.D. Cal. Jan. 6, 2014) .................................... 12

*Tech-Bilt, Inc. v. Woodward-Clyde & Associates*,
 38 Cal. 3d 488, 213 Cal. Rptr. 256 (Cal. 1985) ........................................................ 11, 12

*Theobald v. Byers*,
 193 Cal. App. 2d 147, 13 Cal. Rptr. 864 (Cal. Ct. App. 1961) ....................................... 14

*Torchia v. W.W. Grainger, Inc.*,
 No. 1:13-CV-01427-LJO, 2014 WL 7399230 (E.D. Cal. Dec. 29, 2014) ..................... 5, 8

*Waller v. Fin. Corp. of Am.*,
 828 F.2d 579 (9th Cir. 1987) ......................................................................................... 5, 7

*White Mountains Reinsurance Co. of America v. Borton Petrini LLP*,
 221 Cal. App. 4th 890 (Cal. Ct. App. 2013) .................................................................... 10

*Zupnick v. Fogel*,
 989 F.2d 93 (2d Cir. 1993) ................................................................................................ 6

## STATUTES

11 U.S.C. § 541(a)(2)(B) ................................................................................................................ 8

CAL. CIV. PROC. CODE § 877 .................................................................................................. 6, 13

CAL. CIV. PROC. CODE § 877.6 ............................................................................ 2, 4, 5, 6, 11, 13

## OTHER AUTHORITIES

Renzo Comolli & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2014 Full-Year Review: Settlement amounts plummet in 2014, but post-Halliburton II filings rebound* 28 (NERA Economic Consulting 2015) ................... 12, 13

## RULES

FED. R. CIV. P. 12(b)(6) .............................................................................................................. 14

FED. R. CIV. P. 23 ................................................................................................................. 5, 7, 8

FED. R. CIV. P. 23(e) ............................................................................................................ 5, 7, 8

## TREATISES

2 Newberg on Class Actions § 11.54 n. 472 (2d ed. 1990 Pocket Part at 103) ............................. 6

Cal. Prac. Guide Civ. Pro. Trial Claims and Def. Ch. 6(II)-C ..................................................... 14

iv    Case No. 13 Civ. 3570-RS
REPLY IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

## I. INTRODUCTION

For virtually the entire lifetime of this case, just under two years, many of the parties to this action (the "Settling Parties") have engaged in good faith settlement negotiations and discussions of the merits of claims and defenses. These protracted settlement discussions include three mediation sessions before an experienced mediator, and innumerable other discussions. Those hard-fought efforts culminated in the Settlement that is now before the Court on Plaintiffs' Preliminary Approval Motion.

K&L, despite being aware from the outset that settlement negotiations were taking place, chose not to participate, and it was K&L's prerogative to do so. However, having made that choice, it cannot complain that it was denied a seat at the bargaining table. Indeed, during the pendency of this action, K&L has been a signatory to eight stipulations that have implemented and extended stays while the Settling Parties negotiated and sought to effectuate the Settlement. Yet only after the Settlement was finalized and was submitted for preliminary approval did K&L chose to emerge. The first action K&L took in the litigation was to file an opposition to the Plaintiffs' Motion For Preliminary Approval of Settlement ("Preliminary Approval Motion").[1] However, K&L's challenge is untethered to a proper analysis under Rule 23, or any provisions of law relevant to approval of class settlements.

K&L's opposition relies on unfounded attacks and spurious arguments, all premised on the mistaken belief that the merits of the claims asserted against K&L must be interjected into the preliminary approval process. K&L accuses Plaintiffs of misconduct in not disclosing that the Trustees have agreed to cooperate with Plaintiffs in pursuing claims against K&L. K&L stridently accuses Plaintiffs of "hatching" a scheme for the Trustee to participate a "straw man" (ECF 61, p.12:22-13:8), and of intentionally withholding information from the Court in a scheme that "Reeks of Collusion and Fraudulent Conduct." (ECF 61, p.22.)

Conspicuously absent from these personal attacks is any valid explanation of why the merits of claims against K&L, a non-settling defendant, are relevant to preliminary approval.

---

[1] K&L also filed an opposition to the Trustee's motions to approve the Settlement in the bankruptcy proceedings. K&L is the only entity to file an opposition in either action.

Equally conspicuous is the fact that K&L knew about the Settlement, and by no later than August 2014 knew that the Trustees intended to assign their claims to Plaintiffs or join as Co-Plaintiffs. Despite knowing of this plan, which K&L now decries as "illegal," it did nothing for nearly seven months. Rather than taking immediate action in the face of such a purportedly egregious arrangement, K&L chose to wait until after the Preliminary Approval Motion was filed, perhaps to maximize the coercive leverage it could assert over the Settling Parties.

K&L also falsely condemns the Settlement as impairing its rights to contribution. That interpretation is contrary to the terms of the Settlement and the provisions of California law that K&L invokes. K&L also argues that the Settlement was not negotiated in "good faith" under California Civil Procedure Code section 877.6, and that it was the product of fraud and collusion. K&L's accusations, premised on bare supposition and innuendo, do not withstand even casual scrutiny. First, the Settlement was negotiated between Plaintiffs and 17 individual defendants, 3 insurance carriers, 2 bankruptcy Trustees, all with different interests and all represented by experienced counsel over lengthy negotiations. The odds of such a large group coming to a fraudulent or collusive agreement are exceedingly low. Second, to hatch a fraudulent scheme that needs to be approved by two independent judges further reduces the likelihood of collusion to nil. Lastly, the suggestion that the Settlement's recovery of $9 million is somehow trivial is facially defective, particularly when that amount meets and exceeds numerous objective benchmarks. As discussed in greater detail below, K&L's opposition is without merit. Preliminary approval should be granted and the Settling Parties should be permitted to proceed with providing class notice.

## II.     BACKGROUND FACTS AND PROCEDURAL HISTORY

This action was filed on June 27, 2013 in San Francisco Superior Court, and removed to this Court on August 1, 2013. (Doc. 1, p. 2, ¶1; Exh. 1.) As detailed in the Preliminary Approval Motion, the Settling Parties began settlement discussions early in the case. Although not all parties chose to participate in those discussions, all parties (including K&L) were aware that those discussions were taking place. Indeed, just a few days after the action was removed, the parties entered into a stipulation, stating: "all parties have agreed that it is in the best interests of all parties to explore the possibility of consensual resolution and to stay this litigation during that

process . . . ." (Reply Declaration of Kevin K. Eng ("Eng Reply Decl.") (concurrently filed with this Reply), Exh. A (Doc. 11) p. 2:6-7).) The parties all believed that "a temporary stay of proceedings will conserve judicial economy and the parties' resources . . . ." (Eng Reply Decl. Exh. A, (Doc. 11), p. 2:8-9.) The stipulation was entered and proceedings were stayed. (*Id.*, p. 2:12; p.5.) The parties agreed several times to extend the stay to allow for mediation sessions and settlement negotiations to take place. (Eng Reply Decl. Exh. B (Doc. 18), p. 2:6-9; 3:13-22; Exh. C (Doc. 22), p. 2:12-13, p. 38-12; Exh. D (Doc. 24), p.4:4-14.) After the Settling Parties reached a settlement in principle, the parties agreed to further stays while the settlement was being documented. (Eng Reply Decl. Exh. E (Doc. 32), p.2:12-26; Exh. F (Doc. 34), pp.2:15-3:1; Exh. G (Doc. 36), p.2:14-3:3; Exh. H (Doc. 40), p.2:15-17, 2:26-28, 3:1-5.)

In all, there were eight stipulations to stay the proceedings. K&L was a party to each of them. K&L now takes issue with the length of time it has taken to negotiate and finalize the settlement, but its own conduct in this litigation shows its belated challenges to be without substance. Indeed, throughout the settlement process, K&L was aware that the claims against it and the other non-settling parties would continue. In fact, in early August 2014, K&L supported the Settlement, and was willing to "facilitate whatever settlement can be had from the ongoing mediation and settlement process," notwithstanding the claims being asserted against K&L. (Eng Reply Decl. Exh. I.) K&L was then expressly informed that the Trustees would be cooperating in Plaintiffs' claims against K&L. In an email exchange on August 7, 2014, counsel for one of the Trustees informed K&L:

> As part of the global settlement . . . , but for which the documentation has not been finalized nor approved by the Courts, the class action plaintiffs (Opus investors) and the two Trustees have agreed that any claims held by the class and/or the bankruptcy estates against K&L Gates will be evaluated/settled/adjudicated by Ed Zusman's (copied on this e-mail) firm on behalf of the class action plaintiffs, with any net recovery flowing to the class members. This, of course, remains subject to finalizing the agreements and Court approval of the settlement.

(*Id.*)

Even after being informed of Plaintiffs' and the Trustees' intentions, K&L entered into two further stipulations to extend the stay. (*Id.*, Exhs. G and H (Docs. 36 and 40.) Both of those stipulations reported that "a number of the parties have reached agreements in principle, and are in

the process of finalizing all the terms of their agreements, including procedures whereby proceedings to effectuate the settlement would be addressed first, before proceeding with claims against non-settling defendants . . . ." (*Id.*, Exh. G (Doc. 36), p.2:14-17; Exh. H (Doc. 40), p.2:15-17.) Nearly seven months after the August 2014 email, K&L reversed its position and opposed the Preliminary Approval Motion, making vague assertions of undue delay and assorted claims of supposed prejudice. In light of this chronology, K&L's proclamations of prejudice ring false.

### III.   APPLICABLE LEGAL STANDARDS

Plaintiffs discussed the applicable legal standards governing preliminary approval in their Preliminary Approval Motion. Plaintiffs restate them briefly here because K&L makes a wholesale departure from those standards in its efforts to derail the efforts of the Settling Parties.

Preliminary approval has been termed a process in which courts determine whether there is "probable cause" for submitting the proposed settlement to class members and holding a final approval hearing. *In re Traffic Executive Ass'n – Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980). The inquiry at the preliminary approval stage calls for a determination of whether the proposed settlement is within the range of possible approval. *Alberto v. GMRI, Inc., d/b/a Olive Garden*, 252 F.R.D. 652, 666 (E.D. Cal. 2008) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

In evaluating a settlement, courts balance various factors, including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

K&L attempts to displace this well-established framework for evaluating class settlements. In furtherance of its attempt at legalistic sleight-of-hand, K&L argues that the Settlement is not a "good faith" settlement under California Code of Civil Procedure section 877.6.[2] Section 877.6

---

[2] All undesignated statutory references in the text refer to California Civil Procedure Code.

4   Case No. 13 Civ. 3570-RS
REPLY IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL

creates a presumption that a settlement is in good faith. The party asserting the lack of good faith bears the burden of proof on that issue. CAL. CIV. PROC. CODE, § 877.6(d).

Further, preliminary approval under Rule 23(e) calls for an inquiry into the proposed class settlement and its effect on the class. *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). Rule 23(e) does not call for an ultimate determination of the merits of a case. *Torchia v. W.W. Grainger, Inc.*, No. 1:13-CV-01427-LJO, 2014 WL 7399230, at *9 (E.D. Cal. Dec. 29, 2014) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir.1992)). A determination of the merits of non-settling defendants' purported defenses is not even contemplated by Rule 23.

## IV. DISCUSSION

### A. K&L's Conclusory Claims Of Prejudice Are Insufficient To Establish Standing To Challenge the Settlement

"A non-settling party does not necessarily have standing to object to a partial settlement." *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 582 (9th Cir. 1987). Courts have held that the general rule is that a non-settling defendant lacks standing to object to a partial settlement. *Id.* at 582-82. The Ninth Circuit has concluded that a non-settling defendant may lack standing if a partial settlement agreement "is written in such a way as to ameliorate any harm caused by other provisions in the settlement agreement." *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1000 (9th Cir. 2005). The *Smith* court did not lay down a conclusive test, but looked to the rulings of its sister Circuits to identify certain benchmarks for determining a non-settling defendant's standing.

The *Smith* court analyzed two Third Circuit decisions, *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1332 (3d Cir. 1990) and *Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995). The *In re School Asbestos Litigation*, court held: "To establish standing to appeal a settlement, a non-settling defendant may not merely claim an interest in the lawsuit but must show some cognizable prejudice to a legal relationship between it and the settling parties." *In re Sch. Asbestos Litig.*, 921 F.2d at1332. The court held that when a class settlement agreement provides that any future judgments against non-settling defendants will be subject to reduction according to applicable law (or, in the absence of applicable law, by the same principles of offset), "such a settlement

provision expressly recognizes potential contribution rights of non-settling parties, *and does not strip them of any rights of contribution or indemnity.*" *Id.* at 1333 (quoting 2 Newberg on Class Actions § 11.54 n. 472 (2d ed. 1990 Pocket Part at 103)) (emphasis added).  The issue was revisited in *Eichenholtz*, where a partial settlement agreement contained a provision limiting the non-settling defendants' liability to their proportionate liability, as determined at trial.  52 F.3d at 481.  It did not appear to allow for offset of any amounts received from the partial settlement.  *Id.*  The *Eichenholtz* court found that the non-settling defendants had standing to challenge the settlement, but found that the partial settlement was properly approved.  *Id.* at 483, 488.

The *Smith* court also analyzed the Second Circuit opinion in *Zupnick v. Fogel*, 989 F.2d 93 (2d Cir. 1993).  In *Zupnick*, a partial settlement that provided for "full protection" of non-settling parties, and allowed for full reduction of any judgment against the non-settling defendants.  The settlement agreements in that case provided that "Plaintiffs and the Class agree to reduce or satisfy any judgment obtained either by settlement or after trial against Non–Settling Defendants, or any of them, to the extent necessary to extinguish any claims of such Non–Settling Defendants for indemnity or contribution from Muss, as may be determined by the Court or jury."  *Id.* at 99, n.3.

K&L argues that it has standing to challenge the Settlement in this case because the Settlement supposedly cuts off its rights.  K&L, however, fails in its attempt to create standing.  The Settlement's bar order provision states that its scope will be governed by section 877, *et seq.*[3]  Thus, the Settlement in this case is unlike those that the Third Circuit had before it in *Eichenholtz*.  The Settlement incorporates sections 877 and 877.6, but does not simply limit non-settling defendants' liability to their proportional share of liability.  The Settlement allows for non-settling defendants to assert all defenses related to contribution, and to obtain offset against all prior settlement amounts.  (*See* discussion, *infra*, Section C.2.)  It offers comprehensive protections to non-settling defendants, in line with the protections addressed in *Zupnick*.  *Zupnick*, 989 F.2d at 99, n.3.  If Plaintiffs were to obtain a judgment of $9 million or less against K&L, the offset of the Settlement (if approved) would satisfy that judgment.  Thus, the Settlement ameliorates any harm

---

[3] K&L correctly notes that the Settlement is intended to incorporate section 877 *et seq.*, dealing with joint tortfeasors and settlements involving such parties, rather than section "887."

that may be caused by other provisions of the agreement, and therefore K&L lacks standing. *Smith*, 421 F.3d at 1000; *see Waller*, 828 F.2d 579.

### B. K&L Fails To Rebut the Propriety Of Preliminary Approval Under Rule 23 Or Any Other Authorities Governing Class Settlements

#### 1. K&L's Baseless Accusations Of Fraud and Collusion Are Unfounded and Bear No Relation To Rule 23

K&L all but abandons the guidance of Rule 23, barely paying lip service to that legal framework. K&L falsely accuses Plaintiffs of deliberately concealing the full terms of the Settlement. This attack is based on the specious argument that the merits of claims against non-settling defendants must be interposed into the discussion of the Settling Parties' agreement. There is no authority for such a contention. The Rule 23 inquiry looks to the strengths and merits of claims and defenses covered by a proposed settlement, and the effects on the class members whose rights stand to be affected by the settlement. The touchstone remains fairness to the class, not a tenuous theory of prejudice to a non-settling defendant. *See Officers for Justice*, 688 F.2d at 624 (noting primary concern of Rule 23(e) is protection of the class).

Settling parties cannot reasonably be expected or required to discuss the merits of non-settling defendants' defenses. Under such a legal regime, non-settling parties like K&L would wield extortionate power over a settlement. Non-settling parties could refuse to participate in settlement discussions, lying in wait for the remaining parties to negotiate a hard-fought settlement. After those negotiations, the non-settling litigant could reemerge, threatening to derail the settlement unless allowed to obtain the free-ride of dismissal. The resulting deterrent effect would chill incentives to engage in settlement discussions, contrary to well-established judicial policies. *See Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, *7 (N.D. Cal., Apr. 22, 2010) (citing *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir.2004); *Class Plaintiffs*, 955 F.2d at 1276; *Officers for Justice*, 688 F.2d at 625).

#### 2. The Merits Of The Claims Against K&L Are Irrelevant To The Issue Of Fairness Of The Settlement Under Rule 23

Next, K&L prematurely argues the merits of the claims against it, asserting that the Trustees' agreement to assign their claims to Plaintiffs, or to intervene in this action, is "illegal."

Rather than waiting to assert these defenses at a procedurally appropriate time, K&L interposes itself in the Settlement approval process, brandishing the "illegal" moniker and wielding the assignment clause as a cudgel to threaten the Settlement. But the question of who should prosecute the claims is not ripe and, more importantly, the issue is wholly irrelevant to preliminary approval. As discussed above, Rule 23(e) does not encompass the claims of non-settling parties, and even if it were relevant, the analysis does not require ultimate conclusions as to contested issues of fact or law that go to the merits of the dispute. *Torchia*, 2014 WL 7399230, at *9 (citing *Class Plaintiffs*, 955 F.2d at 1291). K&L is clearly arguing the ultimate merits of the claims, and even argues that Plaintiffs' supposed lack of standing is a "fatal defect." (Doc. 61, pp.23-24.)

K&L also mischaracterizes the intent of the assignment provision. Plaintiffs did not "convince" the Trustee to assign claims to avoid problems allegedly "fatal" to their claims against K&L Gates. Plaintiffs recognized that K&L Gates would likely argue that the assignment was invalid, and therefore agreed that the Trustee would participate as a plaintiff alongside the investors if the assignment was challenged or failed. The goals of the Trustees and the Class are the same – to take steps to make Opus and, by extension, its investors, whole to the fullest degree possible. In effect, the parties agreed that if the assignment provision was challenged, then the pre-assignment *status quo* would be restored. There is no basis for characterizing the Trustee's role as a straw-man plaintiff. The Trustee has independent duties to the creditors to take reasonable steps to marshal assets for their benefit, and the bankruptcy estate's property includes claims against potential debtors by operation of law. 11 U.S.C. § 541(a)(2)(B).

K&L disingenuously asks this Court to prohibit the Trustee, prospectively, from directly pursuing any claims against K&L. K&L cites no authority for this extraordinary relief, particularly when the Trustee is not a party to this action, it is not apparent that there is jurisdiction over the Trustee, and it is no trivial matter to bar an individual's access to a judicial forum prospectively. K&L cites the "substance rather than the form" of the provision, and claims the Trustee is merely effectuating an "assignment of proceeds" to a "litigation adversary" who will control the malpractice litigation. (ECF 61, p.17:10-11.) K&L, however, blatantly misrepresents the Trustee and Plaintiffs as litigation adversaries. The Opus Trustee and the investor-Plaintiffs

are aligned – it is in their mutual interests to manage and resolve the estate's litigation assets for the benefit of the estate's creditors, in particular the investors. Further, they have worked cooperatively in negotiating the Settlement, and in seeking judicial approval. K&L's attempt to recast the parties as adversaries is unavailing. Further, K&L offers no analysis or authority as to why an attempted assignment or co-plaintiff agreement transforms the Trustee from a legitimate plaintiff into a "straw man," or why a trustee in this situation would lack the motivation to pursue claims that have value to creditors of the estate.

K&L quotes at length *Goodley v. Wank & Wank, Inc.*, 62 Cal. App. 3d 389, 133 Cal. Rptr. 83 (Cal. Ct. App. 1976), but its analysis is based on a misapplication of *Goodley*'s holding to the facts of this case. Opus was principally an investment vehicle owned by its investors. It had no management or personnel of its own, with all corporate functions being handled by TVC. Because Opus's principal reason for being was as an investment partnership for the Opus investors, there is a unity of interest between the Opus investors and the Opus Trustee, who stands in Opus's shoes. The only persons actually harmed by the conduct giving rise to the cause of action are the Opus investors, who will be the principal beneficiaries of any funds recovered from K&L. The unique facts of this case eliminate the public policy concerns behind the general rule limiting assignments of legal malpractice claims (in this case breach of fiduciary duty premised on a conflict of interest). In fact, *Goodley* itself reasoned that the prohibition on assigning malpractice claims obtains from the "uniquely personal nature" and "highly personal and confidential" attorney client relationship. *Id.* at 395. But the concern of compromising this sensitive relationship is absent here, where the essence of the relationship is a conflict of interest and the allegations of misconduct flow from a conflict. Furthermore, the other public policy concerns over potential commercialization of malpractice actions are also absent, where the assignment is part of a larger effort to marshal assets on behalf of injured investors, who were the victims of a securities fraud.

More recent decisions have declined to apply the anti-assignment rule when the terms of the assignment do not implicate the public policy concerns set forth by *Goodley*. In *Musser v. Provencher*, 28 Cal. 4th 274, 121 Cal. Rptr. 2d 373 (Cal. 2002), the court considered whether an insurer – only a party in interest because of an insurance policy and far more distant than the

immediately harmed investor-Plaintiffs – could assume assigned malpractice claims of one defense counsel against another. The Court observed that the public policy reasons behind *Goodley* were inapplicable and did not apply the prohibition. *Id.* at 287.

The rule against malpractice assignments was again held inapplicable in *White Mountains Reinsurance Co. of America v. Borton Petrini LLP*, 221 Cal. App. 4th 890 (Cal. Ct. App. 2013). The court held that an assignment of legal malpractice action was permissible when it was a "small, incidental part of a larger commercial transfer between insurance companies involving the transfer of assets, rights, obligations, and liabilities," the "transfer did not treat the legal malpractice claim as a commodity, and did not create a market for such claims." *Id.* at 909. In rejecting the objection to the assignment based on the *Goodley* rule, the court stated that

> the most salient point of those cases—the analysis of why the public policy reasons for barring assignment of legal malpractice reasons for barring assignment of legal malpractice actions first identified in *Goodley* simply *do not hold* when the assignment occurs under circumstances like those in this case.

*Id.* at 910 (emphasis in original).

Just as the bar on assigning legal malpractice claims was inapplicable in *Musser* and *White Mountains*, K&L's attempt to enjoin the Trustee's assignment is inapplicable here. There is no personal confidential relationship between K&L and the Opus Trustee. The Opus Trustee owns these claims purely by operation of the bankruptcy law, and the victims of K&L's purported misconduct were the investors, so an assignment to the investors supports the policy considerations enunciated in *Goodley* by reconnecting the claims with the injured individuals. Also like that case, this assignment proviso is a part of a much larger agreement, one which the parties made expressly severable. *White Mountains*, 221 Cal. App. 4th at 909. Finally, this small part of the settlement agreement does not "treat the legal malpractice claim as a distinct commodity [or] create a market for such claims." *Id.*

K&L paints itself as the victim in an illusory no-win situation: either it is harmed (somehow) by the assignment of the claim to the actual parties in interest or, as a consequence of its objection, it is injured (somehow) because the Trustee with "nothing to gain or lose" from the suit steps back in to prosecute such claims. The mere fact that K&L is attempting to block a

thoughtfully negotiated meritorious settlement on the basis of a provision that would not harm or prejudice it in any way itself suggests that the whole assignment issue is a red herring. This notion is further bolstered because even if the court were to determine that the assignment was invalid, the Trustee would prosecute the case in its own name alongside the investors.

### C. K&L Cannot Establish That the Settlement, Which Provides For A Total Of $9 Million In Relief, Does Not Constitute A "Good Faith" Settlement

#### 1. K&L Cannot Seriously Contend That the Settlement Does Not Fall Within the "Ballpark" Of Reasonable Settlements

K&L attempts to bolster its self-serving attempt to derail the settlement by arguing that the Settlement is not a "good faith" settlement under section 877.6, which governs a court's determination of good faith settlement. Section 877.6 promotes two equitable goals: (1) encouragement of settlements; and (2) equitable apportionment of liability. *See Price Pfister, Inc. v. William Lyon, Co.*, 14 Cal. App. 4th 1643, 1649, 18 Cal. Rptr. 2d 437 (Cal. Ct. App. 1993). To that end, the statute provides for judicial review of settlements to ensure they are in good faith, and upon a finding of good faith, will bar all claims for contribution and indemnity against a defendant who has settled in good faith. *See* CAL. CIV. PROC. CODE, § 877.6(c); *see also Price Pfister*, 14 Cal. App. 4th at 1647. The party asserting the lack of good faith bears the burden of proof on that issue. CAL. CIV. PROC. CODE, § 877.6(d).

The standards under Section 877.6 were further elaborated in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal. 3d 488, 213 Cal. Rptr. 256 (Cal. 1985). Under *Tech-Bilt*, "a defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of settlement, would estimate the settling defendant's liability to be." *Id.* at 499. Courts consider: (1) a rough approximation of the plaintiffs' total recovery and the settlor's proportionate liability; (2) the amount paid in settlement; (3) the allocation of settlement proceeds among plaintiffs; and (4) a recognition that less is paid in settlement than should be awarded at trial. *Id.* The court may consider additional relevant factors such as "the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." *Id.* at 499-500. A court applies the *Tech-Bilt* factors on the basis of information available at the time of settlement. *Id.* at 499. The Settlement here falls squarely within the "ballpark" of *Tech-Bilt*. K&L argues that

Plaintiffs did not offer discussion of the *Tech-Bilt* factors. Although the Preliminary Approval Motion did not expressly cite that case, Plaintiffs provided detailed discussion of the same factors relevant to *Tech-Bilt*. (ECF 43, Section VI, pp. 17-27.)

As described previously, the negotiations were good faith, arm's-length discussions, with zealous representation on the part of all Settling Parties. Further, the Settlement provides for total relief of $9 million. Of that amount, $4.5 million is allocated to this action, and $2.25 is allocated to each of the two bankruptcy Trustees. The $4.5 million in this action will be distributed on a pro rata basis to qualifying class members, based on the amount of their Opus investments, after attorney's fees and costs are awarded. K&L calculates that the proposed Settlement provides approximately 9% of the total damages. Even by K&L's calculations, the Settlement lies within the *Tech-Bilt* ballpark. *See Bay Dev., Ltd. v. Superior Court*, 50 Cal. 3d 1012, 1028, 791 P.2d 290, 299 (Cal. 1990) (upholding good faith determination for $30,000 settlement where damages were $1,000,000); *see also Square 1 Bank v. Lo*, No. C-12-05595 JSC, 2014 WL 46618, at *2 (N.D. Cal. Jan. 6, 2014) (finding $450,000 settlement was "good faith" where damages were over $5.5 million, and settling defendant's insurance policy was only asset); *Baja, Inc. v. Automotive Testing and Development Service, Inc.*, No. 8:13-CV-02057-GRA, 2014 WL 2155088, at *2 (D.S.C. May 22, 2014) (analyzing request for dismissal of cross-claim under sections 877(a) and 877.6 and approving $267,000 settlement where over $10 million in damages sought).

Plaintiffs could hypothetically achieve a judgment for more than $9 million, or of the $4.5 million that will be distributed among the proposed Settlement Class. However, *Tech-Bilt* recognizes that a settling party should pay less than an amount if found liable at trial. Further, the Settlement relief is above the median settlement amounts for securities class actions in 2014. Renzo Comolli & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2014 Full-Year Review: Settlement amounts plummet in 2014, but post-Halliburton II filings rebound*, 28 (NERA Economic Consulting 2015)[4] (reporting median settlement amount in 2014 was $6.5 million). Further, for losses in cases with $50-$99 million in investor losses, the median

---

[4] Available online at http://www.nera.com/content/dam/nera/publications/2015/PUB_2014_Trends_0115.pdf

settlement value is 4.8%. *Id.* at 32. Also, as previously discussed, there are limited assets in play, including burning limits insurance policies, so trying the case to obtain a hypothetically larger award would exhaust limited funds. There was no collusion, and the Settlement is not aimed at harming any parties' interests.

### 2. K&L Will Suffer No Prejudice Because It Retains the Ability To Reduce Its Portion Of Liability Under Contributory Negligence and Offset Principles

K&L next argues that it will be prejudiced because the Settlement will cut off its contribution rights. K&L is incorrect. First, K&L would be entitled to a settlement credit. Section 877 expressly provides for a right of set off. Thus, a settling tortfeasor's settlement payments reduce damages as to the remaining, non-settling tortfeasors. CAL. CIV. PROC. CODE, § 877; *In re JTS Corp.*, 617 F.3d 1102, 1116 (9th Cir. 2010); *In re Piper Aircraft*, 792 F. Supp. 1189, 1191 (N.D. Cal. 1992). The right of set off is not impaired by a good faith determination under section 877.6. *See Erreca's v. Superior Court*, 19 Cal. App. 4th 1475, 1488, 24 Cal. Rptr. 2d 156, 165 (Cal. Ct. App. 1993) (noting trade-off under statute whereby non-settling defendants obtain reduction in ultimate liability to plaintiff). A bar order that includes a determination under section 877.6 cuts off an independent cause of action for indemnity, but does not foreclose contribution defenses. *See Everman v. Superior Court*, 8 Cal. App. 4th 466, 470, 10 Cal. Rptr. 2d 176, 179 (Cal. Ct. App. 1992), modified (Aug. 18, 1992) (noting common "trial tactic of using the empty chair to ascribe fault to an actor who is not present to defend himself.").

*Kroll & Tract v. Paris & Paris*, 72 Cal. App. 4th 1537, 86 Cal. Rptr. 2d 78 (Cal. Ct. App. 1999), is instructive. *Kroll* arose from a malpractice action in which the client sued former defense counsel for malpractice, and that firm cross-complained against another firm, which had served as *cumis* counsel. The court in *Kroll* found that sound policy reasons precluded indemnity claims among counsel who concurrently represented the former client. *Id.* at 1540. However, the preclusion of an indemnity claim did not strip the malpractice defendant from contribution defenses. "Even without the indemnity cross-complaint, [the malpractice defendant] can show the negligence of [co-counsel] was the cause of [the former client's] injury through the affirmative defense of comparative negligence, thereby reducing any liability it may have." *Id.* at 1545.

Thus, the comparative fault defense remains available. *See* Cal. Prac. Guide Civ. Pro. Trial Claims and Def. Ch. 6(II)-C. This approach is consistent with the long-standing policy under California law is that injuries caused by concurrent tortfeasors should be borne by each in direct proportion to their respective fault. *See American Motorcycle Assn. v. Superior Court*, 20 Cal. 3d 578, 146 Cal. Rptr. 182 (Cal. 1978); *see also Theobald v. Byers*, 193 Cal. App. 2d 147, 150, 13 Cal. Rptr. 864, 866 (Cal. Ct. App. 1961) (applying contribution defense in attorney-client context).

### D. The Merits Of Plaintiffs' Claims Against K&L Are Irrelevant To the Question of Whether Preliminary Approval Should Be Granted To the Settling Parties' Agreement

K&L finally makes a baseless request that the Court derail the entire preliminary approval process to allow K&L to file a Rule 12(b)(6) motion. Plaintiffs are unaware of any legal authority to permit K&L's request. Presumably, if any such authority existed, K&L would have cited it. There is no reason to delay the approval process for a side-venture into the merits of unrelated claims. Nor are K&L's proffered defenses foregone conclusions, as it would have the Court believe. For example, K&L claims that proceedings in the bankruptcy court constitute *res judicata* and/or collateral estoppel. In addition to being irrelevant at the current juncture, that argument is a red-herring. The bankruptcy proceedings cannot be invoked to absolve K&L of its alleged breaches of duty. A California Court of Appeal rejected a similar argument in a malpractice action. There, the malpractice plaintiff retained counsel in a marital dissolution action. Through her former counsel's alleged malpractice, certain real property was classified as community, rather than separate, property. *Ruffalo v. Patterson*, 234 Cal. App. 3d 341, 342-43, 285 Cal. Rptr. 647 (Ct. App. 1991). The attorney asserted that the underlying determination as to the nature of the property was collateral estoppel, and foreclosed the plaintiff's claims. The Court of Appeal reversed the judgment for the defendant. The court reasoned:

> To hold otherwise would be to rule that where an attorney's negligence has caused a court to make an erroneous adjudication of an issue, the fact that the court has made that adjudication absolves the attorney of all accountability and responsibility for his negligence. That cannot be and is not the rule. The doctrine of collateral estoppel does not apply.

*Id.* at 344.

///

Similarly, *Mauctrst, LLC v. Traux* was a malpractice action that arose from a real estate action. *Mauctrst, LLC v. Traux*, No. C069486, 2014 WL 3388184, at *5 (Cal. Ct. App. July 11, 2014).[5]  In the underlying action, the parties reached a tentative settlement of the dispute, but the settlement fell apart.  The trial court refused to enforce the tentative settlement, finding that there was no meeting of the minds, and found against the plaintiffs premised on a finding of unclean hands.  *Id.*, *2.  The clients sued for malpractice, alleging mishandling of the underlying litigation and failure "to enforce the settlement agreement."  *Id.*, *5.  The attorney asserted that the findings in the underlying case were collateral estoppel.  The Court of Appeal disagreed, concluding that: "The doctrine of collateral estoppel is inapplicable here because the malpractice claim raised in plaintiff's first amended complaint was not actually litigated or necessarily decided at a previous proceeding."  *Id.*  Here, there is no indication that any malpractice claim against K&L was actually litigated in the bankruptcy.

## V.     CONCLUSION

K&L has failed to demonstrate any valid basis for challenging the Settlement.  None of K&L's defenses are impaired, so it lacks standing to object to the Settlement.  Even if it had standing, it does not raise any legitimate challenges to the Settlement, which satisfies Rule 23(e) and the cases interpreting it.  The Settlement also satisfies the requirements of "good faith" under Code of Civil Procedure section 877.6.  Preliminary approval should therefore be granted.

Dated:  March 10, 2015              MARKUN ZUSMAN FRENIERE & COMPTON LLP

By  /s/
    Kevin K. Eng

Attorneys for Plaintiffs

---

[5] State court decisions that are not selected for publication may be cited in federal courts. *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 956 n.13 (9th Cir. 2010); *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1167, n.6 (9th Cir. 2011) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir.2003)).