UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN SIEGAL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> G. THOMAS GAMBLE, et al., <br><br> Defendants. | Case No. 13-cv-03570-RS <br><br> **ORDER DENYING SPECIAL MOTION TO STRIKE AND GRANTING MOTION TO DISMISS WITH PARTIAL LEAVE TO AMEND** |

## I.   INTRODUCTION

This action arises from the sale of securities in the TVC Opus I Drilling Program, L.P. ("Opus") to plaintiffs and putative class members and the subsequent bankruptcy proceedings of Opus and its general managing partner, the Tri-Valley Corporation ("TVC"). Plaintiffs allege a host of claims grounded in securities fraud against ten of TVC's former officers and directors, in addition to two allegedly unlicensed and unregistered securities broker-dealers, in connection with their investments in Opus. In the same complaint, plaintiffs raise a separate claim solely against K&L Gates, LLP and attorneys Charles Dale, III and Joshua Lane (collectively, "the K&L Gates Defendants" or "KLG"), who represented both Opus and TVC throughout their respective bankruptcies. According to plaintiffs, KLG's simultaneous representation of TVC and Opus led it knowingly to engage in an impermissible conflict of interest, and enabled it to commit conduct amounting to attorney malpractice against Opus. Plaintiffs furthermore aver that KLG aided and abetted TVC in breaching fiduciary duties owed by TVC to Opus.

KLG now moves both to strike plaintiffs' allegations pursuant to California's anti-SLAPP statute and to dismiss them for failure to state a cognizable claim. More specifically, these two motions contend that (1) plaintiffs' claims were filed in violation of the automatic stay issued by the bankruptcy court and are therefore void; (2) res judicata and collateral estoppel arising from decisions reached by the bankruptcy court foreclose plaintiffs from now raising these claims; (3) California's litigation privilege and anti-SLAPP statute shield KLG's averred misconduct, committed in the course of a judicial proceeding, from suit; (4) KLG shares no relationship with plaintiffs giving rise to any duties on which plaintiffs' claims could be based; (5) plaintiffs' attempt to assert claims purportedly assigned to them by Opus's Bankruptcy Trustee is impermissible; and (6) the one-year statute of limitations on state malpractice actions would bar the Opus Trustee from joining plaintiffs' suit. Because res judicata indeed bars plaintiffs from bringing suit for attorney malpractice, KLG's additional contentions need not be reached. As for plaintiffs' claim that KLG aided and abetted TVC in breaching its fiduciary duties to Opus, however, plaintiffs merely fail to aver sufficiently particularized facts to state a cognizable claim at this juncture. This latter claim is, therefore, dismissed with leave to amend.

## II. BACKGROUND[1]

Tri-Valley Corporation ("TVC") is an oil and natural gas development company that in 2002 formed the TVC Opus I Drilling Program, L.P. ("Opus") as a limited partnership to acquire oil and gas leases for TVC's exploration and management. TVC assumed the role of Opus's general managing partner, and from 2002 to 2010, orchestrated Opus's sale of approximately $97 million in securities to nearly a thousand individual investors. These sales occurred both directly from Opus and indirectly, through unregistered and unlicensed broker-dealers who received commissions for their services. TVC employed numerous misrepresentations and omissions

---

[1] The factual background herein is based on averments in the complaint, which must be taken as true for purposes of a motion to dismiss, and various orders issued in the concurrent bankruptcy court proceedings, copies of which were lodged in this Court as exhibits to KLG's Request for Judicial Notice (Docket No. 74), which is unopposed and will be granted.

regarding its assets, financial risk, and value to entice plaintiffs to purchase Opus securities. When Opus took issue with these practices as well as fees TVC was exacting for its management services, together they formed the Opus Special Committee ("OSC"), a group of Opus partners convened to mediate those disputes, with the assistance of independent counsel, Kathleen M. Miller.

On August 7, 2012, TVC filed for Chapter 11 bankruptcy in the Bankruptcy Court for the District of Delaware on its own behalf, that of its subsidiaries, and on behalf of Opus. KLG filed an application with both entities seeking retention as their bankruptcy counsel. Both KLG and the U.S. Trustee raised before the bankruptcy court the structural conflict TVC and Opus's relationship presented, and proposed the creation of an Opus Equity Committee ("Equity Committee") comprised of seven Opus partners to represent Opus's independent interests, including the James T. Rybicki Trust, associated with named plaintiff to this action James Rybicki. The Equity Committee furthermore retained Ashby & Geddes, P.A. as its independent counsel and Conway McKenzie as its independent financial advisor. The Equity Committee worked with TVC and Opus (collectively, "the debtors") to appoint an additional director to the TVC board and to retain independent conflict counsel, none of whom lodged any objection with the bankruptcy court regarding KLG's dual representation. With these safeguards in place, the bankruptcy court approved KLG's retention applications as to both debtors. In August 2013, after conducting a hearing, the bankruptcy court approved a sale of the debtors' assets. Both the OSC and the Equity Committee were party to those proceedings.

In March 2013, the bankruptcy court granted the debtors' motion to convert their bankruptcy filing to Chapter 7 and appointed a Chapter 7 Trustee for the Opus estate (the "Opus Trustee"). KLG thereafter received the bankruptcy court's final approval as to its motions for fees and costs for representing both TVC and Opus. These applications were served on both the OSC and the Equity Committee, as well as the Opus Trustee. The Trustee filed the only objection, which in light of KLG's role representing two debtors, requested a breakdown of services rendered to Opus and fees allocable to the Opus estate. He further requested that he retain the

right to object and seek disgorgement for any approved fee or expense as information became available during the course of claims administration. The court approved both these requests.

On June 27, 2013, the named plaintiffs—direct and indirect purchasers of Opus securities—filed this complaint as a putative class action against fifteen defendants, including ten former officers and directors of TVC (Thomas Gamble, Loren Miller, Henry Lowenstein, Paul Bateman, Edward Gabriel, James Mayer, Lynn Blystone, Maston Cunningham, John Durbin, and Greg Billinger); two allegedly unlicensed and unregistered broker-dealers (Behrooz Sarafraz and Alfred Lopez); and the KLG defendants. The bulk of plaintiffs' complaint focuses on allegations of fraud, misrepresentation, breach of fiduciary duty, and violations of California's Corporations Code and federal securities laws allegedly committed by the officer and director defendants and the securities broker-dealer defendants.

KLG is named only under plaintiffs' fifth claim for relief. According to plaintiffs, by representing both TVC and Opus despite known material conflicts of interest between them; filing for bankruptcy on Opus's behalf without its proper approval; taking positions favoring TVC to Opus's detriment; and arranging for a below-value sale of Opus assets, KLG operated under a material conflict of interest, breached its duty of loyalty and fiduciary duties to Opus, and failed to provide Opus with competent representation. In the course of such conduct, KLG furthermore assisted TVC in breaching its fiduciary duty to Opus. Plaintiffs claim they are therefore owed, at minimum, damages equivalent to the attorney fees Opus paid to KLG and the value lost through the bankruptcy sale of Opus's assets orchestrated by KLG.

The parties commenced settlement negotiations soon after the complaint was filed. Through mediation, plaintiffs reached an initial agreement with the ten TVC director and officer defendants in February 2014. In January 2015, these settling parties filed for preliminary approval in this court of their proposed agreement and provisional certification of the settlement class; a motion which remains pending. Per its terms, the settlement will become effective only with approval from both the undersigned and the bankruptcy court.

In addition, plaintiffs struck a separate agreement with the Opus Trustee for assignment of

any claims the Trustee may have against KLG.  While this "allocation agreement" is not before this Court for approval, a copy was lodged with the bankruptcy court and brought to this Court's attention by KLG.  In addition to assigning the Trustee's potential claims against KLG to plaintiffs, it provides that in the event the assignment term is challenged, the Opus Trustee will join plaintiffs' action as a co-plaintiff and assign "all right, title, and interest in any proceeds to the California Plaintiffs . . . at no cost to the Opus Trustee."  The plaintiffs and Opus Trustee shall, in addition, "enter into a mutually acceptable hold harmless agreement for the benefit of Opus and the Opus Trustee."  *See* KLG Request for Judicial Notice, Ex. 32, Assignment Agreement.

Defendants Sarafraz, Lopez, and KLG have not, to date, settled with plaintiffs, and have each filed motions to dismiss.  Considered here are both KLG's motion to dismiss for failure to state a claim and its special motion to strike based on California's anti-SLAPP statute.

### III.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.*  The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  When evaluating such a motion, the court must accept all material allegations in

the complaint as true, even if doubtful, and construe them in the light most favorable to the nonmoving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

### IV.   DISCUSSION

A. <u>California's Litigation Privilege and Anti-SLAPP Statute</u>

KLG contends that all of its averred misconduct arose from actions taken as Opus and TVC's counsel in litigation proceedings, and is therefore shielded from suit by both California's litigation privilege and its anti-SLAPP statute. While each of these provisions insulates certain types of communicative acts from later allegations of wrongdoing in order to protect freedom of expression and to encourage zealous legal advocacy, neither bars plaintiffs' claims against KLG.

*1. Litigation Privilege*

Section 47(b) of the California Civil Code operates as a limitation on liability, precluding the use of certain protected acts and communications as the basis for a tort action other than malicious prosecution. It provides in relevant part that "[a] privileged publication or broadcast is one made . . . [i]n any . . . judicial proceeding . . . or in initiation or course of any [such proceeding]" Cal. Civ.Code § 47(b). Regarded by many courts as absolute in nature, it applies not only to statements made during a trial or other proceeding, but also to steps taken prior thereto or afterwards. *Action Apartment Association, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007); *see Rusheen v. Cohen*, 37 Cal.4th 1048, 1057 (2006) (interpreting the privilege to apply to any communication made in a judicial or quasi-judicial proceeding by litigants or other authorized participants to achieve the objects of the litigation and that bears some logical connection to the action); *Albertson v. Raboff*, 46 Cal. 2d 375, 380-81 (1956) (clarifying that the privilege may apply even to a communication of the above type made outside the courtroom where no function of the court or its officers is invoked).

As a general rule, however, the privilege applies only to communicative acts, such as lodging a filing or sending a demand letter, not to tortious conduct. *Action Apartment*, 41 Cal. 4th at 1249. The distinction between communicative and noncommunicative conduct hinges on whether the injury allegedly resulted from an act that was "communicative in its essential nature." *Rusheen*, 37 Cal. 4th at 1058; *Ramalingam v. Thompson*, 151 Cal. App. 4th 491, 504 (2007) (distinguishing an accountant's negligent preparation for delivering expert trial testimony as privileged from prior rulings holding as non-privileged allegations a defendant illegally recorded calls or that a physician caused injury during a medical exam).

Here, plaintiffs' claims against KLG center around tortious conduct, from which privilege communications incidentally flowed. KLG's averred missteps were not inherent to the communications it rendered to drive the course of the bankruptcy proceeding, but rather its failure to refrain from engaging in a conflict of interest and favoring TVC's interests to Opus's detriment. Indeed, a key purpose of the litigation privilege is to promote access to the courts and to encourage witnesses to testify truthfully without the fear of retaliatory lawsuits. Applying it to shield attorneys from allegations of malpractice, however, would not further this purpose. *See Kolar v. Donahue*, 145 Cal. App. 4th 1532, 1541 (2006).

### 2. Anti-SLAPP Statute

In similar fashion, California's anti-SLAPP law provides for dismissal of unmeritorious claims arising from acts taken pursuant to a defendant's right of petition or free speech. According to the statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitutions in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established . . . a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. § 425.16.

A successful movant under the statute must make a threshold showing that the challenged conduct arises from an act in furtherance of the right of petition or free speech related to a public issue. *Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th 515, 522 (2006). A

qualifying "act" may include a written or oral statement before a judicial proceeding or any other proceeding authorized by law; one made in connection with an issue under consideration by such a proceeding; or any other conduct in furtherance of the exercise of the constitutional right to free expression in connection with an issue of public concern. *Id.* § 425.16(e).  Once such a showing is made, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim.[2]  The trial court must strike the cause of action if the plaintiff is unable to meet this burden.  *Equilon Enterprises, LLC v. Consumer Caues, Inc.*, 29 cal. 4th 53, 61 (2002).

KLG, charged with providing Opus incompetent representation and assisting TVC in breaching its fiduciary duties, raises the anti-SLAPP defense to no avail.  While its averred actions taken to plaintiffs' detriment may have occurred throughout the course of the bankruptcy proceedings, and included filings and legal advice, courts assessing anti-SLAPP motions in the malpractice context distinguish such "incidental" or "collateral" conduct from the core, unprotected act of engaging in representation in a manner that breached a duty of loyalty.  *See Peregrine Funding, Inc. v. Sheppard Mullin Richter Hampton LLP*, 133 Cal. App. 4th 658, 672 (2005); *Benasra v. Mitchell Silberberg & Knupp LLP*, 123 Cal. App. 4th 1179, 1189 (2004) ("The breach occurs not when the attorney steps into court to represent the new client, but when he or she abandons the old client . . . . The breach of fiduciary duty lawsuit may follow litigation pursued against the former client, but does not arise from it.").

This reasoning, moreover, comports with the anti-SLAPP statute's policy objectives, similar to those upheld by the litigation privilege.  A malpractice claim focusing on an attorney's incompetent handling of a previous lawsuit does not have the chilling effect on advocacy the anti-SLAPP statute seeks to mitigate.  "In a malpractice suit, the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so.  Instead of chilling the petitioning activity, the threat of

---

[2] KLG challenges plaintiffs' probability of prevailing on grounds identical to those raised in its motion to dismiss, addressed below.

malpractice encourages the attorney to petition competently and zealously." This is entirely different from the fear a third party may sue an attorney for an exercise of free speech, which could have a significant and detrimental chilling effect. *Kolar v. Donahue*, 145 Cal. App. 4th 1532, 1540 (2006). KLG's special motion to strike therefore fails to bar consideration of plaintiffs' claims and is denied.

### B.  Attorney Malpractice

As its counsel, plaintiffs aver KLG owed the Opus partnership duties of loyalty and care that were breached when KLG elected to represent Opus and TVC simultaneously in their bankruptcy proceedings. According to the complaint, KLG subsequently failed Opus in numerous respects, for example by neglecting to offer advice on averting bankruptcy, and declining to assert the right of Opus investors to weigh in on whether to execute the proposed bankruptcy asset sale. KLG moreover adopted positions favorable to TVC at Opus's expense, plaintiffs argue, including its advocacy for payment of TVC liabilities with Opus funds, and its assertion that certain Opus partners are personally liable for deficits owed to Opus creditors. According to the complaint, KLG put itself in the position of choosing between these entities and elected to favor TVC despite its knowledge of both the active dispute and general conflicts of interest between TVC and Opus.

Whether or not Opus received subpar representation, their opportunity to raise these claims expired with the bankruptcy court's approval of KLG's actions at material points throughout those proceedings. Indeed, res judicata limits the litigation of claims that were or should have been raised during the proceedings leading up to a prior adjudication. More specifically, for res judicata to bar a later suit, an adjudication must involve the "same claim" as the later suit, and have reached a final judgment on the merits rendered by a court of competent jurisdiction with respect to the parties in the present matter or their privies. *Nordhorn v. Ladish Co., Inc.*, 9 F.3d 1402, 1404 (9th Cir. 1993); *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982).

Plaintiffs contest the applicability of res judicata on the grounds that (1) they were not party to the bankruptcy proceedings, and (2) those proceedings did not concern the claims at issue

1   here. Both sets of arguments are, however, without merit.

2            1.  *Res Judicata: Privity*

3          Despite their assertion of a unity of interests with Opus and its Bankruptcy Trustee,

4   plaintiffs contend they were neither party nor privy to the bankruptcy proceedings such that res

5   judicata may bar them from asserting the present claims. While the complaint does not specify

6   what, if any, role the individual plaintiffs played in the bankruptcy proceedings, the parties do not

7   dispute that in September 2012, the U.S. Trustee appointed the Equity Committee pursuant to 11

8   U.S.C. Section 1102(a)(1) of the Bankruptcy Code to ensure representation of Opus's independent

9   interests in the bankruptcy proceedings, in light of the structural conflict implicated by KLG's role

10  as bankruptcy counsel to both Opus and TVC. *See* KLG's Request for Judicial Notice, Ex. 14,

11  Notice of Appointment.

12         Under Section 1102, an equity security holders committee is ordinarily composed of the

13  individuals, willing to serve, who hold the seven largest claims against the debtor of the kinds

14  represented by the committee. 11 U.S.C. § 1102(b)(1). Such a committee is charged by statute to

15  provide access to information for creditors who hold claims of the kind represented by the

16  committee but are not its members, and to solicit and receive comments from such creditors. *Id.* §

17  1102(a)(3). It may consult with the trustee and debtor; conduct investigations on matters relevant

18  to the case or reorganization plan; participate in court proceedings to approve or reject plans; and

19  "perform such other services as are in the interest of those represented." *Id.* § 1103(c).

20         The Equity Committee here included among its seven members the James T. Rybicki

21  Trust, an entity associated with one of the named plaintiffs in this action. It moreover retained its

22  own counsel and financial advisor, actions approved by the bankruptcy court. KLG's Request for

23  Judicial Notice Exs. 21, Order Approving Ashby & Geddes, and 22, Order Approving Conway

24  MacKenzie. Plaintiffs do not contest that the Equity Committee was served with key motions,

25  such as those for approval of the asset sale and for attorney fees, given the opportunity to consult

26  with the creditors whose interests it represented, and to lodge objections accordingly. Plaintiffs,

27  therefore, were adequately represented by the Equity Committee at every salient juncture in the

28  ORDER DENYING SPECIAL MOTION TO STRIKE AND GRANTING MOTION TO DISMISS WITH PARTIAL LEAVE TO AMEND
    CASE NO. 13-cv-03570-RS

bankruptcy proceedings.

### 2. Res Judicata: "Same Claims"

While the particular malpractice allegations now raised against KLG were not at issue before the bankruptcy court, it is nevertheless clear that considering them here would undermine that court's decisions, such that res judicata must apply. In the Ninth Circuit, whether a suit concerns the "same claim" as prior litigation depends on (1) whether prosecution of the present action would destroy or impair rights or interests established in the prior judgment; (2) whether the two actions concern substantially the same evidence; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transaction or nucleus of operative facts. *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980).

Plaintiffs attempt to compartmentalize certain of KLG's tortious conduct as "pre-bankruptcy," and thus outside the scope of actions sanctioned by the bankrtupcy court to which res judicata applies. Such an attempted distinction lacks any factual support on the face of the complaint. Indeed, as the complaint avers, plaintiffs' breach of duty and attorney malpractice allegations all stem from the firm's averred conduct to "develop a plan to file Chapter 11 bankruptcy on behalf of both TVC and Opus," and positions it took as counsel to TVC and Opus throughout the ensuing bankruptcy proceedings. *See* Compl. ¶¶ 75-85. That KLG may have been aware of a dispute between TVC and Opus prior to filing for their respective bankruptcies does not, without more, itself amount to actionable conduct.

Consideration of the factors described above reflects that the bankruptcy proceedings concerned the same claims as those raised here. With regard to the first factor, KLG's right to collect the fee award approved by the bankruptcy court would certainly be impaired if plaintiffs' tort claims are permitted to advance. As for the second factor, the prior and present claims do not concern drastically different evidence. Although plaintiffs attempt to characterize evidence attendant to fee motions narrowly, as merely "evidence related to work performed, hourly rates, etc.," distinct from evidence of malpractice, all such evidence is pertinent to fee motions in bankruptcy court.

Indeed, attorney fee motions are considered by bankruptcy courts pursuant to 11 U.S.C. § 330, under which the bankruptcy judge should consider "all relevant factors"–including whether the services rendered were "necessary" or "beneficial" to completion of the case. *Id.* § 330(a)(3)(C). The statute expressly provides that compensation should not be allowed for services that were not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case." *Id.* § 330(a)(4)(A)(ii). It is, therefore, routine for courts to consider the quality of services provided by a bankruptcy attorney, including whether the attorney committed any acts of malpractice. *In re Shaw*, 2000 WL 1897344, at *6 (N.D. Cal. Dec. 22, 2000). The allegations plaintiffs now state against KLG were therefore germane to the fee determination proceedings, and should have been raised at that juncture.

Whether or not KLG's competence as counsel to Opus was in fact litigated in the prior action is, therefore, irrelevant. Rather, applicability of res judicata hinges on whether KLG has shown that the present claims arise from a nucleus of operative facts common to prior claims, such that they *should have been raised* during the prior proceeding. *See Epstein v. Visher*, 1997 WL 231108, at *5 (N.D. Cal. Mar. 24, 1997); *In re Coburn*, 2006 WL 2010852, at *2-3 (Bankr. N.D. Cal. July 6, 2006). It is without dispute that the bankruptcy court, at parties' prompting, issued express orders approving KLG's retention as counsel to both TVC and Opus, and expressly assented to the proposed asset sale, declaring it the product of good faith negotiations for fair consideration. Perhaps most importantly, the bankruptcy court's fee award concerned KLG's performance as counsel to Opus and TVC throughout the bankruptcy proceedings—including positions it took, advice it dispensed, and the asset sale it arranged. Res judicata therefore applies to bar plaintiffs' breach of duty and malpractice allegations against KLG.

### *3. The Claim Assignment Agreement Between the Trustee and Plaintiffs*

Even were plaintiffs' malpractice allegations outside the reach of res judicata, plaintiffs would be barred from raising them because these claims belong to the Opus Trustee, custodian of the Opus partnership's interests, as distinct from plaintiffs, a class of individual investors in Opus. Plaintiffs do not suggest KLG represented them as individuals, in addition to its role as counsel to

Opus, such that it owed them each duties concurrent with the attorney-client relationship. *See* Cal. Rule of Prof. Conduct § 3-600(E); *Responsible Citizens v. Superior Court*, 16 Cal. App. 4th 1717, 1731-32 (1993) (describing the distinction between representing a corporation at large and representing its individual partners).  Rather, plaintiffs take the position that they received the right to recover against KLG pursuant to the "allocation agreement" they entered into with the Opus Trustee, purportedly assigning plaintiffs any claims against KLG that the Trustee could otherwise itself advance.

It is well settled under California law, however, that a client may not assign his legal malpractice claims against his former attorneys.  *Kracht v. Perrin*, 219 Cal. App. 3d 1019, 1023 (1990); *Goodley v. Wank & Wank, Inc.*, 62 Cal. App. 389, 393-95 (1976).  Courts have reasoned that as a matter of public policy, malpractice claims should not be assignable because the attorney-client relationship is of a highly personal and confidential quality that involves an "undivided" duty of loyalty to the client.  *Goodley*, 62 Cal. App. At 397.  Allowing assignment of such claims would commoditize them and force attorneys to defend themselves against potential strangers, promoting meritless suits and increasing the burden of malpractice litigation on the legal system. *Id.*  An attorney's fear that a current adversary could later wield assigned claims against that attorney could discourage zealous representation and undermine clients' trust.  *Jackson v. Rogers & Wells*, 210 Cal. App. 3d 336, 347-48 (1989).  Allowing assignment could, in addition, cause an attorney whose original client was satisfied with the representation nevertheless to face suit, requiring a legal defense while maintaining simultaneously the attorney-client privilege with the client.  *Kracht*, 219 Cal. App. 3d at 1024.

The California Court of Appeal in *Baum v. Duckor, Spradling & Metzger*, faced with similar facts, declared expressly that the principles set forth in *Goodley*, *Kracht*, and *Jackson* should extend to a bankruptcy trustee's purported assignment to creditors of a debtor corporation's potential legal malpractice claims against its former counsel.  72 Cal. App. 4th 54, 69-70 (1999) (finding that "a legal malpractice claim belonging to the bankruptcy estate of a corporation may not be assigned by the trustee of that estate to a creditor of the corporation or any other person").

1   Plaintiffs' argument that the present case is exempt from such policy concerns because they share

2   interests identical to those of the Opus Trustee is without supporting authority or apparent logic.

3   Plaintiffs point to no reasoning in *Baum* or subsequent cases in the bankruptcy context to suggest

4   that an identity of interests between trustee and assignee introduces materially different

5   circumstances.  Moreover, plaintiffs have acknowledged that the Opus Trustee represents the

6   interests of creditors outside plaintiffs' putative class, precluding a total unity of interests between

7   plaintiffs and the Trustee.

8       Plaintiffs' only rejoinder relies on two inapposite cases that declined to extend *Goodley* in

9   the insurance context.  *Musser v. Provencher*, 28 Cal. 4th 274 (2002) allowed an attorney's insurer

10  to assume his claims against his co-defense counsel, while *White Mountains Reinsurance*

11  *Company of America v. Borton Petrini LLP*, 221 Cal. App. 4th 890 (2013) permitted an auto

12  insurer's successor-in-interest to bring a malpractice action against a law firm the insurer had

13  hired.  *Baum*, however, clearly distinguished bankruptcy from the insurance context, explaining

14  that while the "special nature" of legal services exempts legal malpractice claims from

15  assignability, "[t]he procurement of insurance through a broker or agent is a commercial

16  transaction with intended beneficiaries beyond the client alone." *Baum*, 72 Cal. App. 4th at 70

17  (internal citation and quotation marks omitted).  The purported allocation agreement between

18  plaintiffs and the Trustee does not, therefore, perfect plaintiffs' standing to raise these claims.[3]

19      Res judicata and the invalidity of the purported claim assignment both bar plaintiffs from

20  raising breach of duty and malpractice claims against KLG at this juncture, obviating the need to

---

[3] Having contemplated such a scenario, plaintiffs offer that the Opus Trustee has agreed to join their action as a co-plaintiff and assign all benefits and proceeds to plaintiffs.  Courts in other states have recognized that assignment of damages is a thinly veiled method to accomplish indirectly what a bar to claim assignment prohibits directly.  *See Gurski v. Rosenblum and Filan*, 276 Conn. 257, 284 (2005); *Greene v. Leasing Assoc., Inc.,* 935 So. 2d 21, 24-25 (Fl. Ct. App. 2006) (citing Florida courts' strong presumption against assignment of malpractice claims).  Given that the Opus Trustee would lack any real stake in the litigation under such an arrangement, and may be barred by California's one-year statute of limitations on malpractice actions, any attempt to allege the present and/or additional claims with the Trustee as a co-plaintiff would face at the very least considerable scrutiny.

ORDER DENYING SPECIAL MOTION TO STRIKE AND GRANTING MOTION TO DISMISS WITH PARTIAL LEAVE TO AMEND
CASE NO. 13-cv-03570-RS
14

reach KLG's contention that these claims are, in addition, barred by collateral estoppel.[4]  KLG's motion to dismiss as to these claims is therefore granted without leave to amend.

### C. Aiding and Abetting Breach of Fiduciary Duty

Throughout its representation of Opus, plaintiffs argue KLG took numerous steps to advocate for TVC's interests while subverting those of Opus.  In addition, KLG provided Opus with sub-par advice and false assurances that, plaintiffs aver, led Opus into an unfavorable bankruptcy from which TVC benefited.  Accordingly, plaintiffs' fifth claim alleges that KLG thereby "conspired with" and "aid[ed] and abet[ed]" the TVC defendants in breaching their fiduciary duties as directors and officers of Opus's managing partner.[5]  Compl. ¶ 85.

While a conspiracy-based theory of aiding and abetting breach of fiduciary duty requires the person providing assistance to owe a duty to the victim—a factor, as discussed above, not present here—a second theory requires only that the aider and abettor makes a "conscious decision" to participate in activity he or she knows is tortious, "for the purpose of assisting another in performing a wrongful act."  *American Master Lease, LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1475-76 (2014).  Accordingly, liability is properly imposed "on one who knows that another's conduct constitutes a breach of duty and substantially assists or encourages the breach."  *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1133 (C.D. Cal. 2003).

It is not spelled out in the face of the complaint whether or not KLG was aware of any

---

[4] While the question of collateral estoppel need not be reached, the record does not support a finding at this juncture that plaintiffs' claims were "actually litigated" in the bankruptcy court and are thereby barred from consideration here.  *See Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996).  Although that court may have approved KLG's dual representation of TVC and Opus, the asset sale, and KLG's requests for fees, plaintiffs do not demonstrate that litigation preceding those dispositions placed KLG in a position to defend its conduct against allegations of the type raised here.  KLG's additional contention, that the automatic stay issued in the bankruptcy court voids plaintiffs' claims, likewise need not be reached.

[5] KLG contends these allegations, like those of malpractice, are foreclosed by res judicata.  Whether KLG aided and abetted tortious acts against Opus is, however, a question distinct from whether KLG fulfilled its contractually undertaken duty to provide Opus with adequate legal services.  Favorably construing plaintiffs' averments, KLG's objectionable conduct underpinning this claim fell beyond the realm of conduct appropriate for the bankruptcy court's review when it approved KLG's fee motions, and is therefore appropriate for consideration here.

effort on the part of TVC's officers and directors to breach duties owed to Opus, such that it purposefully decided to participate. Plaintiffs do, however, aver specific acts that, if taken pursuant to a conscious decision to assist the TVC defendants with tortious acts against Opus, could support finding for plaintiffs on this claim. For example, in its negotiations with lender the Gamble Trust, plaintiffs aver KLG "increased Opus's partner liability to the detriment of the Opus partners and to the benefit of TVC and defendant Gamble." Compl. ¶ 81. Plaintiffs further charge that KLG, "while purporting to represent the Opus partnership, advocated for TVC's position that the certain questionable receivables were valid," suggesting KLG perhaps knew this stance was dubious but took it due to ulterior motives. *Id.* ¶ 83.

Because this claim as currently pleaded sounds in fraud, it is subject to Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba–Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Here, plaintiffs fail to plead facts that, if proven, would demonstrate when KLG became aware of TVC's tortious intent and how it decided to participate; in what manner KLG's actions purposefully furthered TVC's breach of duty; and other specifics that would satisfy Rule 9(b)'s heightened pleading standard. Plaintiffs' claim against KLG for aiding and abetting the TVC defendants in breaching their fiduciary duties to Opus is, therefore, dismissed with leave to amend.

### V.   CONCLUSION

For the aforementioned reasons, KLG's special motion to strike is denied. Its motion to dismiss the fifth claim in plaintiffs' complaint is granted as to plaintiffs' allegations of malpractice without leave to amend, and with leave on the claim that KLG aided and abetted breach of fiduciary duty. Should plaintiffs elect to file an amended complaint, they must do so within thirty

(30) days of the date of this order.

**IT IS SO ORDERED**.

Dated: June 12, 2015

_____
RICHARD SEEBORG
United States District Judge

United States District Court
Northern District of California

ORDER DENYING SPECIAL MOTION TO STRIKE AND GRANTING MOTION TO DISMISS WITH PARTIAL LEAVE TO AMEND
CASE NO. 13-cv-03570-RS
17