UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN SIEGAL, et al.,

       Plaintiffs,

   v.

G. THOMAS GAMBLE, et al.,

       Defendants.

Case No.  13-cv-03570-RS

**ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND**

## I.    INTRODUCTION

When their investments in the oil drilling and exploration limited partnership TVC Opus I Drilling Program, LP ("Opus") became virtually worthless, plaintiffs filed this putative securities fraud class action alleging (1) violations of California's Corporations Code Sections 25401, 25501, 25501.5, 25504, and 25504.1; (2) breach of fiduciary duty; (3) aiding and abetting breach of fiduciary duty; and (4) negligent misrepresentation, against former directors and officers of Opus's general managing partner, the Tri-Valley Corporation ("TVC"), and broker-dealers whom, plaintiffs aver, are responsible for the sales of substantially all of the securities at issue.  The plaintiffs also charged Opus's law firm, K&L Gates, LLP,[1] with a separate fifth claim alleging attorney malpractice, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty.

The two named purveyors of Opus securities, Behrooz Sarafraz and Alfred Lopez, via

---

[1] The suit initially also named former K&L Gates attorneys Charles Dale, III and Joshua Lane. These parties were dismissed from the action on July 29, 2015.

United States District Court
Northern District of California

1    separate motions, now each request dismissal of plaintiffs' four claims against them on the

2    grounds that plaintiffs fail to state a cognizable claim.[2]  Plaintiffs aver Sarafraz made sales of

3    Opus securities both directly from Opus to investors, as well as indirectly, through entities vaguely

4    referred to as "aggregators."  Lopez, plaintiffs allege on the other hand, only engaged in the latter,

5    indirect form of sales.  Neither, according to the complaint, was licensed to act as broker-dealers,

6    and both defrauded plaintiffs into purchasing Opus shares with material misstatements and

7    omissions.  Unbeknownst to plaintiffs, each received an eighteen percent finders' fee commission

8    per sale.  Because plaintiffs fail to plead with even remotely sufficient specificity any wrongdoing

9    on either Lopez or Sarafraz's parts which meets all elements of any of their stated claims, the

10   motions brought by both individual defendants are granted with leave to amend.

## II.    BACKGROUND[3]

12        The series of events leading up to this action is substantially set forth in this Court's order

13   of June 12, 2015.  TVC, an oil and natural gas development company, in 2002 formed Opus as a

14   limited partnership to obtain oil and gas leases for TVC's exploration and management.  TVC

15   assumed the role of Opus's general managing partner, and from 2002 through 2010 sold $97

16   million in Opus securities to individual investors—$94.7 million of which was raised through

17   sales by unlicensed brokers, agents, finders, or broker-dealers, as they are interchangeably referred

18   to throughout the complaint.  Included within their number are defendants Lopez and Sarafraz.

19        At the hands of TVC's officers and directors (the "O&D defendants"), Opus funds were

20   inappropriately siphoned into TVC.  Both entities filed for bankruptcy in 2012 represented by

21   K&L Gates.  The asset sales and dissolution of TVC and Opus that followed were orchestrated by

22   the O&D defendants in concert with K&L Gates, to the Opus partnership's detriment and TVC's

23

24   [2] Sarafraz, in pro per, also filed a "notice of joinder" of both Lopez's motion to dismiss and K&L

25   Gates' special motion to strike on anti-SLAPP grounds.  Sarafraz does not demonstrate the
     relevance of this filing; he is ineligible to raise an anti-SLAPP claim, and filed his own motion to

26   dismiss.  His notice of joinder will therefore be disregarded.

27   [3] The factual background herein is based on averments in the initial complaint, which must be
     taken as true for purposes of a motion to dismiss.

28                                                      ORDER GRANTING MOTIONS TO DISMISS
                                                        CASE NO. 13-cv-03570-RS

United States District Court
Northern District of California

favor.  Plaintiffs thus charged the O&D defendants with violations of the same provisions at issue here.  They also averred that K&L Gates represented both Opus and TVC despite its knowledge of their material conflicts of interest, and aided the O&D defendants in breaching their fiduciary duties to Opus.

The O&D defendants settled with plaintiffs in early 2014.  A motion for provisional class certification and preliminary settlement approval, filed in January 2015, is currently pending.  K&L Gates both filed objections to certain terms of the settlement and moved to dismiss and strike the allegations against it.  This Court's June 12, 2015 order denied K&L Gates' motion to strike, and granted its motion to dismiss with partial leave to amend only as to plaintiffs' claim that K&L Gates aided and abetted TVC in breaching its fiduciary duties to plaintiffs.  Plaintiffs accordingly filed a First Amended Complaint ("FAC") on July 27, 2015.[4]

At the crux of the wrongs plaintiffs allegedly suffered are the fraudulent misrepresentations that duped them into investing in Opus in the first instance.  Through agents working on Opus's behalf, including Lopez and Sarafraz, potential investors received private placement memoranda, written presentations, form emails, and oral sales pitches that materially misstated Opus's financial assets, prospects, and risks.  Plaintiffs were falsely led to believe, for example, that Opus and TVC were sole owners of purportedly high-yield oil and gas leases, when in fact title to such tracts were in dispute and the drilling prospects were nowhere near as favorable as defendants made them out to be.  *See* Compl. ¶¶ 46-47.  Left out of these materials, moreover, were that Opus's brokers were unlicensed and receiving sales commissions; TVC was insolvent; and

---

[4] Lopez and Sarafraz direct their motions, originally filed in March and April of 2015, at plaintiffs' initial complaint, filed in San Francisco Superior Court on June 27, 2013 and removed to federal court that August.  The FAC is consistent with the initial complaint, but does incorporate certain new details pertaining to Lopez and Sarafraz.  *See, e.g.*, FAC ¶ 61, averring that TVC knew Lopez and Sarafraz were "not registered" broker-dealers despite their engagement in conduct for which registration is required; and that these "finders" of Opus received $11.3 million in commissions.  These new averments neither undercut nor bolster the parties' arguments as to the presently considered motions, however, and are thus not material to this disposition.  Thus, while recognizing that the FAC is technically the operative complaint, for ease of reference, this order cites only to plaintiffs' initial complaint.

United States District Court
Northern District of California

1  Sarafraz had been investigated by the SEC leading to his consent to a judgment that he had

2  violated securities laws.[5]

3       These falsehoods and omissions garnered Opus investments from about 300 "direct"

4  investor plaintiffs, who "purchased Opus units directly from Opus," Compl. ¶ 10, and 700

5  "indirect" investor plaintiffs, who purchased from "aggregators" "sponsored" by Opus, such as

6  Lopez, in California and elsewhere. *Id.* ¶ 34.  According to the complaint, "aggregators" are

7  partnerships or limited liability companies created for the purpose of marshaling investor funds

8  primarily to purchase Opus units, or whose purpose was to raise funds for Opus. *Id.* ¶¶ 1, 34.

9  Defendants employed aggregators as a "sham" to avoid restrictions on the unlawful sale of

10 unregistered securities. *Id.* ¶ 4.  Sarafraz sold Opus shares to both the direct and indirect purchaser

11 subclasses.

12      While he maintains that he did not participate in sales via an aggregator, Sarafraz appears

13 implicitly to concede having made direct sales by noting in his motion: "All his [Sarafraz's]

14 investors were wealthy enough to afford the $1,000,000 minimum [direct investment in Opus].

15 They did not need the aggregators because they could afford to buy and hold their shares directly."

16 Sarafraz Mot. to Dismiss, p. 13.  Lopez, by contrast, is averred to have sold only to indirect

17 purchasers.  Lopez and Sarafraz each move to dismiss all claims against them pursuant to Federal

18 Rules of Civil Procedure 12(b)(6) and 9(b).

19           **III.    LEGAL STANDARD**

20      A complaint must contain "a short and plain statement of the claim showing that the

21 pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not

22 required," a complaint must have sufficient factual allegations to "state a claim to relief that is

23

24 [5] Plaintiffs request that judicial notice be taken pursuant to Federal Rule of Evidence 201 of an order in Case No. 14-cv-2252-EDL in this district entering final judgment against Sarafraz.  The
25 order reflects that he consented to a judgment holding him liable for disgorgement of ill-gotten gains and civil penalties totaling $22,532,318.87, to be paid to the Securities and Exchange
26 Commission.  Documents that form part of the public record of prior court proceedings, including judicial opinions, are proper subjects of judicial notice and plaintiffs' request therefore will be
27 granted.  *See Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002).

28

United States District Court
Northern District of California

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the nonmoving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim.*" Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

In addition, in actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Under Rule 9(b), falsity must be pleaded with specificity, and aver the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted).

The allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and quotation marks omitted). Plaintiffs must do more than

United States District Court
Northern District of California

simply allege elements necessary to identify the transaction; they must also explain why the disputed statement was misleading or false when it was made. *Yourish v. California Amplifier*, 191 F.3d 983, 992–93 (9th Cir. 1999).

## IV.     DISCUSSION

A. <u>Claim One: California Corporations Code Violations</u>

The complaint broadly asserts that Lopez and Sarafraz each violated Corporations Code sections 25401, 25501, 25501.5, 25504, and 25504.1 when they sold plaintiffs Opus securities on the basis of misrepresentations and without broker-dealer licenses.  As noted above, these sales were either made directly to plaintiff investors, or indirectly through so-called aggregator funds. Sections 25401 and 25501 establish liability for misrepresentations made by selling entities directly to purchasers ("primary liability"), while sections 25504 and 25504.1 each prohibit conduct that aids or assists such conduct ("secondary liability").  Section 25501.5 allows persons who purchase securities from entities not properly licensed as broker-dealers to sue for rescission or damages.

### 1.  *Sections 25401 and 25501: "Primary" Liability*

Section 25401 prohibits misrepresentations in connection with the sale of securities.  It provides that persons may not "offer or sell a security in this state or buy or offer to buy a security in this state by means of any oral or written communication," including material "untrue statement[s]" as well as material omissions.  Section 25501 is a corresponding provision that establishes a civil remedy for damages and rescission based on section 25401 liability.  *See California Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 109 (2001).  According to section 25501, a violator of section 25401 is liable only "to the person who purchases a security" from him or her or "sells a security" to him or her, unless the plaintiff knew the truth concerning the falsified or omitted facts, or the defendant exercised reasonable care and did not know material facts were falsified or omitted.  The conduct proscribed by section 25501 is often referred to as "primary" or "direct" because it applies to entities directly responsible for transacting with plaintiffs for the falsely represented securities.  *AREI II Cases*, 216 Cal. App. 4th 1004, 1013

1    (2013).

2        California courts have held that section 25401 liability thus extends only to the "actual

3    seller" with whom the purchaser has privity.  In *Apollo Capital Fund, LLC v. Roth Capital*

4    *Partners, LLC*, for example, the court found the defendant, a securities "placement agent"

5    employed by the company who issued the securities, not liable because the securities were

6    transferred from the issuing company itself, not the defendant; the issuing entity was therefore

7    deemed the "actual seller" with whom the plaintiff had privity of contract.  158 Cal. App. 4th 226,

8    253 (2007) (opining, furthermore, that section 25401's narrow form of liability is reasonable

9    because sections 25504 and 25504.1, addressed herein below, provide for the extent to which

10   "persons other than the vendor" who aid in the subject transactions may be held liable); *see also*

11   *SEC v. Seaboard*, 677 F.2d 1289, 1296 (9th Cir. 1982) (construing section 25501 to limit section

12   25504 liability to the "literal seller," and affirming the lower court's finding that the issuing

13   entity's attorney was not liable under section 25401).

14        2.   *Sections 25504 and 25504.1: "Secondary" Liability*

15        Section 25504 extends liability to certain agents, associates, and affiliates who help or

16   enable a primary section 25401 violator, including persons who "control" the primary violator as

17   well as broker-dealers and employees of the primary violator who materially aid in the transaction

18   constituting the violation.  Such "secondary" liability is also enabled under section 25504.1, which

19   provides in relevant part that "[a]ny person who materially assists in any violation of Section . . .

20   25401 . . . with intent to deceive or defraud, is jointly and severally liable with any other person

21   liable under this chapter for such violation."  Section 25504.1 imposes what is sometimes referred

22   to as aider and abettor liability.  *See* 1 Marsh & Volk, Practice Under the Cal. Securities Laws

23   (rev. ed. 2012) § 14.03[4][d], p. 14–26.

24        In order to prevail under either section, plaintiffs must allege a primary violation of

25   sections 25401 and 25501.  *See Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1453 (S.D. Cal. 1988)

26   (noting that the causes of action under sections 25504 and 25504.1 are derived from section

27   25401).  As long as liability of a primary violator under section 25401 is established with the

28

United States District Court
Northern District of California

privity section 25501 requires, privity of plaintiffs with secondary violators need not be shown in order to state a claim under sections 25504 and 25504.1.  *Moss v. Kroner*, 197 Cal. App. 4th 860, 875 (2011).

> 3.  *Section 25501.5: Unlicensed Broker-Dealers*

Finally, section 25501.5 creates a private right of action for those who purchase securities from unlicensed broker-dealers.  It affords such purchasers the right to sue for rescission or damages where the person from whom they purchased securities was required to obtain a license under section 25200 *et seq*. but had failed to do so at the time of the transaction.

Despite the disparate elements of these five statutory provisions, the complaint does little to parse the particular acts committed respectively by Lopez and Sarafraz, whose names merely appear at various points throughout the complaint's chronicle of misrepresentations and wrongdoing attributed to the defendants at large.  Rule 8 of the Federal Rules of Civil Procedure provides that to state a claim, a pleading must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." The first part of this requirement—"a short and plain statement of the claim" —cannot be read without reference to the second part —"*showing* that the pleader is entitled to relief." The Supreme Court has made clear that while "showing" an entitlement to relief does not require "detailed factual allegations," it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [citation.] Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*.  Here, the complaint fails even to offer a recitation of the elements, let alone facts to support a theory of liability under any of these provisions.  This claim is therefore dismissed.  Plaintiffs are granted leave to amend in order to offer facts, if any exist, to demonstrate cognizable claims against Lopez and/or Sarafraz under each statutory section they elect to pursue.

> B.  <u>Claim Two: Breach of Fiduciary Duty</u>

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In order to plead a claim for breach of fiduciary duty, a plaintiff must show the existence of a fiduciary relationship, its breach, and damage caused by the breach. Sounding in fraud, this claim is subject to Rule 9(b)'s heightened pleading standards. *See Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995).[6]  As plaintiffs fail to aver facts that would support finding a fiduciary relationship with either Lopez or Sarafraz, this claim may not advance.

While neither is pleaded with even remote sufficiency, two theories of fiduciary duty seem potentially applicable to this case.  First, in California, corporate "insiders" owe a fiduciary duty to those whom they entice to buy shares in a limited partnership. *Sherman v. Lloyd*, 181 Cal. App. 3d 693, 698 (1986); *California-Calaveras Mining Co. v. Walls*, 170 Cal. 285, 293-94 (1915). While "insiders" can include the partnership's directors and officers, courts have also recognized that an "insider" may come in the form of a "broker, promoter, partner, corporate agent . . . limited partnership syndicator," or a "controlling stockholder[]." *Eisenbaum v. Western Energy Resources, Inc.*, 218 Cal. App. 3d 314, 323 (1990) (internal citations omitted).  The Supreme Court has reasoned that the duty of a corporate insider arises from (i) a relationship affording access to "inside information intended to be available only for a corporate purpose," and (ii) the "unfairness" of permitting the insider to leverage that information by selling securities without disclosure of material facts. *Chiarella v. United States*, 445 U.S. 222, 227 (1980).  The complaint declines to address Lopez and Sarafraz's relationships with Opus, the other defendants, and the plaintiffs, and thus precludes even a favorable interpretation under which either Lopez or Sarafraz

---

[6] Lopez incorrectly asserts that Delaware law should apply to plaintiffs' common law claims under California's "internal affairs" doctrine applicable to allegations against a corporation's officers and directors.  *Villari v. Mozilo*, 208 Cal. App. 4th 1470, 1477 n.8 (2012) (finding that the "internal affairs" doctrine applies to derivative actions, and citing California Corporations Code section 2116, which states "[t]he *directors* of a foreign corporation transacting intrastate business are liable to the corporation, its shareholders, creditors, receiver. . . [for] violation[s] of official duty according to any applicable laws of the state . . . of incorporation") (emphasis added); *Jackson v. Fischer*, 2013 WL 673872, at *15 (N.D. Cal. Dec. 20, 2013) ("The law of the state of incorporation governs the liabilities of directors and officers of a corporation.").  This is not a derivative action, and the complaint avers only that Lopez was involved in sales of Opus securities in California and elsewhere—not that Lopez is an officer or director of Opus.  Absent any valid justification to apply the law of another state, California law applies here.

could plausibly be construed as "insiders."

A second theory, asserted in plaintiffs' opposition, arises from the principle that brokers owe fiduciary duties to certain types of customers. Whether such a duty is present is determined by the facts of the parties' particular relationship. The two cases on which plaintiffs rely for the proposition that a duty likewise exists here, *Twomey v. Mitchum, Jones, & Templeton, Inc.*, 262 Cal. App. 2d 690, 698 (1968), and *Hobbs v. Bateman Eichler, Hill Richards, Inc.*, 164 Cal. App. 3d 174 (1985), are materially distinguishable and thus inapposite. In both instances, the plaintiff shared a financial advisory relationship with the defendant broker that significantly predated the disputed transactions. She had, moreover, ceded control and day-to-day management of her assets to the defendant broker, relied on the broker's independent judgment for substantially all of her financial decisions over a period of time, and was not even aware the broker had executed the disputed transactions. It was only upon the finding of such facts that the California court in each case recognized the presence of a fiduciary duty.

The circumstances in the present instance are in no way analogous. Plaintiffs do not aver any preexisting relationships with Sarafraz or Lopez, or their belief that these defendants were acting as their agents or advisors. *See Brown v. California Pension Administrators & Consultants, Inc.*, 45 Cal. App. 4th, 333, 348 (1996) (affirming finding of a lack of fiduciary duty where the parties' relationship was not "expansive" and, rather, encompassed "limited responsibilities" "confined to respondents' performance of transactions selected by their customers"; respondents thus had absolutely "no responsibility to advise appellants with regard to the wisdom of their investment choices," or to notify them of the risk involved with the disputed investments). Under its most favorable construction, the complaint merely suggests that as salespersons, Lopez and Sarafraz employed deceit to entice plaintiffs to invest in Opus. It is thus a stretch even to construe them as plaintiffs' brokers; if the complaint pinpoints Sarafraz and Lopez as any party's agents, it would be Opus's. Plaintiffs' second claim for breach of fiduciary duty must therefore be dismissed with leave to amend, to the extent plaintiffs can offer particularized facts demonstrating

United States District Court
Northern District of California

1    that Lopez and/or Sarafraz owed a fiduciary duty to the direct and/or indirect purchaser plaintiffs.[7]

2        D.  Claim Three: Aiding and Abetting Breach of Fiduciary Duty

3        California law permits a claim for aiding and abetting breach of fiduciary duty to proceed

4    under either of two theories.  The first, akin to a conspiracy claim, requires that the aider and

5    abettor owe a fiduciary duty to the plaintiff, and have provided "substantial assistance" to the third

6    party breaching its fiduciary duty to plaintiff.  The second imposes liability where the aider and

7    abettor commits an independent tort, the result of a "conscious decision to participate in tortious

8    activity for the purpose of assisting another in performing a wrongful act."  *American Master*

9    *Lease, LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1477 (2014) (internal citations and

10   quotation marks omitted). As fraud is the gravamen of this claim, it must be pleaded to meet Rule

11   9(b)'s exacting standards.

12       This claim must be dismissed with leave to amend.  Plaintiffs neither demonstrate that

13   Lopez or Sarafraz bore a fiduciary duty, as discussed above, nor do they aver that either defendant

14   reached a "conscious decision" to lie for the purpose of advancing TVC/Opus's alleged plan to

15   defraud investors.  Should plaintiffs choose to reallege this claim in an amended complaint, they

16   must state facts that address each element of either or both theories of aider and abettor liability as

17   to each defendant named in the claim.

18       E.  Claim Four: Negligent Misrepresentation

19       To state a claim for negligent misrepresentation, a plaintiff must allege (1)

20   misrepresentation of a material fact; (2) absent reasonable grounds for believing it to be true; (3)

21   intent to induce reliance; (4) justifiable reliance by the plaintiff who is unaware the representation

22   is false; and (5) damages.  While knowledge of falsity is not required, the misrepresentation must

23

24   [7] Although the question of whether plaintiffs sufficiently aver a breach of this purported duty need
     not be reached here, it is worth noting that the complaint fails to aver to whom, when, or where
25   Sarafraz or Lopez conveyed misrepresentations regarding Opus securities.  If plaintiffs elect to
     assert an amended version of this claim, it should offer any facts of which plaintiffs are aware
26   demonstrating, with the specificity Rule 9(b) demands, the existence of the defendants' duties to
     direct and/or indirect purchasers, as well as the particular conduct by which each defendant
27   breached these duties.

28                                                              ORDER GRANTING MOTIONS TO DISMISS
                                                                CASE NO.  13-cv-03570-RS

United States District Court
Northern District of California

be affirmative; omissions or implied representations are insufficient. *Apollo Capital Fund*, 158 Cal. App. 4th at 243. Most courts in this district furthermore subject state common law negligent misrepresentation claims to the heightened pleading standards of Rule 9(b). *Jackson v. Fischer*, 2013 WL 6732872, at *17 (N.D. Cal. Dec. 20, 2013) (internal citations omitted).

As noted above, the complaint is bereft of details such as when, to whom, and where Lopez and Sarafraz each communicated misrepresentations. Nor do plaintiffs adequately address to what extent Lopez and Sarafraz lacked reasonable grounds to believe the truth of the information they allegedly conveyed, or whether they intended to induce plaintiffs' reliance. Claim four is therefore dismissed with leave to amend.

## V.     CONCLUSION

For all of the aforementioned reasons, Lopez and Sarafraz's motions to dismiss are granted, and plaintiffs are permitted leave to amend in accordance with the above discussion. Any amended complaint plaintiffs elect to file must be lodged within thirty (30) days of the date of this order. Plaintiffs are advised that such a second amended complaint should consolidate amendments reflected in the FAC with the amendments they wish to incorporate in light of this order. All defendants may thereafter direct their responses at the second amended complaint.

**IT IS SO ORDERED**.

Dated: August 10, 2015

_____
RICHARD SEEBORG
United States District Judge