UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN SIEGAL, et al.,

    Plaintiffs,

v.

G. THOMAS GAMBLE, et al.,

    Defendants.

Case No. 13-cv-03570-RS

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS THE THIRD AMENDED CORRECTED COMPLAINT**

## I.   INTRODUCTION

Plaintiff David Groblebe claims defendants Dr. Alfred Lopez and Behrooz Sarafraz duped him into investing in the Tri-Valley Corporation's ("TVC") Opus I Drilling Program, LP ("Opus"). According to Groblebe, these investments were not as good as advertised: the project was undercapitalized, TVC managed the product poorly, and the broker-dealers hired to entice people like Groblebe to invest in the program were unlicensed and paid exorbitant commissions. In other words, the investment opportunity was "all shine, and no substance."[1] Lopez and Sarafraz were among these unlicensed brokers who facilitated investment in Opus or in

---

[1] "Golden Dancer had a bright red mane, blue eyes, and she was gold all over, with purple spots. When the sun hit her stirrups, she was a dazzling sight to see. . . . I woke up in the morning and there was Golden Dancer at the foot of my bed! . . . I jumped into the saddle and started to rock— and it *broke*! It split in two! The wood was rotten, the whole thing was put together with spit and sealing wax! All shine, and no substance." Jerome Lawrence & Robert E. Lee, *Inherit the Wind* (1951).

aggregators—LLCs designed to pool investments to permit multiple investors to invest in Opus. Groblebe insists he would never have invested in Opus or an aggregator had he known certain information about the program and how TVC was managing it. He now accuses Lopez and Sarafraz of violating numerous provisions of the California Corporations Code, violating their trust, and negligently misrepresenting the financial health of Opus.

This is not Groblebe's first attempt to plead claims against Lopez and Sarafraz; it is their third. Once again, he has failed to include the who, what, where, when, and how that establish Lopez and Sarafraz engaged in fraudulent conduct. That Groblebe has not met his pleading burden under Federal Rule of Civil Procedure 9(b) after receiving three opportunities to do so suggests he cannot. The third amended class complaint ("TACC") must therefore be dismissed without leave to amend.

## II.   FACTS AND PROCEDURAL HISTORY

TVC is an oil and gas development company that, in 2002, created Opus, a limited liability partnership. Opus's intended purpose was to acquire oil and gas leases for TVC's exploration and management. TVC assumed the role of Opus's general managing partner, and from 2002 to 2010, orchestrated Opus's sale of approximately $97 million in securities to nearly a thousand individual investors.

The crux of plaintiffs' claims is that defendants misrepresented the state of Opus's financial health and duped them into investing in a failing corporation. Lopez, Sarafraz, and Opus's other agents sent potential investors private placement memoranda, emails, mailings, and oral communications. According to the TACC, these communications omitted critical facts about Opus's financial health and business operations. Opus did not disclose, for example, that TVC was insolvent, that Opus employed unregistered broker-dealers, that finders received 18% commissions, or that the SEC had investigated Sarafraz. Ignorant of these facts, plaintiffs purchased Opus units directly from Opus or indirectly from Opus aggregators.

Aggregators were limited liability corporations created with the sole purpose "to pool investor funds to purchase" Opus units, which required a minimum $1 million investment. TACC

¶ 1. When an investor could not make this large payment, Opus agents referred the investors to the aggregators—a process that was "facilitated by, and effectuated through unlicensed brokers," including Lopez and Sarafraz. *Id.* Aggregators and those who managed them used the same promotional materials Opus used to entice direct investments. TACC ¶ 51. Opus's indirect investors therefore purchased interests in these limited liability corporations, which held Opus securities.

In July 2008, Sarafraz sold to Groblebe a direct investment. In an email to Groblebe, Sarafraz wrote:

> I have now already made the changes to your Opus-1 Master-List account, to reflect that you will have exactly $450,000 directly invested in TIV. In addition, I have request [sic] TIV to issue to you a certificate for 10,000 shares, which will become Free-trading in 180-days after TIV receives your check on July 22. I have made an official note that this Agreement is Dated: Saturday, July 19.[2]

TACC ¶ 42b. In addition, Sarafraz instructed "Groblebe to write checks for $142,000 and $60,000." *Id.* At the close of the email and instructions, Sarafraz congratulated Groblebe on "successfully enhancing [his] holding at this highly beneficial point in our growing Opus and TIV projects!" *Id.*

Lopez was the manager of the aggregator Opus Capital Management, LLC, which opened its doors in 2002 and operated "throughout the period that indirect interests were being offered" (from 2002 to 2010). TACC ¶ 42c. Opus Capital Management disseminated brochures advertising a "big, bold, risk mitigated, high upside, tax advantaged opportunity" "mostly in California's 'oily' south San Joaquin Valley."[3] *Id.* Tempted by this offer, in September 2007, Groblebe made a $136,500 investment in the program and paid those funds to Opus Capital Management.

Plaintiffs suggest Lopez and Sarafraz worked in concert to bring investors to Opus and to

---

[2] The TACC does not define the term "TIV."

[3] The TACC does not specify whether this investment opportunity was investment in the Opus drilling program.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS THE TACC
CASE NO. 13-cv-03570-RS

3

Opus Capital Management. Throughout 2008, they told investors that the two were good friends. Sarafraz allegedly touted Lopez's skill by telling investors that Lopez had helped people make investments that were "HUGE WINNERS." *Id.* Moreover, Lopez allegedly "allowed Sarafraz to tell investors" in emails and letters that Lopez's "wealthy friend with expertise in oil and gas investing" had investigated and conducted due diligence in the Opus oil fields in California. *Id.* Sarafraz told investors this friend had estimated conservatively that there were 42 million barrels of oil on site. Groblebe claims Lopez and Sarafraz were in communication with Opus's management, and therefore knew these representations were false.

Lopez and Sarafraz previously moved successfully to dismiss the plaintiffs' First Amended Class Action Complaint ("FACC"). Plaintiffs were granted leave to amend, which they elected to do. In 2014, the O&D defendants settled with plaintiffs who sought preliminary approval of the class settlement in this court. Because a similar motion was pending in the Bankruptcy Court for the District of Delaware, the motion was denied without prejudice.

Lopez and Sarafraz[4] renewed their efforts to dismiss the claims against them. K&L Gates ("KLG"), the law firm that represented Opus and TVC during the bankruptcy proceedings, filed a special motion to strike the remaining claim against it. Both motions were successful. Only Groblebe was granted leave to amend his complaint and to attempt to cure the defects in his claims against Lopez and Sarafraz. He elected to file the TACC. After resolution of the motion to dismiss and special motion to strike, plaintiffs renewed their motion for preliminary approval of the class settlement with the officer and director defendants ("O&D defendants"). Before the preliminary approval hearing, plaintiffs and KLG reached a settlement with respect to the attorney's fees KLG would receive as a result of its successful special motion to strike. Thus, Groblebe's only remaining claims are those against Lopez and Sarafraz.

### III. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the

---

[4] Sarafraz did not file his own motion to dismiss and, instead, elected to join Lopez's motion.

claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  "[D]etailed factual allegations are not required," but a complaint must provide sufficient factual averments "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).  In addition, "in allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud and mistake." Fed. R. Civ. P. 9(b).  To satisfy this requirement, a plaintiff must plead "the who, what, when, where, and how that would suggest fraud." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted).  "A plaintiff must set forth *more* than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and alteration omitted).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in the complaint.  Dismissal is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint in whole or in part is subject to dismissal if it lacks a cognizable legal theory or the complaint does not include sufficient facts to support a plausible claim under a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).  When plaintiffs have failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

IV.  DISCUSSION

A.  Statute of Limitations

Lopez and Sarafraz contend statutes of limitations bar all of Groblebe's claims against them. Section 25506(b) of the California Corporations Code requires a claimant to file an action for violations of sections 25500, 25501, or 25502 "before the expiration of five years after the act or transaction constituting the violation or the expiration of two years after the discovery by the plaintiff[s] of the facts constituting the violation, whichever shall first expire." The California Corporations Code does not specify when plaintiffs must file claims for violations of section 25501.5. There are two potential applicable limitations: either two years from the date of discovery or five years after the date of the violation, *see* Cal. Corp. Code § 25506(b), or three years for "[a]n action upon a liability created by statute," Cal. Civ. Proc. § 338(a). *Jackson v. Fisher*, 931 F. Supp. 2d 1049, 1066 (N.D. Cal. 2013).

Section 338(d) governs all claims for which the "gravamen of the complaint is that the defendant's acts constituted actual or constructive fraud" even when the plaintiffs label their claims differently. *See Thomson v. Canyon*, 198 Cal. App. 4th 594, 607 (2011) (applying section 338(d) to a claim for breach of fiduciary duty). Thus, because Groblebe's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and negligent misrepresentation sound in fraud, section 338(d)'s statute of limitations applies to all three claims. Under section 338(d) plaintiffs must file actions within three years of discovery "of the facts constituting the fraud or mistake."

The discovery rule delays accrual of a cause of action until a plaintiff has "actual knowledge" of the claim or "knowledge that could reasonably be discovered through investigation of sources open to her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988). When plaintiffs rely on the discovery rule, they "must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethico Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005). To secure dismissal of Groblebe's claims, Lopez and Sarafraz bear the burden of demonstrating the facts presented in the TACC bar

Groblebe's claims and that resolution of this issue is appropriate at this stage of the litigation. *See Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1217 (N.D. Cal. 2014) (noting defendants must prove a plaintiff's claims are barred by the relevant statute of limitations because such a claim is an affirmative defense).

According to the TACC, Groblebe invested in Opus Capital Management in September 2007 at Lopez's urging. He also invested in "TIV" in July 2008 with Sarafraz's help. Groblebe did not file claims against Sarafraz or Lopez until June 27, 2013. Thus, all claims against Lopez are barred by the applicable statute of limitations unless Groblebe establishes he did not discover the alleged fraud until later. In contrast, his claims against Sarafraz subject to the five-year statute of limitation are timely because they accrued after June 27, 2008, whereas the claims governed by a three-year statute of limitations are not unless he discovered those violations at some later date.

Groblebe contends the TACC provides sufficient information about when he and other direct and indirect investors became aware of defendants' fraudulent conduct: when they received the May 2012 Opus I Drilling Program newsletter, which disclosed information about Opus's undercapitalization and high finder's fees. *See* TACC ¶ 81. If Groblebe first discovered his claims against Lopez and Sarafraz at that time, then his claims are timely.

In response, Lopez and Sarafraz insist Groblebe and the other investors cannot invoke the discovery rule to save their claims because the private placement memorandum disclosed the fact Opus paid broker-dealers finder's fees. These memoranda, they argue, notified Groblebe of the need to investigate the propriety of such fees and the amount paid.

At this stage of the litigation, however, it is not appropriate to conclude once and for all whether Groblebe and the other investors had sufficient information at their disposal to prompt them to investigate the propriety of Opus's actions. There is no record to examine to determine whether a reasonable person would believe payment of any finder's fee was illegal or inappropriate. Nor is there anything in the private placement memorandum disclosing the exact percentage each finder was to be paid—the very information Groblebe contends was fraudulently omitted. Accordingly, there is sufficient information in the TACC plausibly to conclude Groblebe

first received sufficient information to press his claims against Lopez and Sarafraz in May 2012, and therefore his claims may not be dismissed on that basis at this time.

### B. Claim 1: "Primary" Liability for Misrepresentations in Connection with Security Sales, Cal. Corp. Code §§ 25401, 25501

Groblebe contends Lopez and Sarafraz, sold interests in the aggregators by using marketing brochures that omitted material information and made materially false statements about Opus's business operations and financial health. Throughout this litigation, Groblebe has insisted he need not plead his claims with the level of particularity Federal Rule of Civil Procedure 9(b) requires. Even when fraud is not an element of the state claim asserted, if plaintiffs choose to aver that the defendant has engaged in fraudulent conduct, the complaint must satisfy Rule 9(b)'s pleading standard. *Vess*, 317 F.3d at 1103. The key is whether the averments sound in fraud—not whether fraud is an element of the claim. *See id.* at 1104 ("[A]pplication of Rule 9(b)'s heightened pleading requirements [apply] only to 'averments' in fraud supporting a claim rather than to the claim as a whole."). This rule "comports with the rule's purpose of protecting a defendant from reputational harm." *Id.* Here, although the statutory and common-law claims Groblebe advances do not require proof of fraud, he has chosen to plead his claim to suggest Lopez and Sarafraz have "engaged in fraudulent conduct" and were part of "a unified course of fraudulent conduct." *Id.* at 1103. These are serious accusations that carry significant risk of reputational harm, and therefore Groblebe must met Rule 9(b)'s exacting standard.

Section 25401 of the California Corporations Code prohibits the use of "any oral or written communication[s]," including material "untrue statement[s]" and material omissions to offer or to buy securities. Those who suffer injury due to a violation of section 25401 may turn to section 25501 of the same code for relief in the form of damages or rescission. *See Cal. Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 109 (2001) (describing the enforcement mechanisms of California's Corporate Securities Law). Only those "who purchase[] a security" from the section 25401 violator or "sell[] a security" to him or her, may recover, provided they did not know the

truth about the falsified or omitted facts at the time of sale. Cal. Corp. Code § 25501. Those who offer and sell securities are not liable if they exercised reasonable care and did not know that material facts were falsified or omitted. *Id.* The conduct section 25501 proscribes is often referred to as "primary" or "direct" liability because entities directly responsible for transacting with plaintiffs are liable for the falsely represented securities. *AREI II Cases*, 216 Cal. App. 4th 1004, 1013 (2013). Thus, liability extends to only the "actual seller" in privity with the purchaser. *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 253 (2007) (holding that a securities "placement agent" employed by the issuing company was not liable because the issuing company did not transfer the securities to the plaintiffs).

Direct liability typically extends to only the issuer of stock, not brokers or placement agents. *Apollo*, 158 Cal. App. 4th at 253 (quoting 1 Marsh & Volk, Practice Under California Securities Laws, ¶ 14.03[4] (Mathew Bender & Co. 2014 ed.)) ("[N]o occasion or justification exists . . . to impose liability based on [a participation] theory on anyone other than the actual vendor of that security under [Cal.] Corp. Code. §§ 25401 and 25502 . . . because . . . §§ 25504, 25504.1, and 25504.2 precisely set forth the extent to which persons other than the vendor may be liable.").

Although the TACC does not establish Groblebe acquired an Opus security, Groblebe has shown that he purchased a securitized interest in one of these aggregators, namely Opus Capital Management, LLC, which Lopez managed. Thus, the TACC provides sufficient information to conclude Opus Securities Management issued Groblebe securities. It does not, however, establish that Lopez is personally liable for the issuance of those securities. If anything, the TACC may state a claim against Opus Capital Management, but there is nothing in the TACC to suggest Lopez is a principal of the entity or even that there is cause to pierce the corporate veil to hold Lopez personally liable.

The facts of Sarafraz's alleged primary liability are similarly weak. The TACC lays out facts establishing that Lopez and Sarafraz worked closely together. It does not, however, establish that Sarafraz owned or managed an LLC that issued securities to Groblebe. Nor do the factual

1    averments establish that Sarafraz issued Groblebe stock. Groblebe has thus failed three times to

2    plead claims for violations of sections 25401 and 25501—a fact that suggests he cannot do so.

3    Defendants' motions to dismiss Claim 1 are granted without leave to amend.

### C. Claim 2: "Secondary" Liability for Misrepresentations in Connection with Security Sales, Cal. Corp. Code §§ 25504 and 25504.1

Liability for securities violations also extends to the primary violator's employees and to those who materially aid a primary section 25401 violator who deals in securities. Cal. Corp. Code § 25504. This means agents, associates, affiliates, and broker-dealers may be "secondarily" liable if they act with the "intent to deceive or defraud." *Id.* § 25504.1. To prevail under either section, plaintiffs must allege a primary violation of sections 25401 and 25501. *Moss v. Kroner*, 197 Cal. App. 4th 860, 875 (2011). As long as plaintiffs show they were in privity with the primary violator, as section 25401 requires, they need not show that they were in privity with the secondary violators under sections 25504 and 25504.1. *Id.* When plaintiffs seek to impose secondary liability "for selling or offering to sell a security by means of false and misleading statements . . . the complaint must include allegations demonstrating how the defendant assisted in the act of selling or offering to sell securities by means of false and misleading statements." *AREI II Cases*, 216 Cal. App. 4th at 1014-15. The acts of preparing or assisting the preparation of the offering documents, "communicating misrepresentations directly to investors," or "facilitating the act of selling or attempting to sell the securities by means of misrepresentations or omissions of material fact" are among the ways a broker may aid or abet primary violators. *Id.* at 1015. Because Groblebe has asserted Lopez and Sarafraz violated California's securities laws when they made false statements and withheld material information, the claim sounds in fraud and must comply with Rule 9(b).

Groblebe has remedied some of the past problems with his claims against Lopez for secondary liability. Specifically, he has identified the primary violators (Opus and Opus Capital Management) and those who facilitated the sale of securities (Lopez and Sarafraz). In addition, he has identified specific statements Lopez allegedly made—that the investment opportunity was big

and bold and that it involved 6 billion barrels of oil in the San Joaquin Valley. *See* TACC ¶ 42c. In addition, Lopez allegedly disseminated the same sales materials the O&D defendants used to encourage investment in Opus. Reading paragraph 42c in conjunction with paragraph 52, there is a reasonable inference that Lopez overstated the quantity of oil under Opus's control. *See,e.g.*, TACC ¶¶ 52(vii) (claiming defendants "[m]isstat[ed] Opus's prospects for achieving its growth objectives"); 52(ix) (defendants "[m]isstat[ed] that TVC and OPUS and their affiliates owned 100% of leases covering the Hansen Tract, and that such Hansen Tract contained substantial recoverable original oil in place, when in fact at all relevant times the title of TVC/OPUS to such leases was disputed by lessors"); 52(x) (defendants "[m]isstat[ed] that the Belridge Tracts contained large amounts of recoverable oil and gas"). Thus, Groblebe has sufficiently identified which of Lopez's statements were allegedly false and why they were false and why those alleged misrepresentations were material.

There remain, however, significant holes in Groblebe's factual averments: the where and the when. Specifically, he does not identify when Lopez sent him these email communications or promotional materials. Nor has he identified how he received them (e-mail, phone call, mail, brochure, personal conversation). Nor has he offered details about where the sale occurred. Despite the fact Groblebe has had three opportunities adequately to plead this claim, he has not done so. Accordingly, Claim 2 is dismissed without leave to amend.

Groblebe has similarly failed sufficiently to plead a claim for secondary liability against Sarafraz. The TACC generically accuses Sarafraz of sending misleading Opus promotional materials to investors. In addition, he supposedly told Lopez's investors that a man with experience investing in oil and gas projects cautiously predicted there were 42 million barrels at the site of the project. These statements, Groblebe claims, were false. While that may be the case, the TACC does not include any information about when Sarafraz made these statements, where he was, how he communicated them, or even to whom he made these statements. Indeed, the TACC vaguely states Sarafraz told "Lopez's investors" that the projects were "HUGE WINNERS," but it does not state explicitly that Groblebe was one of those investors. In addition, although Sarafraz

1  apparently instructed Groblebe to write checks for $142,000 and $60,000, the TACC is silent as to

2  whether those checks were delivered to Opus Capital Management, Opus, or TVC.  These vague

3  assertions still do not satisfy Rule 9(b)'s exacting standard, and thus Sarafraz's motion to dismiss

4  is granted without leave to amend.

### D. Claim 3:  Unlicensed Broker Dealers, Cal. Corp. Code § 25501.5

Section 25501.5 creates a private right of action for those who purchase securities from unlicensed broker-dealers.  Cal. Corp. Code § 25501.5.  It affords such purchasers the right to sue for rescission or damages where the person from whom they purchased securities was required to obtain a license, but failed to do so at the time of the transaction.  *Id.*  California Corporations Code § 25004 defines "broker-dealer" as "any person engaged in the business of effecting transactions in securities in this state for the account of others or for his own account."  "Any other issuer[s]" and agents who are "employee[s] of a broker-dealer or issuer" do not qualify as "broker-dealers."  *Id.* § 25004(a).  This claim does not sound in fraud, and therefore Rule 9(b) is inapplicable.

Groblebe adequately avers that Sarafraz and Lopez do not have licenses to act as broker-dealers in California.  He has further pleaded sufficient facts establishing that Sarafraz and Lopez sold him securities.  The TACC fails, however, to state a claim for violations of section 25501.5 because it does not establish that the sales of securities occurred in California.

The California Corporation Code defines "broker-dealer" as "any person engaged in the business of effecting transactions in securities *in this state.*"  Cal. Corp. Code § 25004 (emphasis added).  The TACC—like the FACC and SACC—does not provide any factual information establishing that the sale took place in California.  Groblebe attempts to circumvent this critical omission by arguing that California has a strong interest in this transaction.  While that may be so, whether a claim for relief exists under section 25501.5 does not depend on whether California's interest in providing a remedy is strong; it depends on whether the broker-dealer is dealing in California.  The authorities he cites do not provide otherwise.  *See Kasky v. Nike, Inc.*, 27 Cal. 4th (2002) (considering allegedly false statements about a company's labor practices are commercial

or non-commercial speech); *Hall v. Superior Court*, 150 Cal. App. 3d 411 (2003) (considering whether a choice-of-forum provision in a private California securities agreement is enforceable); *Anschultz Corp. v. Merrill Lynch & Co.*, 785 F. Supp. 2d 799, 822 (N.D. Cal. 2011) (applying the government-interests test and concluding California law would be more impaired than New York's in a claim for negligent misrepresentation); *In re Heritage Bond Litig.*, No. CV 01-5752 DT, 2004 WL 1638201, at *5 (C.D. Cal. July 12, 2004) (certifying a class and concluding that choice-of-law issues did not undermine plaintiffs' contention that their claims were typical). Accordingly, because Groblebe has failed to plead facts establishing that Sarafraz and Lopez were in the business of effecting transactions in the state of California, Claim 3 may not advance. Nor will he receive leave to amend the complaint.

### E. Claims 4 and 5: Breach of Fiduciary Duty, Constructive Fraud, Conversion, and Aiding and Abetting Breach of Fiduciary Duty

To plead Groblebe's fifth claim for breach of fiduciary duty, he must show the existence of a fiduciary relationship, its breach, and damage proximately caused by the breach. *Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1114 (2015). "A promoter or insider, or a seller of a limited partnership interest, owes a fiduciary duty to the prospective purchaser of such an interest." *Eisenbaum v. W. Energy Res., Inc.*, 218 Cal. App. 3d 314, 322 (1990). While "insiders" can include the partnership's directors and officers, courts have also recognized that an "insider" may come in the form of a "broker, promoter, partner, corporate agent . . . limited partnership syndicator," or a "controlling stockholder[]." *Id.* at 323 (internal citations omitted). The common law duty of a corporate insider arises from (i) a relationship affording access to "inside information intended to be available only for a corporate purpose," and (ii) the "unfairness" of permitting the insider to leverage that information by selling securities without disclosure of material facts. *Chiarella v. United States*, 445 U.S. 222, 227 (1980).

California law permits a claim for aiding and abetting breach of fiduciary duty to proceed under either of two theories. The first requires that the aider and abettor "give substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately

considered, constitutes a breach of duty to the third person." *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005). The second imposes liability on one who "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Id.*

Groblebe contends Lopez and Sarafraz promoted Opus and encouraged investors to purchase interests in Opus Capital Management and Opus. In addition, he insists Sarafraz and Lopez helped the O&D defendants breach their fiduciary duties to indirect investors who ultimately hoped to profit from the Opus project. According to the TACC, Lopez and Sarafraz encouraged Groblebe and other investors to purchase interests in either TIV or Opus Capital Management, which were linked to the Opus drilling project. By promoting these opportunities, they became fiduciaries to those who ultimately invested in either opportunity. The TACC therefore includes sufficient information to establish a fiduciary relationship between Sarafraz and Lopez on the one hand, and Groblebe on the other because he purchased the securities they promoted.

The more difficult question is whether Groblebe has adequately pleaded facts establishing a breach of that duty. He claims the breach occurred when Sarafraz and Lopez omitted material information about the commissions they received, failed to disclose material information about Opus, and misrepresented TVC's financial health. The particular nature of this alleged breach sounds in fraud, and therefore Rule 9(b) applies. *See Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995). Even though Rule 9(b)'s requirements are somewhat relaxed when the claims involve fraudulent omissions, "they are not eliminated." *Waldrup v. Countrywide Fin. Corp.*, No. 2:13-CV-08833-CAS, 2014 WL 3715131, at *5 (C.D. Cal. July 23, 2014). For the reasons addressed above, Groblebe has not satisfied that burden because the TACC lacks information about when the communications were transmitted or how they were received. Groblebe has thrice failed to plead Claims 4 and 5 with sufficient particularity—suggesting he is incapable of doing so. The motions to dismiss Claims 4 and 5 therefore must be granted without leave to amend.

**F. Claim 6: Negligence and Negligent Misrepresentation**

To state a claim for negligent misrepresentation, a plaintiff must aver (1) the defendant misrepresented a material fact, (2) absent reasonable grounds for believing the representation to be true, (3) with intent to induce reliance; (4) that the plaintiff justifiably relied on the representation; and (5) damages. *Jackson v. Fischer*, 931 F. Supp. 3d 1049, 1068 (N.D. Cal. 2013) (citing *In re Daisy Sys. Corp.*, 97 F.3d 1171, 1180 (9th Cir. 1996)). Although knowledge of falsity is not required, the misrepresentation must be affirmative; omissions or implied representations are insufficient. *Apollo*, 158 Cal. App. 4th at 243. Most courts in this district subject state common law negligent misrepresentation claims to the heightened pleading standards of Rule 9(b), *see Jackson v. Fischer*, 2013 WL 6732872, at *17 (N.D. Cal. Dec. 20, 2013) (citing cases), and that standard applies to the claim at issue here.

As explained above, while the TACC provides more information about what Lopez and Sarafraz specifically did, it does not provide all the information Rule 9(b) requires—the who, what, where, when, and how. Accordingly, Claim 6 may not advance, nor is leave granted to amend the complaint yet again.

**V.    CONCLUSION**

Because Groblebe has failed adequately to plead his claims against Lopez and Sarafraz, and there is no indication he can remedy this problem, the motions to dismiss the TACC must be granted without leave to amend.

**IT IS SO ORDERED**.

Dated: July 7, 2016

_____
RICHARD SEEBORG
United States District Judge